

K&L GATES LLP
ONE NEWARK CENTER
NEWARK, NJ  07102
T  973.848.4104   F 973.848.4001   klgates.com

February 25, 2014

Rosemary Alito
D  973.848.4022
F  973.848.4001
rosemary.alito@klgates.com

**VIA ECF**

Honorable Madeline C. Arleo, U.S.M.J.
U.S. District Court District of New Jersey
50 Walnut Street
Newark, NJ 07101

Re:   **Care One Management, LLC, *et al* v. Healthcare Workers East, SEIU 1199, *et al*.**
      **Civil Action No. 2:12-cv-06371**

Dear Judge Arleo:

We write in response to Defendants' February 21, 2014, letter application.  (ECF No. 60).
Defendants seek a protective order preventing the third-party depositions of government
officials from proceeding until at least three or four weeks after the March 26, 2014 status
conference, and possibly beyond that date.  Defendants also seek an order compelling
Plaintiffs to disclose the identity of the high-ranking union organizer identified in the
Amended Complaint absent an attorneys' eyes only designation under a protective order.
Both requests should be denied.

## BACKGROUND

### A.      The Nature of this Action

As the Court is aware, Plaintiffs are the managers, owners, and operators of more than 50
sub-acute care, long term nursing care, and assisted living healthcare facilities for the elderly
operating in New Jersey, Connecticut, and Massachusetts.  Plaintiffs bring this action against
two local unions affiliated with the Service Employees International Union (the "SEIU") --
1199 SEIU United Healthcare Workers East ("UHWE") and the New England Health Care
Employees Union, District 1199 ("NEHCEU") (collectively, the "Defendants").  Plaintiffs
bring claims against the Defendants under the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and under state law.  Plaintiffs allege
in the lawsuit, among other things, that the UWHE and NEHCEU conspired together to
launch a coordinated and multi-faceted "corporate campaign" against Plaintiffs, and that this
corporate campaign has had a number of unlawful purposes.  Among many other tactics
employed by the Defendants in furtherance of their corporate campaign, Plaintiffs allege that
the Defendants enlisted elected officials in the State of Connecticut and elsewhere to deprive
Plaintiffs of normal legal processes and threaten groundless actions against them.  (Amended
Complaint ¶ 7).  Plaintiffs also allege that Defendants made false and misleading statements
about Plaintiffs in an effort to harm Plaintiffs' businesses.  (Id.).  Just by way of example:

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 2

- A routine application submitted to the State of Connecticut for permission to close Plaintiffs' Wethersfield Health Care Center was delayed for many months as the result of pressure exerted by the Defendants. (Amended Complaint ¶¶ 37, 178-79).

- Plaintiffs indirectly received a threat from the Governor's Office of the State of Connecticut that the assets of Plaintiffs' Connecticut-based facilities would be placed under receivership. (Amended Complaint ¶¶ 15, 37, 180).

- Prior to the start of a strike at Plaintiffs' facilities in Connecticut commencing on July 3, 2012, members of Defendant NEHCEU committed numerous serious criminal acts at three facilities designed to harm the elderly and frail memory care and other patients under their care, including, inter alia: removing patient identification wrist bands; changing name plates on patient doors; removing name bands on patient wheelchairs; removing dietary stickers indicating how patients could be safely fed; switching the names of patients in a memory care unit; and tampering with medication records. (Amended Complaint ¶¶ 8, 36, 160-64).

- Plaintiffs' goodwill in the communities in which Plaintiffs do business has been severely damaged as the result of the myriad false and misleading statements that Defendants have made about Plaintiffs and the health care services they provide. (Amended Complaint ¶ 24).

**B.      The Court's Decision on the First Motion to Dismiss**

Plaintiffs initially filed suit on October 10, 2012. No discovery was conducted for more than a year as the Court was considering Defendants' first motion to dismiss. The Court decided that motion on October 10, 2013. The Court did not dismiss any of Plaintiffs' causes of action. While the Court identified certain deficiencies in Plaintiffs' extortion and wire and mail fraud allegations as predicate racketeering acts underlying their four RICO claims, the Court granted Plaintiffs leave to amend the Complaint to cure these deficiencies, finding that "amendment would not be futile." (ECF No. 32 at 17). Additionally, the Court held that Plaintiffs properly pled violations of the Travel Act, 18 U.S.C. § 1952, as predicate acts of racketeering activity. As the Court explained, "viewed in the light most favorable to Plaintiffs, Plaintiffs meet the basic requirements to plead a claim under the Travel Act." (ECF No. 32 at 14).

**C.      Plaintiffs' Amended Complaint and the Rule 16 Conference**

Plaintiffs amended their Complaint on December 2, 2013, curing the handful of pleading deficiencies the Court identified. (ECF No. 37). Plaintiffs thereafter sought to commence discovery. Over Defendants' objection, the Court conducted an initial Rule 16 conference on January 7, 2014 and, at that conference, set a discovery schedule. During the Rule 16 conference, the Court acknowledged that, at a minimum, the Travel Act RICO predicate act

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 3

violations established a basis for federal court jurisdiction, and there were also pendent state law claims. Accordingly, given the age of the case, the Court saw no reason to delay discovery any further. (1/7/14 Tr. at 4-5, 9).

In anticipation of the Rule 16 conference, Defendants proposed that no depositions take place until September 2014. The Court rejected this suggestion, stating that it was not inclined to place any artificial limitations on the parties' ability to proceed with depositions. (1/7/14 Tr. at 10, 13, 14). The Court accurately predicted that "no one is going to rush out to try to notice 50 depositions in the month of January" and that, unless the Court saw a problem, it was hesitant to impose any artificial limitations in a case of this magnitude. (1/7/14 Tr. at 13). At the suggestion of Plaintiffs' counsel, the Court directed that discovery be focused on the portions of the Complaint that survived the first motion to dismiss, although the Court acknowledged that there would be substantial overlap among all of the claims. (1/7/14 Tr. at 15-16). The Court set an initial limit of 25 interrogatories per side and scheduled the next case management conference for March 26, 2014. (ECF No. 49).

## D.      Discovery Sought by Plaintiffs

In accordance with the Court's initial scheduling order, the parties exchanged interrogatories, document demands, and Rule 26 disclosures on February 7, 2014. Plaintiffs also served five party deposition notices and ten targeted third-party subpoenas for depositions and documents. The five party depositions are not noticed to begin until April 9, 2014 (two months after service of initial discovery demands), and have been noticed to take place over the course of one month.[1] The third-party subpoenas are directed primarily to government officials and relate to Plaintiffs' allegations in the Amended Complaint that Defendants enlisted elected officials in the State of Connecticut and elsewhere to deprive Plaintiffs of normal legal processes and threaten groundless actions against them. (Amended Complaint ¶¶ 7, 178-80).

Plaintiffs noticed these third-party depositions to begin on March 11 and continue through April 3, 2014, prior to the start of party depositions on April 9. Plaintiffs noticed these third-party depositions earlier than the party depositions because the information that these third-parties are expected to possess does not depend upon information that the parties may exchange in the course of discovery. Moreover, Plaintiffs anticipate that a number of these

---

[1] Plaintiffs noticed the deposition of Elisabeth Daley for April 9; NEHCEU Political Director Jennifer Smith for April 16; Deborah Chernoff for April 23; Ricky Elliott for April 30; and David Pickus for May 7. After filing their letter to the Court, Defendants' counsel advised Plaintiffs' counsel that Rickey Elliott died earlier that morning after previously having been diagnosed with cancer. Plaintiffs are concerned that they were not even made aware of Mr. Elliott's illness until Defendants' counsel advised Plaintiffs of his death on the afternoon of February 21. Mr. Elliott's death, while tragic, underscores the need to proceed expeditiously with discovery and the prejudice that can result (and has resulted) the longer discovery is delayed. Plaintiffs will be seeking discovery from Defendants regarding the timing of Defendants' knowledge of Mr. Elliott's illness, and Plaintiffs reserve the right to seek appropriate relief from the Court in the event that Defendants' failure to timely disclose his illness prevented Plaintiffs from having the opportunity to depose him.

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 4

third parties may have scheduling or other logistical issues that may require postponing their depositions,[2] and some of these third-parties may raise objections and possibly file motions to quash that will take time to address.  Specifically, Plaintiffs served deposition and document subpoenas upon the following third parties: [3]

- *U.S. Senator Richard Blumenthal, U.S. Congresswoman Rosa DeLauro, Connecticut State Senator John Fonfara, and Connecticut State Assemblyman Russell Morin*

Plaintiffs believe that that these politicians are among the elected officials to whom the Defendants directed false and misleading statements about Plaintiffs, and whom the Defendants otherwise influenced and/or sought to influence, in an effort to generate support for their unlawful corporate campaign against Plaintiffs.  In particular, documents that the NEHCEU was required to produce as part of discovery in pending bankruptcy court proceedings involving five of the plaintiffs before the Honorable Donald H. Steckroth, United States Bankruptcy Judge for the District of New Jersey, revealed that between February 24 to April 1, 2013 alone, representatives of the NEHCEU sent multiple e-mail communications to the offices of Senator Blumenthal, Senator Fonfara, and Assemblyman Morin, among other Connecticut politicians, in which the NEHCEU complained about the bankruptcy proceedings and urged these politicians to place Plaintiffs' Connecticut facilities under receivership.  Copies of these e-mails and related documents are annexed hereto as Exhibit A.[4]

Senator Blumenthal's office was particularly receptive to the NEHCEU's e-mail communications and even collaborated with the NEHCEU on a press release and open letter to the National Labor Relations Board on the NEHCEU's behalf.  Previously, Congresswoman DeLauro joined NEHCEU members on the picket line and spoke out publicly against the Plaintiffs in July 2012, just days after the incidents of strike-related sabotage recounted in the Amended Complaint.  Thus, the deposition and document subpoenas directed to these politicians seek evidence that is relevant to Plaintiffs' claims of

---

[2] For example, at the request of counsel for the United States Senate and United States House of Representatives, the return dates for the subpoenas served upon Senator Blumenthal and Representative DeLauro have been postponed by two weeks, from March 11 and 13, respectively, to March 25 and 27, respectively.

[3] Plaintiffs have also served a document subpoena upon the Office of the Connecticut Chief State's Attorney, seeking documents relating to that office's investigation of the strike-related sabotage orchestrated by NEHCEU against three of Plaintiffs' facilities in 2012, and against other facilities in 2001.  (Amended Complaint ¶¶ 11-12, 160-64, 166).

[4] Judge Steckroth allowed this discovery in connection with the NEHCEU's motion to transfer the venue of the bankruptcy proceedings from New Jersey to Connecticut.  Shortly before the five plaintiffs were scheduled to conduct the depositions of David Pickus and Jennifer Smith of the NEHCEU regarding these documents and the venue transfer motion, the NEHCEU unceremoniously withdrew its transfer motion.  The e-mails that the NEHCEU produced cover only a five-week period, and Plaintiffs anticipate that there will be additional communications in these politicians' possession relevant to Plaintiffs' claims in this case.

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 5

improper influence of government officials, among other allegations, or at least likely to lead to the production of evidence relevant to these claims.

- *Office of the Governor of the State of Connecticut*

Plaintiffs identify Governor Dannell Malloy as a non-party participant who benefitted from $400,000 in campaign expenditures by the SEIU and an affiliated local union for his 2010 election campaign. Plaintiffs believe that his office has assisted Defendants in their corporate campaign against Plaintiffs by, among other things: having Malloy join workers on the picket line at the Newington Health Care Center on July 11, 2012 despite the strike-related sabotage and vandalism that occurred eight days earlier; interfering with the application to close the Wethersfield Health Care Center; and threatening to take the assets of the Connecticut facilities managed by Plaintiff HealthBridge under receivership. (Amended Complaint ¶¶ 9, 15, 37, 177-80). Plaintiffs thus seek documents and testimony from the Governor's office related to these allegations and pertinent communications between and among the Governor, Defendants, and the SEIU.

- *Connecticut Attorney General George Jepsen*

Plaintiffs identify Mr. Jepsen as another non-party participant beholden to Defendants as a consequence of outsized campaign contributions. When HealthBridge reported incidents of strike-related sabotage on July 2 and 3, 2012 to Jepsen's office, he refused to offer meaningful assistance and directed HealthBridge to file separate police reports with local law enforcement authorities. Then, on July 17, 2012, Attorney General George Jepsen walked the picket lines with striking employees. A day later, he recused himself from matters involving HealthBridge and NEHCEU, citing the apparent conflict of interest. (Amended Complaint ¶¶ 9, 37, 164). Plaintiffs thus also seek documents and testimony from Mr. Jepsen office related to these allegations and other pertinent communications between and among Mr. Jepsen, Defendants, and the SEIU. In this regard, Mr. Jepsen was among the recipients of a number of e-mails from the NEHCEU, covering the period February 24 to April 1, 2013, produced in the Bankruptcy Court proceedings and annexed hereto as Exhibit A.

- *2010 election campaigns of Malloy and Jepsen*

As noted above, Plaintiffs allege that Defendants have secured political pressure from elected officials beholden to Defendants as a consequence of outsized campaign contributions. (Amended Complaint ¶¶ 5, 37, 119). Defendants thus seek information from the 2010 election campaigns for Malloy and Jepsen relating to contributions and other assistance that Defendants and the SEIU have provided, and pertinent communications between Defendants and these campaigns.

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 6

- *Dennis Rivera*

Rivera is the former president of the UHWE and Co-Chair of the 1199SEIU Funds, which oversees the underfunded UHWE Pension Plan, described more fully in the Amended Complaint.  The underfunding of this pension plan is one of the reasons cited by Plaintiffs for Defendants' unlawful corporate campaign directed against Plaintiffs.  (Amended Complaint ¶¶ 3, 5, 20, 22, 32, 42-55, 67-69, 109-111).

- *Mairym I. Ramos*

Ramos is the current Deputy Director of the SEIU's Geography Department and, upon information and belief, was responsible for disseminating numerous false statements about Plaintiffs and Aveta, Inc., another entity for which Plaintiffs' owner/indirect owner Daniel Straus served as Principal Stockholder and a Board Member, in furtherance of the corporate campaign described more fully in the Amended Complaint.

**E.      Defendants Blanket Objections to the Deposition Subpoenas and Other Issues**

After receiving these deposition subpoenas and notices, Defendants objected and requested a meet and confer.  The parties conducted a telephonic meet and confer on February 13, 2014. During this call, counsel for Defendants requested that Plaintiffs withdraw all of the third-party deposition subpoenas, or at least postpone them across-the-board by at least 30 days each.   Plaintiffs declined to withdraw the subpoenas or agree to an across-the-board postponement, but they expressed a willingness to work with Defendants on specific scheduling issues and, in the event that motions to quash were filed, on briefing schedules for those motions.

Meanwhile, Defendants separately wrote to address Plaintiffs' Rule 26 Disclosures. Defendants alleged that Plaintiffs' disclosures were deficient and requested additional details regarding Plaintiffs' description of the identities of persons expected to have relevant knowledge and Plaintiffs' damages calculations.  Defendants also requested that Plaintiffs disclose the identity of the former union organizer identified in the Amended Complaint, to whom Ricky Elliott, UHWE's Vice President, admitted that the UHWE has decided to deemphasize the traditional NLRA-sanctioned legal framework for organizing employees into unions in favor of a coordinated corporate campaign directed against Plaintiffs designed to bring the Plaintiffs "to their knees."   (Amended Complaint ¶¶ 6, 36, 120).

By e-mail sent on the morning of February 21, 2014, Plaintiffs proposed a schedule for supplementing their Rule 26 disclosures.  Plaintiffs proposed providing the additional details regarding the individuals expected to have relevant knowledge by March 7, and the additional details regarding Plaintiffs' damages calculation within by March 14.  As for the identity of the former high-ranking organizer referenced in the Amended Complaint, Plaintiffs advised that they were prepared to disclose this person's identity only subject to an

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 7

attorneys' eyes only designation under a stipulated confidentiality agreement and order.
Plaintiffs' counsel noted that their clients were justifiably concerned by the risk of retaliation
against this individual by Defendants in the event that this individual's identity is made
known to them.  Plaintiffs requested that Defendants advise of their position on this issue.

Later that afternoon, Defendants' counsel e-mailed Plaintiffs' counsel to assert that Plaintiffs'
proposal to supplement the damages portion of the Rule 26 disclosures by March 14 was
acceptable, but supplementing the witness portion of these disclosures by March 7 was not
acceptable.[5]  Defendants further advised that they would not agree to an "attorneys' eyes
only designation" for the identity of the high-ranking UHWE organizer referenced in the
Amended Complaint.  Shortly thereafter, Defendants filed their letter to the Court.

## ARGUMENT

### A.    The Court Should Allow Plaintiffs to Proceed with the Third-Party Depositions

The scope of discovery in federal litigation is broad, and parties may obtain discovery
regarding any non-privileged matter that is relevant to any party's claim or defense, so long
as the information is reasonably calculated to lead to the production of relevant evidence.
Fed. R. Civ. P. 26(b)(1). "Courts have construed this rule liberally, creating a broad vista for
discovery."  Takacs v. Union County, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009)
(citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981)).
Rule 26(c) authorizes the Court for "good cause" to issue a protective order limiting
discovery.  However, "[b]road allegations of harm, unsubstantiated by specific examples or
articulated reasoning," do not satisfy the "good cause" test, and "the harm must be
significant, not trifle."  Cipollone v. Liggett Group, Inc., 822 F.2d 335, 343 (3d. Cir. 1987);
see also Actelion Pharmaceuticals Ltd. v. Apotex Inc., 2013 WL 5524078, *3 (D.N.J. Sept. 6,
2013) ("the party seeking [a] protective order must show good cause by demonstrating a
particular need for protection").

Here, Defendants have not come close to establishing "good cause."  Plaintiffs have thus far
noticed only a total of five party depositions, the first of which is scheduled to begin no
earlier than April 9.  As for the third-party depositions, "[g]enerally speaking, a party to a
lawsuit does not have standing to quash a subpoena served on a non-party unless the party
seeking to challenge a subpoena claims a personal right or privilege regarding information
sought by the subpoena."   EEOC v. United Galaxy, 2011 U.S. Dist. LEXIS 103398, *4
(D.N.J. Sept. 13, 2011) (citation and internal quotation marks omitted); accord Norguard Ins.
Co. v. Serveon Inc., 2011 U.S. Dist. LEXIS 8371, *9 (D. Del. Jan. 28, 2011) ("Generally,
only the entity subject to the subpoena has standing to challenge it" unless "the party claims
some personal right or privilege relating to the documents sought") (citation and internal

---

[5] Plaintiffs have since offered to provide this information by this Friday, February 28 -- which Defendants have
reported is acceptable to them.

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 8

quotation marks omitted).   Here, Defendants have not even attempted to articulate a
"personal right or privilege" relating to the information from these public officials.  Instead,
Defendants argue that "tending to those depositions, when considered as a whole, will
impose costs and burdens on Defendants themselves."  However, "[m]erely complaining that
pre-trial discovery takes time and costs money cannot provide a sufficient basis to confer
standing to quash a subpoena of a non-party, as such a grant of standing would eviscerate the
general rule that a party does not have standing to challenge the subpoena of a non-party."
Norguard, 2011 U.S. Dist. LEXIS 8371, *10.

Even if Defendants had standing to contest the third-party depositions, no protective order
should issue.  Defendants make the conclusory assertion that "most of the witnesses that
Plaintiffs have noticed for depositions are not even relevant witnesses, let alone 'important'
witnesses."   This argument ignores that, as discussed more fully above, these witnesses are
believed to have evidence relevant, among other things, to Plaintiffs' claims that Defendants
enlisted elected officials in the State of Connecticut and elsewhere to deprive Plaintiffs of
normal legal processes and threaten groundless actions against them.  (Amended Complaint
¶¶ 7, 178-80).   Indeed, even the relatively few e-mails produced by NEHCEU in the
bankruptcy proceedings covering the five-week period between February 24 and April 1,
2013, demonstrate that representatives of NEHCEU were in regular contact with these
elected officials and their staff relating to Plaintiffs.  Plaintiffs are entitled to discover other
pertinent communications and other information in these witnesses' possession relevant to
Plaintiffs' claims in this action.

**B.**     **The Court should Allow Plaintiffs to Disclose the Former High Ranking Union
Organizer Witness Subject to an Attorneys' Eyes Only Designation**

On the other hand, good cause exists to permit Plaintiffs to disclose the Union organizer
identified in the Amended Complaint subject to an "attorneys' eyes only" designation of a
protective order.   Rule 26(c) expressly authorizes the Court to enter a protective order
limiting or conditioning access to information exchanged in discovery.  Good cause exists for
such a protective order "on a showing that disclosure will work a clearly defined and serious
injury to the party seeking closure," and the injury is shown "with specificity."  Pansy v.
Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citation omitted). "In considering
whether good cause exists for a protective order, the federal courts have generally adopted a
balancing process." Id. at 787 (citation omitted). The Court "must balance the requesting
party's need for information against the injury that might result if uncontrolled disclosure is
compelled." Id. (citation omitted).

Here, a protective order allowing Plaintiffs to disclose this witness's identity under an
attorneys' eyes only designation strikes the appropriate balance between Defendants'
counsel's need for this information and the potential injury that might result from
uncontrolled disclosure.  As alleged in the Amended Complaint, this individual heard Ricky
Elliott, UHWE's Vice President, admit that the UHWE has decided to deemphasize the

Honorable Madeline C. Arleo, U.S.M.J.
February 25, 2014
Page 9

traditional NLRA-sanctioned legal framework for organizing employees into unions in favor of a coordinated corporate campaign directed against Plaintiffs, designed to force Plaintiffs "to their knees" so that Plaintiffs will have no choice but to recognize Defendant UHWE as the exclusive collective bargaining representatives at all of Plaintiffs' non-unionized facilities. (Amended Complaint ¶¶ 6, 36, 120). This witness has expressed concern about having his/her identity and cooperation with Plaintiffs made known to Defendants. In light of Defendants' conduct described more fully in the Amended Complaint, this witness has good reason for such concerns. When Defendants were unable to secure what they wanted from Plaintiffs through legitimate channels, Defendants embarked on a coordinated "corporate campaign" against Plaintiffs and Mr. Straus in an effort to extort substantial money and property from Plaintiffs. Defendants' myriad tactics have included, among other things, a campaign of false and misleading statements designed to damage Plaintiffs' businesses and reputations, abuses of legal processes, and, most shockingly of all, actions of sabotage directed against the frail and often helpless patients at Defendants' facilities. (See, generally, Amended Complaint). It is not difficult to imagine Defendants, with the assistance of the SEIU, attempting to direct similar tactics against this key witness -- a former high-level organizer and one of "their own" who has provided highly damaging evidence against them -- once they learn his/her identity. The fact that Defendants are so anxious to obtain this witness's identity without an "attorneys' eyes only" provision strongly evince an intent on the part of Defendants to exert undue pressure on him/her, and underscores the need for a protective order.

### CONCLUSION

Based on the foregoing, it is respectfully requested that the Court decline to prevent Plaintiffs from conducting the third-party depositions Plaintiffs have subpoenaed, but grant a protective order allowing Plaintiffs to disclose the identity of the high-ranking union organizer identified in the Amended Complaint under an attorneys' eyes only designation under a protective order.

We thank the Court for its continued courtesies and attention to this matter.

Respectfully submitted,

/s/ Rosemary Alito

Rosemary Alito

cc:     All Counsel of Record [via ECF]