# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Care One Management, LLC, et al.,

                Plaintiffs,

        v.

United Healthcare Workers East,
SEIU 1199 et al.,

                Defendants.

Civil Action No: 2:12-cv-06371

Honorable Susan D. Wigenton, U.S.D.J.
Honorable Michael A. Hammer, U.S.M.J.

---

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS THE FIRST AMENDED COMPLAINT

---

**K&L GATES LLP**
One Newark Center
Tenth Floor
Newark, New Jersey 07102
(973) 848-4000

Rosemary Alito
George P. Barbatsuly

**CRITCHLEY, KINUM &
VAZQUEZ, LLC**
75 Livingston Avenue
Roseland, New Jersey  07068
(973) 422-9200

Michael Critchley Sr.
John Michael Vazquez

Attorneys for Plaintiffs

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND ........................................................................................3

A.      Overview of Plaintiffs' Claims ........................................................3

B.      First Motion to Dismiss and Court's Ruling ...................................6

C.      The Amended Complaint.................................................................7

POINT ONE

THE MOTION TO DISMISS MUST BE DENIED ..................................9

POINT TWO

THE AMENDED COMPLAINT SUFFICIENTLY PLEADS PREDICATE
ACTS OF RACKETEERING...................................................................11

A.      The Amended Complaint Sufficiently Alleges Predicate Acts
        of Mail and Wire Fraud ................................................................11

B.      The Amended Complaint Sufficiently Alleges Predicate Acts
        of Extortion and Attempted Extortion ...........................................18

        1.      Plaintiffs have clarified the "obtaining property" element
                of their extortion claims .....................................................18

        2.      The "wrongfulness" standard under the Hobbs Act does
                not apply to RICO predicate acts of state law extortion ...................21

        3.      Even if the Hobbs Act "wrongfulness" standard applied,
                the Court has already concluded that Defendants' conduct is
                "wrongful"............................................................................24

        4.      Plaintiffs plead a sufficient basis to hold NEHCEU responsible for
                the conduct of its lead organizers in directing the acts of sabotage....28

C.    The Amended Complaint, Like the Original Complaint, Sufficiently
Alleges Predicate Acts of Travel Act Violations ...........................................33

POINT THREE

THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES PATTERN
ALLEGATIONS ...................................................................................................34

POINT FOUR

PLAINTIFFS' CLAIMS IN COUNTS ONE AND TWO SUFFICIENTLY
ALLEGE THE REQUISITE § 1964(c) INJURY .....................................................36

POINT FIVE

IF, AFTER AMENDMENT, THE CLAIMS ARE DEEMED INADEQUATELY
PLED, LEAVE TO FURTHER REPLEAD SHOULD BE GRANTED ...............39

CONCLUSION .........................................................................................................40

# TABLE OF AUTHORITIES

## CASES

A. Terzi Productions, Inc. v. Theatrical Protective Union,
2 F. Supp. 2d 485 (S.D.N.Y. 1998) .........................................................................28

Adcock v. Freightliner LLC,
550 F.3d 369 (4th Cir. 2008) .................................................................................27

Alston v. Parker,
363 F.3d 229 (3d Cir. 2004)....................................................................................39

Asbestos & Lead Removal Corp. v. Severino,
No. 06-5949, 2007 WL 925485 (E.D.N.Y. Mar. 23, 2007) ....................................33

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................................10, 29, 30

Beck v. Prupis,
529 U.S. 494 (2000)........................................................................................36, 37, 38

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..................................................................................................9, 10

Bridge v. Phoenix Bond & Indem. Co.,
553 U.S. 639 (2008)................................................................................13, 15, 16, 17, 18

Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,
140 F.3d 494 (3d Cir. 1998)...............................................................................25, 26

C&W Constr. Co. v. Bh'd of Carpenters and Joiners, Local 745,
687 F. Supp. 1453 (D. Haw. 1988)........................................................................23

CareOne, LLC v. Burris,
No. 10-2309 (FLW), 2011 WL 2623503 (D.N.J. June 28, 2011) ...........................39

Chevron Corp. v. Donziger,
No. 11-691, 2012 WL 3223671 (S.D.N.Y. May 24, 2012).....................................15

Chevron Corp. v. Donziger,
No. 11-691, 2014 WL 815923 (S.D.N.Y. Mar. 4, 2014)..........................................17

Chovanes v. Thoroughbred Racing Ass'n,
No. 99-185, 2001 WL 43780 (E.D. Pa. Jan. 18, 2001)....................................15, 16

Cintas Corp. v. UNITE HERE,
601 F. Supp. 2d 571 (S.D.N.Y. 2009) ....................................................................28

Clark v. Conahan,
737 F. Supp. 2d 239 (M.D. Pa. 2010)................................................................30, 31

CNA v. United States,
535 F.3d 132 (3d Cir. 2008)....................................................................................31

Desmond v. Siegel,
No. 10-5562 (DRD), 2012 WL 3228681 (D.N.J. Aug. 6, 2012)............................26

Here, Local 57 v. Sage Hospitality Resources,
390 F.3d 206 (3d Cir. 2004)....................................................................................27

H.J. Inc. v. N.W. Bell Tel. Co.,
492 U.S. 229 (1989)................................................................................................35

In re Ins. Brokerage Antitrust Litig.,
618 F.3d 300 (3d Cir. 2010)..............................................................................10, 38

Kehr Packages, Inc. v. Fidelcor, Inc.,
926 F.2d 1406 (3d Cir. 1991)..................................................................................35

Kimm v. Lee,
No. 04-5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005)..................................15, 16

Kolar v. Preferred Real Estate Investments, Inc.,
361 Fed. Appx. 354 (3d Cir. 2010).........................................................................38

Kredietbank N.V. v. Joyce Morris, Inc.,
No. 84-1903, 1986 WL 5926 (D.N.J. Jan. 9),
aff'd, 808 F.2d 1516 (1986)...............................................................................15, 16

Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n,
965 F.2d 1224 (2d Cir. 1992)......................................................................29

McNally v. United States,
483 U.S. 350 (1987)....................................................................................11

Mendez Internet Management Services, Inc. v. Banco Santander de Puerto Rico,
621 F.3d 10 (1st Cir. 2010) ...................................................................14, 15

Mulhall v. Unite Here Local 355,
667 F. 3d 1211 (11th Cir. 2012) ...............................................................27

Nardello v. U.S.,
393 U.S. 286 (1969).....................................................................................21

Pappa v. Unum Life Ins. Co. of Am.,
No. 07-0708, 2008 WL 744820 (M.D. Pa. Mar. 18, 2008) .....................17

Petro-Tech, Inc. v. Western Co. of North America,
824 F.2d 1349 (3d Cir. 1987).....................................................................30

Phillips v. County of Allegheny,
515 F.3d 224 (3d Cir. 2008)....................................................................9, 39

Procter & Gamble Co. v. Amway Corporation,
242 F.3d 539 (5th Cir. 2001) .....................................................................17

Rehkop v. Berwick Healthcare Corp.,
95 F.3d 285 (3d Cir. 1996)..........................................................................38

Salinas v. United States,
522 U.S. 52 (1997).......................................................................................36

Santiago v. Warminster Township,
629 F.3d 121 (3d Cir. 2010)...................................................................29, 30

Scheidler v. Nat'l Org. for Women, Inc.,
537 U.S. 393 (2003)................................................ 20, 21, 22, 23, 24, 28

SCI Illinois Svcs., Inc. v. Coli,
No.11-7762, 2012 WL 2152829 (N.D. Ill. June 6, 2012).......................32

Sekhar v. United States,
133 S. Ct. 2720 (2013)........................................................................................20

Shaw v. Rolex Watch U.S.A., Inc.,
726 F. Supp. 969 (S.D.N.Y. 1989).................................................................13, 14

Smithfield Foods, Inc. v. United Food and Comm'l Workers Int'l Union,
633 F. Supp. 2d 214 (E.D. Va. 2008) ...................................................................20

Smithfield Foods, Inc. v. United Food and Comm'l Workers Int'l Union,
585 F. Supp. 2d 789 (E.D. Va. 2008) .............................................................20, 22

Tabas v. Tabas,
47 F.3d 1280 (3d Cir. 1995)..................................................................................35

Teamsters Local 372 v. Detroit Newspapers,
956 F. Supp. 753 (E.D. Mich. 1997).....................................................................23

Texas Air Corp. v. Air Line Pilots Assoc. Int'l,
No. 88-0804, 1989 WL 146414 (S.D. Fla. Jul. 14, 1989) .......................................17

United States v. Caggiano,
No. 07-CR-304S, 2014 WL 104968 (W.D.N.Y. Jan. 9, 2014)................................22

United States v. Dobson,
419 F.3d 231 (3d Cir. 2005)..................................................................................11

United States v. Enmons,
410 U.S. 396 (1973).......................................................................22, 23, 24, 25

United States v. Hedaithy,
392 F.3d 580 (3d Cir. 2004).........................................................11, 13, 15, 18

United States v. Larson,
807 F. Supp. 2d 142 (W.D.N.Y. 2011) ..................................................................24

United States v. Larson,
No. 07–CR–304S, 2013 WL 5573046 (W.D.N.Y. Oct. 9, 2013)...........................21

United States v. Wander,
601 F.2d 1251 (3d Cir. 1979)....................................................................33

United Broth. of Carpenters & Joiners of Am. v. Building & Const. Trades Dep't.,
911 F. Supp. 2d 1118 (E.D. Wash. 2012).............................................38, 39

Wackenhut Corp. v. SEIU,
593 F. Supp. 2d 1289 (S.D. Fla. 2009)....................................................21

## **STATUTES**

18 U.S.C. § 1341 ........................................................................................11

18 U.S.C. § 1343 ........................................................................................11

18 U.S.C. § 1952 .................................................................................1, 6, 33

18 U.S.C. § 1961 et seq. ..............................................................................1

18 U.S.C. § 1961(1) ..............................................................................22, 38

18 U.S.C. § 1962(a) ...............................................................3, 7, 36, 37, 38, 39

18 U.S.C. § 1962(b) .......................................................................3, 36, 39

18 U.S.C. § 1962(c) ......................................................................30, 37, 38

18 U.S.C. § 1962(d) .................................................................3, 7, 36, 37, 38

18 U.S.C. § 1964(c) ...............................................................3, 36, 37, 39

29 U.S.C. § 106 ........................................................................................29

29 U.S.C. § 186 ........................................................................................21

42 U.S.C. § 1983 ...................................................................................29, 30

Conn. Gen. Stat. Ann. § 53a-119 ................................................................18

N.J. Stat. Ann. § 2C:20-5 ........................................................................18

Mass. Gen. Laws Ann. ch. 271, § 39 ......................................................18

## **<u>RULES</u>**

Fed. R. Civ. P. 8(a)(2) ...........................................................................10

Fed. R. Civ. P. 12(b)(6).................................................................6, 9, 39

Fed. R. Civ. P. 15(a) ...............................................................................23

## PRELIMINARY STATEMENT

In its October 10, 2013 Opinion and Order, the Court found that Plaintiffs sufficiently pled violations of the Travel Act, 18 U.S.C. § 1952, as predicate acts of racketeering activity underlying Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").  Although the Court identified deficiencies with Plaintiffs' mail and wire fraud and extortion pattern-of-racketeering allegations, the Court granted Plaintiffs leave to amend the Complaint to cure these deficiencies, finding that amendment would not be futile. Plaintiffs' Amended Complaint more than sufficiently remedies the handful of pleading deficiencies the Court identified.

Instead of addressing the detailed allegations of Plaintiffs' amended pleading head on, Defendants 1199 SEIU United Healthcare Workers East ("UHWE") and New England Health Care Employees Union, District 1199 ("NEHCEU") (collectively "Defendants" or the "Unions") recycle arguments that were previously presented to, and rejected by, this Court.   Defendants maintain that Plaintiffs' mail and wire fraud allegations are insufficient because they purportedly sound in defamation.  But in its October 10, 2013 Opinion, the Court expressly found that "Plaintiffs do not just assert defamation, but rather that defamatory statements and misrepresentations were part of a multifaceted scheme to defraud." (ECF No. 32 at 16).  While the Court held that Plaintiffs must clearly articulate a pattern of such activities and show how the communications contributed to the

alleged fraudulent scheme, Plaintiffs have done so, detailing the fraudulent scheme and explaining how each and every one of Defendants' false and misleading statements contributed to that scheme.

Defendants further argue that Plaintiffs' extortion claims are insufficient because Plaintiffs have not pled that Defendants' conduct was "wrongful" within the meaning of the Hobbs Act. Not only does this argument continue to overlook that Plaintiffs' extortion claims are based on state law – not the Hobbs Act – it also overlooks that this Court, in its October 10, 2013 Opinion, found that "properly pled, the actions Plaintiffs allege could be 'wrongful' under the Hobbs Act." (ECF No. 32 at 13 n.13). The Court directed Plaintiffs to clarify the "obtaining property" component of their extortion claims. (Id. at 13). Plaintiffs have done so, and Defendants have not shown otherwise.

Defendants also persist in arguing that Plaintiffs have not sufficiently pled Travel Act violations as RICO predicate acts of racketeering – ignoring that the Court held that "viewed in the light most favorable to Plaintiffs, Plaintiffs meet the basic requirements to plead a claim under the Travel Act." (ECF No. 32 at 14). Defendants claim that the Travel Act allegations are deficient because the extortion allegations are deficient. This argument overlooks that the Court found that Plaintiffs' original Complaint sufficiently pled state law extortion claims, and the Amended Complaint provides the one clarification (as to the "obtaining property" element) that the Court directed Plaintiffs to make.

2

Lastly, Defendants argue that Counts One and Two of the Amended Complaint – alleging violations of 18 U.S.C. § 1962(d) by conspiring to violate §§ 1962(a) and 1962(b) – should be dismissed because Plaintiffs have not alleged completed violations of §§ 1962(a) and 1962(b).  In its October 10, 2013 Opinion, the Court rejected this identical argument, noting that "a completed violation of §§1962(a) and (b) [is] not necessary to properly plead a violation of §1962(d)." (ECF No. 32 at 17 n.18).  Defendants seek to repackage this argument as a purported failure to allege the requisite injury under 18 U.S.C. §1964(c), but under controlling law in the Third Circuit, a RICO plaintiff proceeding under §1962(d) need only prove an injury from an act of racketeering in furtherance of the conspiracy, not an injury from a completed violation of one of the substantive RICO provisions.  Plaintiffs amply allege that they have been injured by acts of racketeering in furtherance of the conspiracies to violate §§1962(a) and (b).

For all of these reasons, discussed more fully below, the Court should deny Defendants' motion to dismiss the Amended Complaint.

## BACKGROUND

**A.    Overview of Plaintiffs' Claims**

Plaintiffs incorporate herein by reference the detailed allegations of the Amended Complaint, which must be accepted as true for purposes of this motion. These allegations demonstrate that Plaintiffs are the managers and owners of sub-acute care, long term nursing care and assisted living healthcare facilities for the

elderly, together with the more than 50 such facilities operating in New Jersey, Connecticut, and Massachusetts.  In their Amended Complaint, Plaintiffs allege that the defendants – two local unions affiliated with the Service Employees International Union (the "SEIU") – have deemphasized ordinary labor relations practices in favor of extortion and other criminal and fraudulent tactics as a means of enhancing their market share in the long term care industry.  (ECF No. 37 (Amended Complaint), ¶¶2, 6, 120).

Facing significant underfunded pension liabilities and other considerable debt, Defendants conspired together to launch a coordinated and multi-faceted "corporate campaign" against Plaintiffs and Daniel E. Straus, who is a direct or indirect owner of the Plaintiffs.  (ECF No. 37, ¶3). The corporate campaign is consistent with the tactics described in the SEIU's Corporate Campaign Manual ("Manual"), the SEIU's institutional policy of violating the law and encouraging its members to do the same. (ECF No. 37, ¶4).

The campaign has two interrelated objectives: (1) bludgeon Plaintiffs into allowing Defendant UHWE to unionize Plaintiffs' non-union employees in New Jersey and elsewhere; and (2) force Plaintiffs to accept exorbitant, outsized, and unnecessary contract demands covering the facilities in Connecticut at which Defendant NEHCEU represents the employees.  (ECF No. 37, ¶3).  Defendants seek to extort substantial money and property from Plaintiffs in the form of increased union membership, union dues, contributions to Defendants' pension

4

funds, unwanted and superfluous labor services, and direct payments to Defendants in the form of contributions to their training funds.  (ECF No. 37, ¶3).

Defendants have employed many means in furtherance of their unlawful scheme.  Among other things, Defendants enlisted elected officials in the State of Connecticut to deprive Plaintiffs of normal legal processes and threaten groundless actions against them.  (ECF No. 37, ¶¶7, 177-80).  They instituted baseless legal actions against Plaintiffs, for the sole purpose of harming Plaintiffs' businesses and bringing them "to their knees."  (ECF No. 37, ¶¶7, 170-76, 181-82).  They began a campaign of false statements designed to damage Plaintiffs' businesses.  (ECF No. 37, ¶¶7, 183-213).  They attempted to block unrelated business ventures of Mr. Straus.  (ECF No. 37, ¶¶7, 168-69).   They engaged in a campaign of false statements and attacks on Mr. Straus and his family.   (ECF No. 37, ¶¶7, 214-25). And most shockingly of all, they took actions against the frail and often helpless patients at Defendants' facilities – patients that the Defendants' members were legally and ethically charged to care for.  (ECF No. 37, ¶¶7, 160-67).  The message could not be clearer:  agree to the Defendants' demands or lives and property would be lost.  (ECF No. 37, ¶7).

Plaintiffs bring claims under RICO and under state law.  In Counts One and Two of the Amended Complaint, Plaintiffs allege that Defendants violated RICO by conspiring to (i) acquire and invest large sums of money in several RICO enterprises, including each Defendant's pension plans and association-in-fact

enterprises including the two unions and their pension plans, and (ii) acquire and maintain an interest in or control of Plaintiffs, through a pattern of racketeering activity. (ECF No. 37, ¶¶258-83). In Counts Three and Four, Plaintiffs allege that Defendants conducted and participated in the management and operations of various RICO enterprises through a pattern of racketeering activity, and conspired to do so. (ECF No. 37, ¶¶284-323). In Counts Five and Six, Plaintiffs bring state law claims for unfair trade practices and tortious interference with contractual and economic relationships. (ECF No. 37, ¶¶324-33).

## B.    First Motion to Dismiss and Court's Ruling

Plaintiffs filed this action on October 10, 2012. (ECF No. 1). In response to the original complaint, Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(6). (ECF No. 10). In its Opinion and Order dated October 10, 2013, the Court granted the motion in part and denied it in part. (ECF Nos. 32, 33). The Court did not dismiss any of Plaintiffs' causes of action. While the Court identified certain deficiencies in Plaintiffs' mail and wire fraud and extortion claims as predicate acts of racketeering underlying their four RICO causes of action, the Court granted Plaintiffs leave to amend the Complaint to cure these deficiencies, finding that "amendment would not be futile." (ECF No. 32 at 17). The Court also held that Plaintiffs properly pled violations of the Travel Act, 18 U.S.C. § 1952, as predicate acts of racketeering. As the Court explained, "viewed in the light most favorable to Plaintiffs, Plaintiffs meet the basic requirements to

plead a claim under the Travel Act."  (ECF No. 32 at 14).

The Court rejected outright one of Defendants' so-called "count specific arguments" for dismissal – Defendants' claim that Plaintiffs' conspiracy claims in Counts One and Two were somehow deficient because Defendants did not succeed in violating the substantive RICO provisions underlying those counts.  (ECF No. 32 at 17 n.18) ("The Court notes, however, that a completed violation of §§1962(a) and (b) are not necessary to properly plead a violation of §1962(d)").   Defendants' other "count-specific" arguments for dismissal were that Plaintiffs' enterprise-related allegations in Count Three and Four were deficient.  (ECF No. 10-1, pp. 35-39).   The Court refrained from addressing those arguments, noting that "many of them are dependent on or related to the broader allegations that Plaintiffs have been given leave to amend." (ECF No. 32, at 18).

## C.    The Amended Complaint

Plaintiffs filed their Amended Complaint on December 2, 2013.  (ECF No. 37).   The Amended Complaint remedies the pleading defects identified by the Court with respect to the "pattern of racketeering" allegations common to all counts.  Specifically, in response to the Court's direction that Plaintiffs clarify the "obtaining property" component of their extortion claims (ECF No. 32 at 13), Plaintiffs added, inter alia, an entire section entitled, "The Property Rights Defendants Seek to Obtain," which included a subsection entitled, "The Transferable Nature of the Property Defendants Seek."  (ECF No. 37, ¶¶145-58).

In response to the Court's direction that Plaintiffs "specifically plead a basis for which Defendants should be held accountable for many of the alleged acts of unidentified individuals in furtherance of a conspiracy or enterprise and for wire and mail fraud" (ECF No. 32 at 15), Plaintiffs added, inter alia, sections detailing the Unions' control over their members' activities and explained how the Unions were responsible for the numerous acts of racketeering described in the Amended Complaint.  (ECF No. 37, ¶¶104-07, 159-225).  In response to the Court's direction that Plaintiffs "clearly articulate a pattern of such activities and how the communications contributed to the alleged fraudulent scheme" (ECF No. 32 at 16), Plaintiffs added, inter alia, a section entitled, "The Unions' Scheme To Defraud," and explained how the Unions' false and misleading statements over the mails and wires contributed to that fraudulent scheme.  (ECF No. 37, ¶¶138-44, 165, 181, 186, 190-93, 196-202 & Exhs. F, L, M-U, AA-DD, TT-ZZ).

Plaintiffs also made amendments beyond those requested by the Court. Among other things, Plaintiffs explained that the Unions' tactics did not stop even after Plaintiffs filed this action.  For example, beginning in late 2012, Defendants began disseminating false and misleading statements insinuating that a number of Plaintiffs are overprescribing anti-psychotic drugs to their patients.  (ECF No. 37, ¶¶201-02).  More recently, Defendants have begun disseminating other false and misleading statements insinuating that many of Plaintiffs' facilities do not employ enough caregivers.  (ECF No. 37, ¶203).

Plaintiffs' Amended Complaint also mooted one of Defendants' so-called "count-specific" arguments – Defendants' assertion in their first motion to dismiss that Plaintiffs' enterprise-related allegations were deficient.  (ECF No. 10-1, pp. 36-39).[1]  Defendants effectively concede that Plaintiffs' Amended Complaint sufficiently pleads enterprise-related allegations, as their renewed motion to dismiss does not even raise this "count-specific" argument for dismissal.

## POINT ONE

## THE MOTION TO DISMISS MUST BE DENIED

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations" or "heightened fact pleading of specifics."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, courts require "only enough facts to state a claim to relief that is plausible on its face."  Id., 550 U.S. at

---

[1] Specifically, the Amended Complaint:  (i) further explains how Defendants conducted and participated directly in the operation and management of the SEIU's affairs through a pattern of racketeering activity (ECF No. 37, ¶¶61-63); (ii) further explains how the four entities labeled as the "1199 Enterprise" function together as a continuing unit with a common purpose (ECF No. 37, ¶¶43-48); (iii) adds two smaller-scale bilateral association-in-fact enterprises within the meaning of 18 U.S.C. § 1961(4), each consisting of one Defendant and its respective pension plan; (iv) identifies the pension plans themselves as separate enterprises within the meaning of 18 U.S.C.§ 1961(4) (ECF No. 37, ¶¶49-55); and (v) identifies another association-in-fact enterprise, labeled in the Amended Complaint as the "Care One Watch" enterprise.  (ECF No. 37, ¶¶35-39, 56-60).

555.  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 556.

Quoting In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010), Defendants argue that "RICO cases … are 'big' cases and the defendant should not be put to the expense of big case discovery on the basis of a threadbare claim."  (Db7).  However, in that same opinion, the Third Circuit explained that Twombly affirmed that Fed. R. Civ. P. 8(a)(2) merely "requires a statement of facts 'suggestive enough' (when assumed to be true) 'to render [the plaintiff's claim to relief] plausible,' that is, 'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct."  In re Ins. Brokerage Antitrust Litig., 618 F.3d at 319 n.17 (quoting Twombly, 550 U.S. at 556).  Here, as shown more fully below, the detailed allegations of the Amended Complaint cure the handful of pleading defects that the Court identified with Plaintiffs' mail and wire fraud and extortion pattern-of-racketeering claims, and they provide more than enough facts to raise the reasonable expectation that discovery will reveal evidence of Defendants' unlawful conduct.  Thus, Defendants' renewed motion to dismiss must be denied.

## POINT TWO

### THE AMENDED COMPLAINT SUFFICIENTLY PLEADS PREDICATE ACTS OF RACKETEERING

**A.      The Amended Complaint Sufficiently Alleges Predicate Acts of Mail and Wire Fraud**

Plaintiffs sufficiently allege that Defendants engaged in a scheme to defraud in violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  To state a claim under either statute, Plaintiffs must allege (1) the existence of a scheme to defraud, (2) the use of the mails or wires in furtherance of the fraudulent scheme, and (3) culpable participation by the defendant.  See United States v. Dobson, 419 F.3d 231, 237 (3d Cir. 2005).  The Third Circuit has broadly defined a "scheme to defraud" as any effort at deceit which aims, in part, to deprive another of money or property.  United States v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004) (noting that sparse legislative history of mail fraud statute indicates that its original impetus "'was to protect the people from schemes to deprive them of their money or property'") (quoting McNally v. United States, 483 U.S. 350, 352 (1987)).

In its Opinion on Defendants' first motion to dismiss, the Court held that "Plaintiffs do not just assert defamation, but rather that defamatory statements and misrepresentations were part of a multifaceted scheme to defraud."  (ECF No. 32 at 16).  The Court added that "[i]n tandem with Plaintiffs' other examples of alleged sabotage and tampering there is a potential basis for RICO claims."  (ECF No. 32

11

at 16).  However, the Court directed Plaintiffs to clarify the scheme to defraud and circumstances of the alleged mail and wire fraud.  (ECF No. 32 at 16-17).

Plaintiffs have done so.  (ECF No. 37, ¶¶138-44).  Among other things, the Amended Complaint explains that Defendants' plan has been to deceive third parties into believing that Plaintiffs are bad companies that mistreat residents and cause other harm to their communities for the purpose of inducing those persons to discontinue or refrain from doing business with Plaintiffs.  (ECF No. 37, ¶139).  It details how Defendants, and their officers and agents, have used the wires and mails to effectuate this plan.  (ECF No. 37, ¶¶140, 165, 181, 186, 190-93, 196-202 & Exhs. F, L, M-U, AA-DD, TT-ZZ).   It explains how Defendants' false representations were material in that they were capable of influencing the decisions of those to whom the statements were directed in ways having a direct financial impact on Plaintiffs.  (ECF No. 37, ¶141).   Specifically, Defendants intended for the deceived third parties to act in reliance on their material misrepresentations by discontinuing or refusing to enter contractual relationships with Plaintiffs, or by convincing their friends, families, and loved ones to act in the same manner.  (ECF No. 37, ¶141).  The Amended Complaint also explains that many deceived third parties have relied on Defendants' material misrepresentations to Plaintiffs' detriment, precisely as Defendants intended.  (ECF No. 37, ¶142).  These acts do not merely satisfy the elements of a defamation claim.  They satisfy the additional elements of mail and wire fraud because Defendants' false and misleading

12

statements were in furtherance of a multifaceted scheme to defraud designed to deprive Plaintiffs of their money or property.  See Hedaithy, 392 F.3d at 590.

Defendants continue to attack the mail and wire fraud allegations on the grounds that, according to Defendants, the scheme to defraud must involve "a misrepresentation that causes either (i) the deceived person to be deprived of his or her property, (ii) the deceiver to obtain property through the deceit; or (iii) both." (Defs' Br. 9).  That is not the law.  It is not a requirement that "the deceived person … be deprived of his or her property," as Defendants suggest, because the mail and wire fraud statutes do not require first party reliance.  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 642, 648 (2008); see also ECF No. 32 at 16 n.14 ("Contrary to arguments raised by Defendants, Plaintiffs do not need to show that *they* relied on the false or misleading statements to their detriment.") (emphasis in original).  Nor is it a requirement for "the deceiver to obtain property through the deceit," as Defendants argue, because the Third Circuit has held that "the mail fraud statute does not require that a scheme be designed to obtain any property from the victim; rather it is sufficient that the scheme is designed to fraudulently deprive the victim of property or an interest in property."  Hedaithy, 392 F.3d at 605.  As the court similarly held in Shaw v. Rolex Watch U.S.A., Inc., 726 F. Supp. 969 (S.D.N.Y. 1989), consistent with the later holding in Bridge, "a mail fraud claim is sufficient if it is alleged that the defendant intended fraudulently to *deprive* another of money or property," and "[a] plaintiff who is injured as a

proximate result of fraud should be able to recover regardless of whether he or a third party is the one deceived." Shaw, 726 F. Supp. at 971, 973 (emphasis in original).  That is precisely the situation here.

Defendants claim that Mendez Internet Management Services, Inc. v. Banco Santander de Puerto Rico, 621 F.3d 10 (1st Cir. 2010) supports their fabricated mail and wire fraud test described above.   Defendants grossly misconstrue Mendez.  According to Defendants, the First Circuit found the mail and wire fraud claims lacking because the alleged misrepresentations did not: (1) deprive the plaintiff's deceived customers of their property; or (2) allow the defendants to acquire a financial gain through the deceit.  (Db. 10-11).  This is untrue.  The First Circuit found that the plaintiffs had pled only defamation because there was no allegation of reliance at all – first or third party – or that the defendant would gain financially by causing the plaintiff to fail.  Mendez, 621 F.3d at 15.  Here, Plaintiffs have pled third party reliance.  Unlike in Mendez, the alleged "deceived parties" are Plaintiffs' customers, not parties accused of being co-conspirators with Defendants.  Cf. Mendez, 621 F.3d at 15 ("nor does he claim that the banks were deceived, charging instead that they were conspirators with [defendant]").

To get around these clearly distinguishing facts, Defendants inappropriately seek to transform the First Circuit's explanation of what the "familiar pattern" of a fraud claim is into an explication of the *prima facie* mail and wire fraud claim.  621 F.2d at 15 ("in fraud cases, the familiar pattern is a material deceitful statement or

14

omission causing the victim to undertake a transaction that inflicts economic loss on the defrauded party and ordinarily benefits the deceiving party"). However, Defendants omit that the First Circuit went on to clarify that "unlike common law fraud, mail and wire fraud does not require first party reliance." Id. at 15 n.5. Under Defendants' misinterpretation of Mendez, the deceived party must relinquish its property or the deceiver must obtain property in order to state a claim. This interpretation leaves no room for third-party reliance – which has been expressly approved by the Supreme Court in Bridge – and it directly contradicts the Third Circuit's holding in Hedaithy. Cf. Chevron Corp. v. Donziger, No. 11-691, 2012 WL 3223671, at *4 (S.D.N.Y. May 24, 2012) (citing Bridge and noting that "Defendants are attempting to import common law fraud requirements into pleading mail and wire fraud predicate acts. They cannot properly do so").

The other cases relied on by Defendants – Kimm v. Lee, No. 04-5724, 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005), Kredietbank N.V. v. Joyce Morris, Inc., No. 84-1903, 1986 WL 5926, at *4 (D.N.J. Jan. 9), aff'd, 808 F.2d 1516 (1986), and Chovanes v. Thoroughbred Racing Ass'n, No. 99-185, 2001 WL 43780, at *5 (E.D. Pa. Jan. 18, 2001) (Db12) – are inapposite for at least two reasons. First, they are pre-Bridge cases and are thus no longer good law to the extent that they require first party reliance. In fact, the Court's holding in Chovanes was based on its understanding that mail and wire fraud requires first party reliance and, therefore, that the victim and the deceived be the same person. Chovanes, 2001

15

WL 43780, at *5 ("[T]he third parties who heard that defamatory falsehood were not induced to part with anything of value as a result.  The victim of defamation is the person who is lied about; the victim of fraud is the person who is lied to."). Notably not a single court has cited to <u>Chovanes</u> to discuss predicate acts of mail and wire fraud post-<u>Bridge</u>.

<u>Kredietbank</u> and <u>Kimm</u> are further distinguishable in that the parties failed to allege a scheme to deprive the victim of its property by means of false or fraudulent pretenses.  At most, the parties pled the more general "intent to harm." Kimm, 2005 WL 89386, at *4-5; <u>Kredietbank</u>, 1986 WL 5926, at *4.  In <u>Kimm</u>, the plaintiff merely alleged that false information was disseminated with the intent to hurt the plaintiff's business and reputation.  2005 WL 89386, at *4.  Similarly, in <u>Kredietbank</u>, the counterclaimants failed to allege anything beyond a scheme to harm their business and reputation.  1986 WL 5926, at *4.  In neither case did the claimants allege an intent to deprive them of property through false statements. See <u>Kredietbank</u>, 1986 WL 5926, at *4; <u>Kimm</u>, 2005 WL 89386, at *4.

In addition to improperly importing common law fraud elements into a claim for mail and wire fraud, Defendants contort the analysis in <u>Bridge</u> to fabricate yet another element of the *prima facie* mail and wire fraud claim.   (Db. 13). Defendants argue that unless the Unions and Plaintiffs are business competitors, Plaintiffs cannot pursue a mail or wire fraud claim based on third-party reliance. Defendants come to this remarkable conclusion on the basis of hypotheticals in

16

Bridge and a pre-Bridge Fifth Circuit case, Procter & Gamble Co. v. Amway Corporation, 242 F.3d 539, 564-65 (5th Cir. 2001).  In Procter & Gamble, the Fifth Circuit reaffirmed its prior ruling that there is a limited exception to the requirement of first party reliance.   Id. That exception was not limited to competition, however – "a target of a fraud that did not itself rely on the fraud may pursue a RICO claim if the other elements of proximate causation are present, such as where a competitor is spreading rumors to lure customers away."  Id.

Nothing within Bridge or Procter & Gamble suggests that business competition is an essential element of a third-party reliance mail and wire fraud claim.  On the contrary, courts in and outside of this Circuit have upheld mail and wire fraud claims based on third party reliance in circumstances in cases not involving business competitors.  See e.g., Chevron Corp. v. Donziger, No. 11-691, 2014 WL 815923, at *35 (S.D.N.Y. Mar. 4, 2014) (attorney sought to induce plaintiff to settle at a higher than justified figure through numerous deceitful schemes, including false statements to the media and to public officials that were made to increase the pressure on the plaintiff); Pappa v. Unum Life Ins. Co. of Am., No. 07-0708, 2008 WL 744820, at *7 (M.D. Pa. Mar. 18, 2008) (doctors allegedly relied on false statements by defendant that the plaintiff could return to work and as a consequence the plaintiff lost his benefits); Texas Air Corp. v. Air Line Pilots Assoc. Int'l, No. 88-0804, 1989 WL 146414, at *4-5 (S.D. Fla. Jul. 14, 1989) (union allegedly deprived an airline of customers by making false statements

17

to the public about its safety record).  Indeed, to rule otherwise would read first party reliance and the obtaining of the victim's property through the deceit back into the mail and wire fraud statutes, in direct contravention of <u>Bridge</u> and <u>Hedaithy</u>.  Under <u>Bridge</u> and <u>Hedaithy</u>, Plaintiffs have more than sufficiently clarified the scheme to defraud.

**B.    The Amended Complaint Sufficiently Alleges Predicate Acts of Extortion and Attempted Extortion**

Plaintiffs also sufficiently allege RICO predicate acts of extortion and attempted extortion chargeable under the laws of Connecticut, Massachusetts and New Jersey.  Conn. Gen. Stat. Ann. § 53a-119; N.J. Stat. Ann. § 2C:20-5; Mass. Gen. Laws Ann. ch. 271, § 39.  In its October 10, 2013 Opinion, the Court found that "extortion claims under these state statutes are permissible to the extent that they do not require 'obtaining property.'"  (ECF No. 32 at 13-14).  The Court also found that "as pled, Plaintiffs have articulated a 'property' right and 'something of value' for the purposes of the statute."  (ECF No. 32 at 13).  The Court noted that "Plaintiffs would need to clarify the 'obtaining property' component of 'extortion' in their pleadings were they to proceed under the Hobbs Act or related statute," and granted Plaintiffs leave to amend to clarify this element.  (ECF No. 32 at 13, 14).

**1.    Plaintiffs have clarified the "obtaining property" element of their extortion claims**

As directed by the Court, Plaintiffs have clarified the "obtaining property" component of their extortion claim.   The Amended Complaint specifically

18

identifies the property Defendants seek to obtain and explains how it is transferable.  (ECF No. 37, ¶¶146-58).   This transferable property includes:

- Money in the form of Union dues paid directly from Plaintiffs to Defendants, increased wages for represented members, contributions to Defendants severely underperforming pension funds, payment of health plan fees and coverage costs, and contributions to the UHWE and NEHCEU Training Funds.  (ECF No. 37, ¶¶148-51).

- Control over the use of Plaintiffs' business assets that necessarily results from forced unionization, which syphon substantial sums of money from Plaintiffs to Defendants.  (ECF No. 37, ¶¶153, 154, 155).

- Control over Plaintiffs' communications by demanding that Plaintiffs refrain from lawfully voicing their opinions related to labor unions generally and to the Defendant UHWE specifically during future organizing campaigns.  (ECF No. 37, ¶¶157, 158).

- Access to Plaintiffs' private property -- either to handle union affairs in unionized facilities or to accost Plaintiffs' non-union employees into joining the Unions – which are akin to demands that Plaintiffs transfer to Defendants a portion of Plaintiffs' occupancy rights.  (ECF No. 37, ¶152).

- Plaintiffs' confidential business information, including the names and contact information for Plaintiffs' non-unionized employees.  (ECF No. 37, ¶156).

Defendants argue that Plaintiffs do not allege that Defendants are seeking to obtain Plaintiffs' property in connection with Defendants' so-called "organizing-ground-rules demand."  (Db26-27).  This argument overlooks that Plaintiffs allege that the money and other transferable property described above would flow directly from Plaintiffs' recognition of UHWE as the exclusive bargaining agent for the employees in Plaintiffs' non-unionized facilities.  (See ECF No. 37, ¶¶ 145-58).  It

19

also overlooks that "[i]n reality, the right to recognize (or not) a union as bargaining representative is among the most valuable and important rights possessed by business owners." Smithfield Foods, Inc. v. United Food and Comm'l Workers Int'l Union, 633 F. Supp. 2d 214, 224 (E.D. Va. 2008).

Relying on Sekhar v. United States, 133 S. Ct. 2720 (2013), Defendants argue that a demand for Plaintiff's "free speech" rights is not transferable. (Db25). But Defendants are not merely seeking Plaintiffs' free speech rights. Through their forced unionization demand, Defendants seek, among other things, millions of dollars from Plaintiffs in contributions to Defendants' pension, training, and similar funds. Sekhar makes clear that these items are obtainable and extortable. See Sekhar, 133 S. Ct. at 2724 ("Extortion required the obtaining of items of value, typically cash, from the victim").[2] Sekhar also did not address the numerous other forms of tangible property items that Defendants seek to obtain through their forced unionization demand, including wages and benefits from labor contracts and unwanted and superfluous labor. This is also transferable and extortable property.

---

[2] Notably, it does not matter whether Defendants intended that the money go to themselves or to others. "[T]he 'obtaining' requirement is 'further explained as bringing about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another.'" Smithfield Foods, Inc. v. United Food and Comm'l Workers Int'l Union, 585 F. Supp. 2d 789, 809 (E.D. Va. 2008) (quoting Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 408 n.13 (2003)). Thus, the "obtaining property" requirement is satisfied where "the Defendants have sought to acquire (even if indirectly) highly-valuable legal rights from [the plaintiff] through their allegedly extortionate attempts to gain union recognition and a first contract." Smithfield, 585 F. Supp. 2d at 809.

Cf. <u>United States v. Larson</u>, No. 07–CR–304S, 2013 WL 5573046, *4-6 (W.D.N.Y. Oct. 9, 2013) (extortable property includes wage benefits under labor contract and for unwanted, unnecessary, and superfluous labor).[3]  Thus, Plaintiffs have more than sufficiently pled that Defendants seek to obtain transferable property from Plaintiffs.

### 2.    The "wrongfulness" standard under the Hobbs Act does not apply to RICO predicate acts of state law extortion

As they did in their brief in support of their initial motion to dismiss, Defendants argue the Hobbs Act's "wrongfulness" standard must be engrafted onto their state law extortion claims.   (Db16-17; <u>cf.</u> ECF No. 10-1, pp. 9-11). Defendants again rely on <u>Scheidler</u>, in which the Court held that a party could proceed on a RICO claim based on act or threat involving extortion chargeable under state law, if it had a different label than extortion (e.g., blackmail), where the proscribed conduct fell within "a generic definition of extortion." <u>Scheidler</u>, 537 U.S. at 409-10 (citing <u>Nardello v. U.S.</u>, 393 U.S. 286, 296 (1969)) (explaining that

---

[3] Defendants rely without merit on <u>Wackenhut Corp. v. SEIU</u>, 593 F. Supp. 2d 1289 (S.D. Fla. 2009) (Db26).   There, the property sought was limited to "Wackenhut's right to control the form and nature of the union recognition process that applies to its employees," and did not involve the types of property that Defendants seek here – including money, wages, benefits, access to premises, and confidential information.   <u>See</u> 593 F. Supp. 2d at 1296.  Defendants also argue that access to employees and employee lists have been held not to constitute things of value in other contexts, such as under Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186.   (Db26).  But this is not an LMRA case, and the Amended Complaint details how the property Defendants seek has value to Plaintiffs and can be transferred to Defendants.  (ECF No. 37, ¶¶152, 156).

regardless of Pennsylvania's labeling defendants' acts as blackmail and not extortion … the activity encompassed the type generally known as extortionate). This reliance is misplaced.  Scheidler did not hold, as Defendants suggest, that the "wrongfulness" requirement for Hobbs Act extortion under United States v. Enmons, 410 U.S. 396 (1973), must be engrafted onto state law extortion claims.[4] The Court in Scheidler explained that "generic" extortion is defined as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats."  Scheidler, 537 U.S. at 409.  In doing so, the Scheidler Court was focused on whether the conduct involved obtaining or attempting to obtain the victim's property, not on whether the conduct satisfied a uniform definition of "wrongfulness."  See id. at 410 ("Because petitioners did not obtain or attempt to obtain respondents' property, both the state extortion claims and the claim of attempting or conspiring to commit state extortion were fatally flawed."). Thus, there is no basis for Defendants' assertion that the Hobbs Act's definition of "wrongful" applies to state law extortion predicate acts under RICO.  See Smithfield, 585 F. Supp. 2d at 802 (rejecting an interpretation of RICO that would "effectively 'read out' of 18 U.S.C. § 1961(1) 'any act or threat involving extortion chargeable under state law' if such conduct failed to satisfy the 'wrongfulness' requirement of Enmons); accord United States v. Caggiano, No. 07-CR-304S,

---

[4] In Enmons, the Supreme Court held that the use of violence in a labor strike was not extortion under the Hobbs Act where the union had a lawful claim of right to the property—for example, higher wages.  Enmons, 410 U.S. at 400.

2014 WL 104968, *2 (W.D.N.Y. Jan. 9, 2014) ("<u>Enmons</u> does not modify or clarify the generic definition of extortion, and the application of the legitimate labor objective exception is therefore limited to Hobbs Act extortion charges"; and further noting that "to use <u>Enmons</u> to legalize conduct made criminal under state law would turn <u>Enmons</u> upside down.") (citation and internal quotation marks omitted); <u>Teamsters Local 372 v. Detroit Newspapers</u>, 956 F. Supp. 753, 764 (E.D. Mich. 1997) (noting that notwithstanding <u>Enmons</u>, "conduct alleged to violate the Michigan extortion statute can form the basis of a RICO predicate act"); <u>C&W Constr. Co. v. Bh'd of Carpenters and Joiners, Local 745</u>, 687 F. Supp. 1453, 1469 (D. Haw. 1988) ("Even if the Hobbs Act did not support the plaintiffs' RICO claim, the court could …allow the plaintiffs to amend their complaint under Fed. R. Civ. P. 15(a) to plead violations of state extortion law.").

This Court did not hold otherwise as Defendants argue. (Db16). Defendants cite the portion of this Court's Opinion quoting <u>Scheidler</u>'s explanation that "'generic' extortion is defined as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats.'" (ECF No. 32, at 10-11 (quoting <u>Scheidler</u>, 537 U.S. at 409). However, in quoting this language, this Court did not hold that the <u>Enmons</u> interpretation of the Hobbs Act's "wrongfulness" standard applied to Plaintiffs' state law extortion claims. Rather, consistent with <u>Scheidler</u>, this Court focused on the "obtaining property" element of an extortion claim. (ECF No. 32 at 12) ("Plaintiffs do need to demonstrate some

23

action beyond an interference with Plaintiffs' property right for RICO") (citing Scheidler, 537 U.S. at 404-05). Nowhere did the Court hold that Plaintiffs' state law extortion claims were deficient for failure to allege that Defendants' conduct was "wrongful" under the Enmons interpretation of the Hobbs Act. Quite the contrary, the Court held that "[t]he extortion claims under these state statutes are permissible to the extent that they do not require 'obtaining property.'" (ECF No. 32 at 13-14). Thus, Defendants' efforts to engraft the Enmons "wrongfulness" standard onto Plaintiffs' state law extortion claims must be rejected.

### 3. Even if the Hobbs Act "wrongfulness" standard applied, the Court has already found that Defendants' conduct is "wrongful"

Even if Plaintiffs were required to satisfy some uniform definition of "wrongfulness," they have done so. In fact, this Court has already found that "properly pled, the actions Plaintiffs allege could be 'wrongful' under the Hobbs Act." (ECF No. 32 at 13 n.13). Among other things, the Court noted that Defendants' conduct would be "wrongful" under that statute if their tactics were "used to obtain property for non-legitimate union purposes." (ECF No. 32 at 9 n.9). The Court added that "[n]on-legitimate purposes have included where a union was not authorized to act on behalf of employees." (Id.) (citing United States v. Larson, 807 F. Supp. 2d 142, 154-55, 157 (W.D.N.Y. 2011)). Thus, Defendants' efforts to force Plaintiffs to recognize Defendants at Plaintiffs' non-unionized facilities would unquestionably be "wrongful" under the Hobbs Act.

(ECF No. 37, ¶¶6, 7, 36, 120).   Even in Plaintiffs' unionized facilities, Defendants have no lawful right to the millions of dollars they seek from Plaintiffs in the form of increased union membership, union dues, contributions to Defendants' pension funds, unwanted and superfluous labor services, and direct payments to Defendants in the form of contributions to their training funds.  (ECF No. 37, ¶¶3, 136, 145, 148-51).  As this Court has held, "Plaintiffs are not required by law to enter into such an agreement or turn over such control or funds."  (ECF No. 32 at 13).

Relying on Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494 (3d Cir. 1998), Defendants argue that their acts of extortion through so-called "peaceful economic pressure" are not "wrongful" because their conduct is allegedly for "legitimate" purposes – i.e., forced unionization and collective bargaining concessions.  (Db17).[5]  This reliance is misplaced.  Brokerage Concepts is a Hobbs Act case and does not involve state law extortion as is at issue here. Moreover, in Brokerage Concepts, the Third Circuit, following Enmons, held that a defendant is not guilty of Hobbs Act extortion if it has a "lawful claim to the property obtained" by the allegedly extortionate acts.  Brokerage Concepts, 140 F.3d at 523.  In holding that a "claim of right" defense was available in cases that "involve solely the allegation of the use of economic fear in a transaction between

---

[5]  Defendants concede that the strike-related sabotage in furtherance of their extortionate demands would be "wrongful" under any standard.  (Db27) ("the alleged acts of sabotage that took place in Connecticut on July 2-3, 2012, do not fall within the coverage of" the Brokerage Concept test of "wrongfulness").

two private parties," the Third Circuit made "no effort to announce any broad principles in this difficult area." Id. at 503.  Rather, it limited its holding to a "very narrow subset of the potential universe of extortion cases: one involving the accusation of the wrongful use of economic fear where two private parties have engaged in a mutually beneficial exchange of property." Id. at 503; see also id. at 525-26.  This case does not involve a mutually beneficial exchange of property. Defendants are unilaterally seeking to obtain Plaintiffs' property through their extortion campaign.  (ECF No. 37. ¶¶145-58).  Cf. Desmond v. Siegel, No. 10-5562 (DRD), 2012 WL 3228681, *11 (D.N.J. Aug. 6, 2012) (holding that plaintiff sufficiently pled RICO predicate acts of attempted extortion under Hobbs Act and New Jersey law, despite defendant's offers to resolve business dispute "in a reasonable manner" and with a "fair commercial arrangement," where defendant supported threats of financial ruin with a false and misleading website accusing plaintiff of being a "thief who associated with criminals").

Moreover, in Brokerage Concepts, the Court set forth, as examples of illegitimate demands under the Hobbs Act, situations in which union officials demanded "personal payoffs" or the union sought to exact "wage" payments in return for "imposed, unwanted, superfluous and fictitious services" of workers. Brokerage Concepts, 140 F.3d at 524.  Here, the Amended Complaint specifically alleges that Defendants seek to extort substantial money and property from Plaintiffs in the form of increased union membership, union dues, contributions to

26

Defendants' pension funds, unwanted and superfluous labor services, and direct payments to Defendants in the form of contributions to their training funds. (ECF No. 37, ¶¶3, 136, 145, 148-51).

Defendants cite <u>Here, Local 57 v. Sage Hospitality Resources</u>, 390 F.3d 206 (3d Cir. 2004), and <u>Adcock v. Freightliner LLC</u>, 550 F.3d 369 (4th Cir. 2008), for the proposition that "labor-management neutrality agreements are lawful and enforceable under federal labor law." (Db23-24). These cases do not help Defendants. Both cases merely hold that neutrality and cooperation agreements between employers and labor unions do not violate Section 302 of the LMRA, which generally bars employers from giving a union any thing of value. <u>Adcock</u>, 550 F.3d at 374; <u>Sage Hospitality</u>, 390 F.3d at 219. In distinguishing both <u>Adcock</u> and <u>Sage Hospitality</u>, the Eleventh Circuit held that "[i]t is too broad to hold that all neutrality and cooperation agreements are exempt from the prohibitions in § 302." <u>Mulhall v. Unite Here Local 355</u>, 667 F. 3d 1211, 1215 (11th Cir. 2012). As that Court explained, "innocuous ground rules can become illegal payments if used as valuable consideration in a scheme to corrupt a union or to extort a benefit from an employer." <u>Id.</u> Here, Plaintiffs allege that Defendants seek to extort all manner of benefits from Plaintiffs, including union dues, contributions to Defendants' pension funds, unwanted and superfluous labor services, and direct payments to Defendants' training funds. (ECF No. 37, ¶¶3, 136, 145, 148-51).

Moreover, <u>Adcock</u> and <u>Sage Hospitality</u> involved neutrality agreements with

27

willing employers.  Neither case suggested that a labor union may lawfully engage in all manner of extortionate threats where the aim is to force a neutrality agreement on an <u>unwilling</u> employer whose employees are not represented by the union.  As then judge (now Justice) Sotomayor explained in <u>A. Terzi Productions, Inc. v. Theatrical Protective Union</u>, 2 F. Supp. 2d 485, 507 (S.D.N.Y. 1998), "forcing a collective bargaining agreement upon unwilling employees and their employer is 'wrongful' within the Hobbs Act meaning" because "the union is an outside meddler with no lawful claim to the employer's property."  <u>A. Terzi</u>, 2 F. Supp. 2d at 507.[6]  Thus, even if Plaintiffs were required to plead the Hobbs Act "wrongfulness" standard (which they are not), they have more than sufficiently alleged that Defendants conduct was "wrongful" under the Hobbs Act.

### 4. Plaintiffs plead a sufficient basis to hold NEHCEU responsible for the conduct of its lead organizers in directing the acts of sabotage

Contrary to Defendants' assertions (Db 27-29), Plaintiffs plead a sufficient basis to hold Defendants liable for the acts of sabotage at Plaintiffs' Connecticut

---

[6] Defendants thus also rely without merit upon <u>Cintas Corp. v. UNITE HERE</u>, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) (Db24).  <u>Cintas</u> misreads <u>Scheidler</u> as conflating the Hobbs Act "wrongfulness" requirement onto state law extortion claims. <u>Cintas</u>, 601 F. Supp. 2d at 578.  The Court there also noted that the defendants' conduct did not rise to the level of extortion because, among other things, it did not have a "wrongful purpose – a collective bargaining agreement without any process to recognize them as the collective bargaining agent."  <u>Id.</u> at 578 n.1. Here, the Complaint alleges, among other things, that Defendants seek recognition where they are not authorized to act on behalf of Plaintiffs' employees.  (ECF No. 37, ¶¶6, 36, 120).  As this Court has already held, this is a "wrongful" purpose under the Hobbs Act.  (ECF No. 32 at 9 n.9).

facilities.  In their brief in support of their first motion to dismiss, Defendants argued that Plaintiffs had not satisfied the purported standards under the Norris-LaGuardia Act ("NLGA") for imputing these violent acts to the Union because they had not established "clear proof" of actual participation in, actual authorization of, or ratification of these acts. (ECF No. 10-1, p. 19) (citing 29 U.S.C. § 106).  The Court rejected this argument, finding that "Norris-LaGuardia Act would not bar Plaintiffs' claims of violence and extortion."  (ECF No. 32 at 15) (citing Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, 965 F.2d 1224, 1238 (2d Cir. 1992)).  However, the Court directed Plaintiffs to "specifically plead a basis for which Defendants should be held accountable for many of the alleged acts of unidentified individuals in furtherance of a conspiracy or enterprise and for wire and mail fraud." (ECF No. 32 at 15).  Plaintiffs have done so, adding sections detailing the Unions' control over their members' activities and specifically explaining how the Unions were responsible for the numerous acts of racketeering identified in the Amended Complaint, including the acts of sabotage.  (ECF No. 37, ¶¶104-07, 160-63).

Now, relying on Iqbal and Santiago v. Warminster Township, 629 F.3d 121, 131 (3d Cir. 2010), Defendants seek to impose an even higher pleading standard than the NLGA standard that this Court found not to apply.  (Db28).  However, Iqbal was a Bivens suit, and Santiago was a suit under 42 U.S.C. § 1983, and the issue in those cases was whether the plaintiffs had alleged sufficient facts to

establish supervisory liability for those types of claims. "Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676; <u>see also</u> <u>Santiago</u>, 629 F.3d at 130 (claim of supervisory liability under Section 1983 requires plausible allegations demonstrating that supervisors directed others to violate constitutional rights). Here, Plaintiffs need not plead the standards for establishing supervisory liability applicable to <u>Bivens</u> and § 1983 claims. Under RICO, an organization may be held <u>vicariously</u> liable for the actions of its employees or agents, where such liability is not otherwise prohibited by the statute. <u>Petro-Tech, Inc. v. Western Co. of North America</u>, 824 F.2d 1349, 1358 (3d Cir. 1987).[7]

Contrary to Defendants' misleading suggestion, the pleading standards for vicarious liability claims under RICO are less stringent than those applicable to supervisory liability claims under <u>Bivens</u> or § 1983. In <u>Clark v. Conahan</u>, 737 F. Supp. 2d 239 (M.D. Pa. 2010), the Court found that the plaintiff sufficiently pled a

---

[7] In <u>Petro-Tech</u>, the Third Circuit held that respondeat superior liability under § 1962(c) would be foreclosed "insofar as it would make the enterprise liable for RICO violations which victimized it." <u>Petro-Tech</u>, 824 F.2d at 1359. "Unless the employer is the § 1962(c) enterprise at the same time as its employees are the § 1962(c) persons, however, vicarious liability may be appropriate." <u>Petro-Tech</u>, 824 F.2d at 1351. Here, Plaintiffs do not allege that either Defendant is the RICO enterprise at the same time as its employees are the RICO "persons." Moreover, respondeat superior liability "may be appropriate so long as the employer/enterprise actually benefited from the persons' predicate acts." <u>Id.</u> Here, the acts of sabotage benefited Defendants by advancing the goals of Defendants' corporate campaign against Plaintiffs. (<u>See</u>, <u>e.g.</u>, ECF No. 37, ¶¶ 7, 162).

basis for holding an employer vicariously liable under RICO for the actions of its employee. There, one of the employer defendants argued that it should not be held vicariously liable for the actions of its employee because the employee was purportedly acting outside the scope of his employment. Clark, 737 F. Supp. 2d at 270. The Court noted that "[c]onduct is within the scope of employment if a) it is the kind that the employee is employed to perform, b) it occurs substantially within the authorized time and space limits, and c) it is actuated, at least in part, by a purpose to serve the master." Clark, 737 F. Supp. 2d at 270 (citing CNA v. United States, 535 F.3d 132, 146 (3d Cir. 2008)). The Court further noted that "all of these inquiries are factual questions that are not properly determined at the motion to dismiss stage. Without a developed factual record, it is impossible to know the scope and contours of [the employee's] relationship with [the employer]. While his activities here might well be outside that scope, it is too early for this Court to make that determination and the motion to dismiss will be denied." Clark, 737 F. Supp. 2d at 270. Here, just as in Clark, the question of Defendants' vicarious liability for the acts of NEHCEU's lead organizers and other participants in the sabotage is a factual determination that is not properly addressed at the motion to dismiss stage. It suffices that Plaintiffs allege that lead organizers employed by and acting on behalf of NEHCEU directed the sabotage. (ECF No. 37, ¶162).

In any event, the Amended Complaint plausibly alleges numerous additional bases to hold Defendants vicariously liable for these acts of sabotage. Among

31

other things, Plaintiffs note that, as directed in the NEHCEU bylaws and the UHWE constitution, Defendants exercise almost total control over the actions of their members in carrying out the SEIU's forced unionization and contract campaign mandates.  (ECF No. 37, ¶¶104-06, Exhs. QQ, RR).  Plaintiffs further allege that the acts of sabotage were authorized in advance by the lead organizers employed by NEHCEU.  (ECF No. 37, ¶162).  As a result, these lead organizers came under criminal investigation by the Connecticut Chief State's Attorney's Office.  (ECF No. 37, ¶162).  Moreover, not only were the tactics employed by the strikers in July 2012 consistent with acts of sabotage that occurred on the eve of prior NEHCEU strikes in 1998 and 2001, these tactics are consistent with tactics employed by numerous SEIU locals following the Corporate Campaign Model.  (ECF No. 37, ¶162).  The NEHCEU's Bylaws themselves strongly suggest that Defendants authorized these actions, as only the NEHCEU's Executive Board may call for a strike and members may be punished for "refusing to participate in a duly organized strike or other collective job action."  (ECF No. 37, ¶163 & Exh. QQ).  These allegations are more than sufficient to hold Defendants responsible for the sabotage, particularly at the pleading stage. See SCI Illinois Svcs., Inc. v. Coli, No.11-7762, 2012 WL 2152829, at *3 n.2 (N.D. Ill. June 6, 2012) ("While there is no hard evidence linking Defendants to the acts of vandalism, Plaintiff is only required to make plausible allegations at this stage.  The timing and targeted nature of the vandalism nudges the claims from the conceivable to the plausible.");

Asbestos & Lead Removal Corp. v. Severino, No. 06-5949, 2007 WL 925485, at *5 (E.D.N.Y. Mar. 23, 2007) ("Even if 'clear proof' of actual participation or authorization is ultimately lacking, plaintiffs' allegations against the union and the individual defendants are sufficient to survive the motion to dismiss").

## C.     The Amended Complaint, Like the Original Complaint, Sufficiently Alleges Predicate Acts of Travel Act Violations

As the Court has already found, Plaintiffs have also amply alleged Travel Act violations through the unlawful activity of extortion as prohibited under Connecticut, New Jersey, and Massachusetts law.  (Compl. ¶159).  The three elements of a Travel Act violation are:  (1) interstate travel or use of an interstate facility; (2) with intent to promote, direct, or manage unlawful activity; and (3) a subsequent overt act in furtherance of the unlawful activity.  18 U.S.C. § 1952; United States v. Wander, 601 F.2d 1251, 1258 (3d Cir. 1979).  As with the original complaint, Plaintiffs base their Travel Act claims on the fact that, on August 23, 2012, Defendants bused approximately 100 union members from Connecticut to the George Washington Bridge to protest at Plaintiffs' Fort Lee, New Jersey headquarters, where some members allegedly forced their way into the facility to confront senior officials with demands; and that Defendants hired billboard trucks to drive throughout Connecticut and New Jersey displaying false and misleading statements about Plaintiffs' facilities in front of the facilities, and obstructed traffic and access to the facilities.  (ECF No. 37, ¶¶167, 204-13).  The Court found that

"Defendants disagree with the characterization of the facts presented; however, viewed in the light most favorable to Plaintiffs, Plaintiffs meet the basic requirements to plead a claim under the Travel Act."  (ECF No. 32 at 14).

Defendants claim that the Court did not mean what it said when it held that "Plaintiffs meet the basis requirements to plead a claim under the Travel Act" because, they argue, Plaintiffs have not adequately pled extortion "chargeable under State law."  (Db30).  To the contrary, not only did the Court in its October 10, 2013 Opinion specifically find that Plaintiffs' state law extortion claims "are permissible to the extent that they do not require 'obtaining property'" (ECF No. 32 at 13-14), the Court also granted Plaintiffs leave to replead to clarify the "obtaining property" component to the extent that these claims require the obtaining of property.  (ECF No. 32 at 13, 14).  As shown in Point II.B.1 above, Plaintiffs have clarified the "obtaining property" element.  And as shown in Points II.B.2 through II.B.4 above, Plaintiffs otherwise continue to sufficiently plead predicate acts of state law extortion.  Thus, as the Court has already found, Plaintiffs continue to plead viable Travel Act violations as RICO predicate acts.

## POINT THREE

### THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES PATTERN ALLEGATIONS

Curiously, Defendants argue that the acts of sabotage on July 2-3, 2012, directed by NEHCEU lead organizers, cannot, standing alone, satisfy the

"continuity" requirement of RICO's "pattern" element.   (Db33-34).   However, Plaintiffs have never relied on the acts of sabotage on July 2-3, 2012, standing alone, to satisfy the continuity requirement.   "Continuity" under RICO includes "both a closed- and open-ended concept, referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition.  See Tabas v. Tabas, 47 F.3d 1280, 1292 (3d Cir. 1995) (citing H.J. Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 240 (1989)).   Here, Plaintiffs' continuity allegations are based, in part, on a series of numerous related unlawful acts beginning as early as 2010 and continuing through the present.  (ECF No. 37, ¶¶124-26).   Plaintiffs explain how Defendants' acts of racketeering are related to each other in that they have similar purposes, results, participants, victims, methods of commission, and other distinguishing characteristics, and all have been done in furtherance of the SEIU's organizing and growth agenda.  (ECF No. 37, ¶¶127-33).   Plaintiffs also show how Defendants' related racketeering acts have extended over a substantial period of time and threaten to extend indefinitely into the future. (ECF No. 37, ¶¶134-37, 159-225, 252-57).   Plaintiffs also allege facts showing that extortion is Defendants' and the SEIU's regular way of doing business.  (ECF No. 37, ¶¶134-37, 226-51).  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412 (3d Cir. 1991) ("One method of demonstrating continuity is to show that 'the predicate acts of offenses are part of an ongoing entity's regular way of doing business.'") (quoting H.J. Inc., 492 U.S. at 242).

Thus, Plaintiffs' allegations are more than sufficient to establish the continuity requirement.  In asserting that the acts of strike-related sabotage on July 2-3, 2012, do not, in isolation, satisfy the continuity requirement, Defendants effectively concede that the numerous acts of racketeering described in the Amended Complaint, taken as a whole, amply establish this requirement.

## POINT FOUR

### PLAINTIFFS' CLAIMS IN COUNTS ONE AND TWO SUFFICIENTLY ALLEGE THE REQUISITE § 1964(c) INJURY

Finally, Plaintiffs adequately state claims in Counts One and Two that Defendants violated 18 U.S.C. § 1962(d) by conspiring to violate §§ 1962(a) and 1962(b).  In their motion to dismiss the original Complaint, Defendants argued that these Counts should be dismissed because Plaintiffs had not alleged completed violations of §§ 1962(a) and 1962(b).  (ECF No. 10-1, pp. 31-35).  In its October 10, 2013 Opinion, the Court rejected this argument, stating that "a completed violation of §§1962(a) and (b) [is] not necessary to properly plead a violation of §1962(d)."  (ECF No. 32 at 17 n.18); accord Salinas v. United States, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues.").

Now, Defendants seek to repackage this argument as a purported failure to meet the requirements of Section 1964(c).  Relying on Beck v. Prupis, 529 U.S. 494 (2000), Defendants renew their argument that while Plaintiffs have pled a

violation of Section 1962(d), they have not met the requirements of Section 1964(c).   (Db36-40).   This argument misunderstands both <u>Beck</u> and Section 1964(c).  Section 1964(c) provides a private right of action to persons who have been injured in their property or business by reason of a violation of Section 1962. The question presented in <u>Beck</u> was whether a civil RICO plaintiff must allege an injury specifically resulting from an act of racketeering, rather than from any overt act in furtherance of the conspiracy, in order to state a valid claim under the conspiracy provision of Section 1962(d).  529 U.S. at 507.  However, nothing within <u>Beck</u>, Section 1964(c), or Section 1962(d) requires that the requisite injury to a civil Plaintiffs' business or property, in addition to being the result of a racketeering act, must necessarily come in the form of a completed violation of Sections 1962(a) or (b), i.e., injury by the use or investment of racketeering income or injury by acquiring an interest in a RICO enterprise.

Accordingly, Defendants have read an additional element into a conspiracy claim under Section 1962(d) claim that does not exist in the statute or the case law. <u>Beck</u> does not require that a civil RICO plaintiff must allege an injury resulting from a completed substantive violation of Section 1962(a), (b), or (c) in order to satisfy the 1964(c) injury requirement resulting from a violation of Section 1962(d).  On the contrary, <u>Beck</u> expressly declined to reach that very question. The Third Circuit has explained that "<u>Beck</u> stands for the proposition that a plaintiff bringing a § 1962(d) claim for conspiracy to violate § 1962(c) must allege

injury from a racketeering act enumerated in § 1961(1).  But <u>Beck</u> did not make clear whether that requisite racketeering act must be part of a consummated § 1962(c) violation."   <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d at 372 n.72. The Supreme Court explicitly made no ruling as to whether a civil RICO plaintiff "must allege an actionable violation of §§ 1962(a) or (b) or whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury." <u>Beck</u>, 529 U.S. at 506 n.10.

On the other hand, the case law in this Circuit makes clear that a plaintiff pursuing a RICO conspiracy claim under Section 1962(d) need not allege an injury from a completed substantive violation of Sections 1962(a) or (b); rather, the plaintiff need only allege an injury resulting from a racketeering act.  <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d at 374 n.72; <u>see also</u> <u>Kolar v. Preferred Real Estate Investments, Inc.</u>, 361 Fed. Appx. 354, n.13 (3d Cir. 2010) ("a plaintiff may plead a RICO conspiracy in the absence of an actionable claim under §§ 1962(a)-(c) so long as the complaint complies with Beck and the substantive claims fail only for lack of a causative injury"); <u>accord</u> <u>Rehkop v. Berwick Healthcare Corp.</u>, 95 F.3d 285, 290 (3d Cir. 1996).  Indeed, the very case relied upon by Defendants actually follows the Third Circuit's approach to civil Section 1962(d) claims. <u>United Broth. of Carpenters & Joiners of Am. v. Building & Const. Trades Dep't.</u>, 911 F. Supp. 2d 1118, 1133-34 (E.D. Wash. 2012) (no § 1962(d) claim because

"the Complaint in this case does not articulate a 'compensable injury' that flows from attempted extortion").   The Court in <u>United Brotherhood</u> explained that "section 1964(c) requires among other elements, the actual commission of a pattern of predicate RICO offenses and a compensable injury flowing directly from those *illegal predicate acts*," but made no mention of injury flowing from a completed substantive RICO violations.   911 F. Supp. 2d at 1134 (emphasis added).   As Plaintiffs plead the requisite agreement to violate §§ 1962(a) and 1962(b) and the requisite injury resulting from Defendants' racketeering activity in furtherance of that agreement, they have more than sufficiently pled a conspiracy to violate §§ 1962(a) and 1962(b) in Counts One and Two.

<u>**POINT FIVE**</u>

**IF, AFTER AMENDMENT, THE CLAIMS ARE DEEMED INADEQUATELY PLED, LEAVE TO FURTHER REPLEAD SHOULD BE GRANTED**

If the Court finds that Plaintiffs have not sufficiently cured the defects the Court identified in Plaintiffs' mail and wire fraud and extortion claims, there is no reason to dismiss these claims with prejudice as Defendants request.  (Db40). "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." <u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)); <u>see</u> <u>CareOne, LLC v. Burris</u>, No. 10-2309 (FLW), 2011 WL 2623503, *12-13 (D.N.J. June 28, 2011) (allowing RICO plaintiff the opportunity for curative

amendment).  Here, a curative amendment would be neither inequitable nor futile. The Court has already found that "amendment would not be futile" and specifically granted Plaintiffs leave to amend to cure defects it identified in Plaintiffs' original Complaint.  (ECF No. 32 at 17).  Plaintiffs' Amended Complaint responds in detail to each and every one of the defects the Court identified in its October 10, 2013 Opinion.  In light of the Court's rulings in that Opinion, the issue is not whether Plaintiffs have viable claims against Defendants under RICO; it is whether Plaintiffs have pled enough detail to cure the pleading defects the Court identified. While Plaintiffs believe that they have done so, to the extent that the Court finds otherwise, Plaintiffs should be given another opportunity to cure any remaining pleading defects the Court identifies.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.

Respectfully submitted,

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
*Attorneys for Plaintiffs*

By: /s/ Rosemary Alito_____
    Rosemary Alito

Dated:  March 31, 2014