## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Care One Management, LLC et al.,<br><br>Plaintiffs,<br><br>-v-<br><br>United Healthcare Workers East, SEIU 1199 and New England Healthcare Employees Union, District 1199,<br><br>Defendants. | Civil Action No. 2:12-cv-06371-SDW-MAH |

## DEFENDANTS' BRIEF IN OPPOSITION TO KEITH PERAINO AND NATIONAL LABOR CONSULTANTS' MOTION TO QUASH DEFENDANTS' SUBPOENA AD TESTIFICANDUM

R. Scott Thompson
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, NJ 07068
Tele: 973.597.2500
Fax: 973.597.2400
*Counsel for Defendants*

Robert M. Weinberg*
W. Gary Kohlman*
Leon Dayan*
Kathleen Keller*
Jacob Karabell*
Caitlin Kekacs*
**BREDHOFF & KAISER, PLLC**
805 15th Street, NW, Suite 1000
Washington, DC 20005
Tele: 202.842.2600
Fax: 202.842.1888
*Counsel for Defendants*

Richard A. Levy*
David M. Slutsky
Susan J. Cameron
**LEVY RATNER, PC**
80 8th Avenue, 8th Floor
New York, NY 10011
Tele:  (212) 627-8100
Fax:  (212) 627-8182
*Counsel for Defendant 1199SEIU*
*United Healthcare Workers East*

*Admitted pro hac vice

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION AND SUMMARY ....................................................... 1

COUNTERSTATEMENT OF THE FACTS ........................................... 3

    A. *The Underlying Labor Disputes and Plaintiffs' Commission of Unfair Labor Practices in Connection with Those Labor Disputes* ..................... 3

    B. *The Involvement of NLC and Keith Peraino in the Labor Dispute Relating to Defendant UHWE's Lawful Efforts To Organize the Employees at Certain of the Plaintiff Facilities* ........................................ 6

ARGUMENT ....................................................................................... 11

I.   Mr. Peraino's Testimony Is Highly Relevant to Defendants' Defenses in this Action ................................................................... 11

    A. *Mr. Peraino's Testimony Is Highly Relevant to Defendants' Defense That They Have Not Committed the RICO Predicate Act of Extortion* ... 12

    B. *Mr. Peraino's Testimony Also Is Directly Relevant to Defendants' Affirmative Defense of Unclean Hands* .................................................... 17

II.   The Court Also Should Reject Mr. Peraino's Fallback Argument That His Motion To Quash Should Be Granted in Order To Protect His Company's Purported Trade Secrets ....................................... 19

CONCLUSION ................................................................................... 21

i

# TABLE OF AUTHORITIES

## CASES

*Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22 (D.D.C. 2011)......20

*Alderson v. United States*, 718 F. Supp. 2d 1186 (C.D. Cal. 2010) ......................19

*Auciello Iron Works v. NLRB*, 517 U.S. 781 (1996)...................................................7

*Centrix Financial, LLC v. National Union Fire Ins. Co.*,
    2012 WL 6625920 (D.N.J. Dec. 18, 2012)...........................................................12

*Cmedia, LLC v. LifeKey Healthcare, Inc.*,
    216 F.R.D. 387 (N.D. Tex. 2003)................................................................. 19, 20

*Delbuono v. Clifford Dev.*, 2007 WL 2363155
    (Conn. Super. Ct. July 24, 2007) .........................................................................17

*Ford Motor Co. v. Edgewood Props., Inc.*,
    2011 WL 601312 (D.N.J. Feb. 15, 2001) ............................................................20

*Fresh & Easy Neighborhood Market*, 361 N.L.R.B. No. 12,
    2014 WL 3919910 (Aug. 11, 2014)......................................................................20

*Karpenko v. Leendertz*, 619 F.3d 259 (3d Cir. 2010) ....................................... 17, 18

*Kreisberg v. HealthBridge Mgmt., LLC*, 2012 WL 6553103
    (D. Conn. Dec. 14, 2012), *aff'd*, 732 F.3d 131 (2d Cir. 2013).............................4

*Leibholz v. Hariri*, 2008 WL 2697336 (D.N.J. June 30, 2008)...............................11

*Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966)............................... 14, 16

*Nat'l Org. for Women v. Scheidler*, 510 U.S. 249 ..................................................14

*Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342 (3d Cir. 1989) ..................17

*NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014).......................................................5

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974)..........................................................................................16

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)..........................................14

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)...17

*Somerset Valley Rehab. & Nursing Ctr.*, 357 N.L.R.B. No. 153 (Dec. 30, 2011)....5

*Somerset Valley Rehab. & Nursing Ctr.*, 358 N.L.R.B. No. 146,
2012 WL 4460801 (Sept. 26, 2012) ........................................................5

*Somerset Valley Rehabilitation & Nursing Ctr.*, 357 N.L.R.B. No. 71,
2011 WL 4498270 (Aug. 26, 2011)..........................................................5

*Syposs v. United States*, 181 F.R.D. 224 (W.D.N.Y. 1998) ....................................12

*United States v. Inigo*, 925 F.2d 641 (3d Cir. 1991)...............................................12

*Woodcrest Health Care Ctr.*, 359 N.L.R.B. No. 129 (July 10, 2013) ......................5

*Woodcrest Health Care Ctr.*, 359 N.L.R.B. No. 48,
2013 WL 124082 (Jan. 9, 2013) ..............................................................5

*Woodcrest Health Care Ctr.*, 360 N.L.R.B. No. 58 (Feb. 27, 2014).......................5

## STATUTES AND RULES

29 U.S.C. § 157...............................................................................................8

29 U.S.C. § 159(c)(3)........................................................................................7

Fed. R. Civ. P. 26(b)(1).......................................................................... 11, 12, 15

Fed. R. Civ. P. 26(c)........................................................................................11

Fed. R. Civ. P. 45 ............................................................................................12

## INTRODUCTION AND SUMMARY

In his motion to quash the deposition subpoena that Defendants served on him, Keith Peraino fails to acknowledge—much less come to terms with—the relevance his testimony will have to the *defenses* that Defendants will assert to Plaintiffs' claims. Instead, he simply asserts repeatedly and without elaboration that "this case does not concern lawful organizing methods engaged in by Defendants" as if it is he, not the Defendants themselves, who determines the nature and scope of the defenses in this action. *E.g.*, Doc. 173-8 (Peraino Br). at 1.

Because Peraino's testimony is highly relevant to a defense that Defendant United Healthcare Workers East, SEIU 1199 ("UHWE") intends to present to Plaintiffs' allegations that UHWE committed the RICO predicate act of extortion in the course of its efforts to organize certain of Plaintiffs' facilities, it is necessary to begin this Opposition with a brief discussion of that defense. In proving that defense, UHWE intends to show: (1) that Defendant UHWE set about to organize certain of Plaintiffs' New Jersey nursing homes through ordinary and lawful labor organizing activities; (2) that Plaintiffs reacted to UHWE's lawful organizing activities by committing numerous unfair labor practices in violation of the National Labor Relations Act ("NLRA"); (3) that UHWE was engaged in truthful speech when it, in turn, responded to Plaintiffs' acts by informing the public that Plaintiffs had violated federal labor law; and (4) that UHWE's objective in

1

publicizing Plaintiffs' labor law violations was to pressure Plaintiffs both to remedy those violations and to refrain from committing future violations.

Defendants subpoenaed Mr. Peraino because his testimony is critical to allowing Defendants to develop evidence supporting the second of these components. More specifically, Defendants intend to develop evidence that Mr. Peraino, acting through his company National Labor Consultants, LLC ("NLC") as Plaintiffs' agent, committed serious NLRA unfair labor practices that harmed Defendant UHWE in the lead-up to representation elections at certain of Plaintiffs' facilities. Defendants also intend to explore, among other relevant subjects, Mr. Peraino's knowledge of other unfair labor practices committed by Plaintiffs that have harmed UHWE.

This evidence will help to establish the highly relevant proposition that it is the Defendant Unions here—not the Plaintiffs—who were the victims of illegal conduct; that the media campaign complained of in the Amended Complaint included, as an important element, criticisms of Plaintiffs for being repeat labor law violators; and that this campaign was not extortionate, since the crime of extortion cannot possibly reach so far as to cover a putative defendant's truthful publicity criticizing a business where the purpose of the criticism is simply to pressure the business into remedying the unlawful conduct it has visited upon the defendant.

For these and other reasons set forth below, Mr. Peraino's motion to quash should be denied.

## COUNTERSTATEMENT OF THE FACTS

Because Mr. Peraino's brief in support of his motion to quash conspicuously ignores the two distinct and ongoing labor disputes that form the underpinning of this case, we begin by briefly describing those labor disputes. We then describe the involvement in those labor disputes by NLC and, by extension, Mr. Peraino.

A. *The Underlying Labor Disputes and Plaintiffs' Commission of Unfair Labor Practices in Connection with Those Labor Disputes*

The labor dispute between Plaintiffs and Defendant New England Healthcare Employees Union, District 1199 ("NEHCEU") involves ongoing collective bargaining negotiations covering five of Plaintiffs' Connecticut facilities. As part of those collective bargaining negotiations: (1) Plaintiffs opened the negotiations by demanding that NEHCEU make concessions in 38 of the 39 articles of the parties' prior collective bargaining agreement; (2) Plaintiffs locked out the employees at their West River facility for nearly five months—a lockout that Plaintiffs ended only after the independent prosecutorial arm of the National Labor Relations Board ("NLRB" or "the Board") issued a complaint alleging that the lockout was unlawful; and (3) Soon after the lockout ended, the Plaintiffs unilaterally imposed terms and conditions of employment covering employees at all five of the facilities, in response to which NEHCEU engaged in a lawful unfair-

3

labor-practice strike that continued until the U.S. District Court for the District of Connecticut issued an injunction, pursuant to Section 10(j) of the NLRA, requiring Plaintiffs to reinstate the striking workers and rescind the unilaterally imposed collective bargaining terms. *Kreisberg v. HealthBridge Mgmt., LLC*, 2012 WL 6553103, at *1, *2, *5, *12 (D. Conn. Dec. 14, 2012), *aff'd*, 732 F.3d 131 (2d Cir. 2013).

The separate labor dispute between Plaintiffs and Defendant UHWE does not involve collective bargaining negotiations, but rather involves UHWE's organizing efforts to file petitions with the NLRB to conduct secret-ballot representation elections at certain of Plaintiffs' facilities in the hope that the employees at these facilities will elect UHWE to serve as their collective bargaining representative. In 2010, UHWE filed a petition with the NLRB for such a representation election at Plaintiffs' Somerset Valley Rehabilitation and Nursing Center in New Jersey. Before and after that representation election, Plaintiff Somerset Valley committed "a variety of serious unfair labor practices"— including, as an NLRB administrative law judge concluded, unlawfully "disciplining and discharging four union supporters" and "accelerating the resignation of another union supporter." *Somerset Valley Rehab. & Nursing Ctr.*,

358 N.L.R.B. No. 146, 2012 WL 4460801, at *1 (Sept. 26, 2012).[1] Despite these unfair labor practices, UHWE prevailed in the secret-ballot representation election at Somerset Valley in September 2010, and it also prevailed in a secret-ballot representation election at the Woodcrest Health Care Center—also a Plaintiff in this action—more than a year later. *Woodcrest Health Care Ctr.*, 359 N.L.R.B. No. 48, 2013 WL 124082, at *1 (Jan. 9, 2013) (UHWE won secret-ballot election 122-81 at Plaintiffs' Woodcrest facility); *Somerset Valley Rehabilitation & Nursing Ctr.*, 357 N.L.R.B. No. 71, 2011 WL 4498270, at *3 (Aug. 26, 2011) (UHWE won secret-ballot election 38-28 at Plaintiffs' Somerset Valley facility).[2] Yet Plaintiffs *still* have refused to engage in collective bargaining negotiations with UHWE at either facility, requiring the Board to institute additional unfair-labor-practice proceedings to obtain court orders that compel Plaintiffs to do so. *See Woodcrest Health Care Ctr.*, 359 N.L.R.B. No. 129 (July 10, 2013); *Somerset Valley Rehab. & Nursing Ctr.*, 357 N.L.R.B. No. 153 (Dec. 30, 2011).

---

[1] The NLRB panel that reviewed the administrative law judge's decision unanimously adopted the administrative law judge's findings and his order. *Id.* at *4. But because that panel contained two Board members who were not appointed during an intra-session Senate recess of "substantial length" under *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2561 (2014), the matter will be remanded to the Board, which is now properly constituted, for further proceedings.

[2] Notably, the NLRB also has concluded that Plaintiff Woodcrest Health Care Center committed unfair labor practices both before and after the representation election at that facility. *See Woodcrest Health Care Ctr.*, 360 N.L.R.B. No. 58 (Feb. 27, 2014).

B. *The Involvement of NLC and Keith Peraino in the Labor Dispute
Relating to Defendant UHWE's Lawful Efforts To Organize the
Employees at Certain of the Plaintiff Facilities*

Around the time of the election at Plaintiffs' Woodcrest facility, two other

New Jersey Plaintiff facilities at which UHWE had petitioned the NLRB to

conduct a secret-ballot representation election retained NLC as a consultant; they

did so, according to Plaintiffs' regulatory filings, to "communicat[e] facts and

legally accurate information to eligible and potentially eligible voters in an NLRB-

conducted election to enable the employees to make a fully informed decision."

Karabell Decl. Exs. 1, 2 at 3.[3] These two Plaintiffs collectively paid NLC—which

advertised itself on its website as a company "dedicated to keeping your

organization UNION FREE" —more than $250,000 in 2012 alone. *Id.* Ex. 5.

One of the Plaintiff facilities that retained NLC was Care One at Madison

Avenue.[4] In anticipation of the representation election at that facility, numerous

_____

[3] Plaintiffs Care One at Teaneck and Care One at Dunroven (also known as Care
One at Cresskill)—two facilities at which UHWE has *not* petitioned the NLRB to
conduct a secret-ballot representation election—also retained NLC in 2012. These
facilities did so for the slightly different purported purpose of "assisting the
Employer by communicating facts and legally accurate information to employees
to allow them to fully appreciate their rights under section 7 of the NLRA."
Karabell Decl. Exs. 3, 4 at 3. And while, according to these regulatory filings, it
was individual Plaintiff facilities that entered into agreements with NLC, an
administrator of one of these facilities testified that retaining NLC was a
"corporate decision from CareOne." *Id.* Ex. 8 at p. 34.

[4] The other was Plaintiff Oradell Health Care Center. Karabell Decl. Ex. 2.

handouts and flyers were given to Plaintiffs' employees, which, upon information and belief, were drafted, edited, and/or distributed by NLC representatives. Those flyers, which can be found as Exhibit 6 to the attached Declaration, are rife with misrepresentations and inflammatory rhetoric that plainly were designed to disparage the Union to the employee-voters in anticipation of the election. Those statements include (emphasis in original):

- "WARNING! Save your Money! 1199SEIU – is a **Loser!** Look at 1199SEIU's Pitiful Record of 'Representation'" (*Id.* at 1)[5]

- "REMEMBER!" "Union organizers *cannot be trusted* to tell the *truth*!" "*Don't be tricked by the Union's sales people! Don't trust what the Union organizers tell you!* **Vote NO to SEIU Representation!**" (*Id.* at 7)

- "*For all practical purposes, once a union gets into a company, it is in for good and the employees are stuck.*" (*Id.* at 6)[6]

---

[5] The claims that UHWE is a "[l]oser" and has a "[p]itiful [r]ecord of [r]epresentation" are contradicted by the (truthful) allegation in Plaintiffs' Amended Complaint that "UHWE is one of the largest local unions of the SEIU, with approximately 350,000 members." Doc. 37 ¶ 32; *see also id.* ¶ 2 (alleging that "[t]he SEIU is one of the most powerful labor unions in the United States").

[6] This is a willful misrepresentation of federal labor law, under which unionized employees can petition the NLRB for a decertification election at any time beginning one year after the certification election, unless the union has secured a contract with the employer, in which case the employees can decertify as soon as the contract expires or three years after contract execution, whichever date is earlier. *See* 29 U.S.C. § 159(c)(3); *Auciello Iron Works v. NLRB*, 517 U.S. 781, 786 (1996). Far from decertification being the practical impossibility portrayed by Plaintiffs and NLC, it is actually a common occurrence. *See* http://www.nlrb.gov/ news-outreach/graphs-data/petitions-and-elections/decertification-petitions-rd (last visited Oct. 20, 2014) (denoting, *inter alia*, that approximately 3,000

- "***The Union May Try to Visit You at Your Home – Day or Night –*** Union visits may interrupt your personal life. 'Home visits' by strangers from the Union often cause those being visited to become concerned about their personal privacy, security, and other issues." (*Id.* at 4)[7]

- "**Extreme Caution Required! Be Prepared for an Encounter with a Union Organizer!**" (*Id.* at 5)

Not only did NLC repeatedly assist the Plaintiffs in disparaging UHWE prior to the secret-ballot representation election at the Madison facility, but, *on the day of the election*, two employees of NLC engaged in conduct that, according to a NLRB hearing officer, impermissibly interfered with employees' rights under Section 7 of the NLRA "to form, join, or assist labor organizations." 29 U.S.C. § 157.

The first NLRA violation committed by an NLC employee occurred when an NLC employee named Frank told a UHWE organizer that he was going to "kick his ass" in the presence of an employee-voter. Karabell Decl. Ex. 7 at 6-8. The hearing officer deemed this an NLRA violation because "[a]ssaulting or threatening to assault nonemployee organizers in the presence of employees has

---

decertification elections have been administered by the NLRB in the last 10 years, more than 60 percent of which were lost by unions).

[7] UHWE organizers' practice in making home visits is that, if a voter does not want to talk to the organizer, the organizer immediately leaves the premises. Indeed, any other practice would be illogical, as it would alienate the individuals who UHWE was hoping would vote in favor of union representation.

long been held by the Board to inhibit employees' exercise of protected rights because the witnessing employees are likely to infer that the employer would retaliate against them as well in some fashion for their support of the union." *Id.* at 7.

The second NLRA violation committed by an NLC employee occurred when Mr. Peraino himself asked an employee-voter "why she was hanging out with 'losers' from the Union" and went on to tell her that "the Union was a 'waste of time' because the Union has never 'gotten' a contract at another Care One facility where it represents employees [Somerset Valley], and would 'never get one' at Madison." *Id.* at 14.[8] The hearing officer deemed this, too, an NLRA violation because "[s]tatements made by an agent of the employer that the union will never get a contract have been held objectionable as they suggest employees are exercising their Section 7 rights in vain." *Id.* at 14-15. This particular statement was not only objectionable, but especially pernicious, because it was the Plaintiffs' own illegal act of refusing to bargain with UHWE after it prevailed in the secret-ballot election at Somerset Valley that has precluded UHWE from obtaining a

_____

[8] At the NLRB representation hearing, the Employer did not elicit any testimony to directly contradict the testimony of UHWE organizers about this incident or the incident involving NLC employee Frank. Indeed, the Employer chose not to call anyone employed by NLC—including Mr. Peraino—to testify at the hearing, even though it admitted "that National Labor Consultants (NLC), including [Peraino], were hired by the Employer and used to communicate the Employer's message regarding the Union to employees." *Id.* at 15.

contract protecting that facility's employees. The hearing officer concluded that these NLRA violations were sufficiently serious to set aside the Madison election, which, despite the illegal tactics carried out on Plaintiffs' behalf by NLC, UHWE lost by just one vote. *Id.* at 15.

In sum, while Plaintiffs' regulatory filings claim that NLC simply "communicat[es] facts and legally accurate information" to their employees, *e.g.*, Karabell Dec. Ex. 1 at 3; the foregoing makes clear that NLC is, in actuality, engaged in a campaign of rhetoric, half-truths, and unlawful intimidation squarely calculated to dissuade Plaintiffs' employees from voting in favor of union representation.

\* \* \*

In response to these (and other) NLRA unfair labor practices committed by Plaintiffs in their attempt to get the upper hand in the ongoing labor disputes with Defendants, Defendants collectively exercised their free speech rights in the course of a campaign they had initiated to draw public attention to Plaintiffs' conduct—a campaign that Plaintiffs pejoratively have described as Defendants' "campaign of mass disparagement." Doc. 114 at 77. And a critical component of that campaign that the Amended Complaint attacks as part of the alleged "extortionate" scheme is the series of public communications issued by Defendants that informed the public of Plaintiffs' repeated violations of the NLRA. *See, e.g.*, Doc. 37 (Am. Compl.)

Ex. G (flyer noting that "Daniel Straus' nursing home companies have violated federal labor law"), Ex. R ("On March 21st, the National Labor Relations Board issued an 18-page federal complaint against [Plaintiffs] for massive violations of federal labor law."), Ex. W ("The Labor Board has issued three separate Complaints against HealthBridge / Care One over the past year for violating the National Labor Relations Act and are currently investigating evidence of further violations."), Ex. JJ (flyer noting that "[Daniel Straus' companies have violated workers' rights and Federal Labor Law" and that "[i]n New Jersey, Care One illegally terminated workers after they voted to form a union").

## ARGUMENT

### I.   Mr. Peraino's Testimony Is Highly Relevant to Defendants' Defenses in this Action

The standard for determining whether Mr. Peraino's motion to quash should be granted is set forth in Fed. R. Civ. P. 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See Leibholz v. Hariri*, 2008 WL 2697336, at *2 (D.N.J. June 30, 2008) ("[A] motion to quash is similar to a motion for a protective order that discovery not be had under Rule 26(c), and is judged under similar standards."). Thus, if Mr. Peraino's testimony would be relevant to any of the

11

claims and defenses at issue in this case, the Court must deny his motion.[9]

As we will show, Mr. Peraino's testimony not only would be relevant, but

*highly* relevant, to Defendants' defenses that they have not committed the RICO

predicate act of extortion and that Plaintiffs are barred from obtaining certain relief

from this court because they have "unclean hands."

> A. *Mr. Peraino's Testimony Is Highly Relevant to Defendants'*
> *Defense That They Have Not Committed the RICO Predicate Act of*
> *Extortion*

As we have noted above, Plaintiffs allege that Defendants committed the

RICO predicate act of extortion. Under well-established extortion principles, "[a]n

obvious element of extortion is an extortionate demand." *United States v. Inigo*,

925 F.2d 641, 651 (3d Cir. 1991). In their Amended Complaint, Plaintiffs allege

that Defendant UHWE's organizing-related "demand" was that Plaintiffs "agree to

---

[9] Mr. Peraino cites *Centrix Financial, LLC v. National Union Fire Ins. Co.*, 2012
WL 6625920, at *6 (D.N.J. Dec. 18, 2012), for the proposition that a stronger
showing of relevance is required to take third-party discovery than to take party
discovery. Peraino Br. at 5. But Mr. Peraino's counsel cannot have it both ways; in
an earlier filing in this case opposing a motion to quash, his attorneys took the
other side and argued that "[t]he reach of a subpoena issued pursuant to Fed. R.
Civ. P. 45 is subject to the general relevancy standard applicable to discovery
under Fed. R. Civ. P. 26(b)(1)." Doc. 115 at 21 (quoting *Syposs v. United States*,
181 F.R.D. 224, 226 (W.D.N.Y. 1998)). But even if a higher showing of relevance
was required to compel discovery from an *independent* third party (as in the
*Centrix* case), a higher showing of relevance surely is not required to compel
discovery from a third-party who was an agent of a party, as Mr. Peraino
indisputably was here. *See supra* p. 9 n.8.

remain 'neutral' in response to efforts by the Defendants to organize Plaintiffs' non-unionized facilities." Am. Compl. ¶ 6.

At trial, Defendant UHWE intends to defend itself against Plaintiffs' organizing-related extortion allegations by, *inter alia*, establishing the following:

(1) that UHWE set about to organize certain of Plaintiffs' New Jersey nursing homes through ordinary and lawful labor organizing activities, such as gathering signatures on representation petitions and participating in NLRB-conducted elections so that employees could vote on whether they would like Defendant UHWE to serve as their bargaining representative;

(2) that Plaintiffs reacted to UHWE's lawful conduct by committing numerous unfair labor practices in violation of the NLRA, all of which were aimed at preventing UHWE from serving as the employees' bargaining representative;

(3) that UHWE was engaged in truthful speech when it, in turn, responded to Plaintiffs' acts by informing the public that Plaintiffs had violated federal labor law; and

(4) that UHWE's objective in publicizing Plaintiffs' labor law violations was *not* to pressure Plaintiffs to accede to a demand to remain "neutral" on the subject of unionization, but instead was to pressure Plaintiffs to remedy their NLRA violations and to refrain from committing future NLRA violations.

13

Indeed, although the parties have a legal disagreement as to whether the use of economic pressure in support of a union's demand for "neutrality" can be extortionate as a matter of law, *compare* Doc. 55 at 23-24 *with* Doc. 89 at 27-28; not even Plaintiffs argue that simply informing the public of another party's illegal conduct—in the hope that that party will *stop violating the law and remedy any past illegal conduct*—qualifies as criminally extortionate and thus a RICO predicate act. Nor could they, since the crime of extortion cannot possibly reach so far as to cover a putative defendant's truthful publicity criticizing a business, where the purpose of the criticism is simply to pressure the business into refraining from or remedying the unlawful conduct. *Cf. Org. for a Better Austin v. Keefe,* 402 U.S. 415 (1971) (holding that conduct in the nature of leafleting and picketing to pressure a business to change its ways, while "coercive," is protected by the First Amendment); *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 264 (Souter, J., concurring) ("Conduct alleged to amount to Hobbs Act extortion, for example, or one of the other, somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis.").[10]

---

[10] It bears mention that, in the context of a labor dispute, the Supreme Court has held that even false statements are not actionable unless they are made with "actual malice"—*i.e.*, "with knowledge of their falsity or with reckless disregard of whether they were true or false." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 64-65 (1966).

Mr. Peraino's testimony is directly relevant to this defense, as it would help Defendants in establishing the second of the propositions set forth above: That Plaintiffs repeatedly have violated federal labor law and have done so in order to prevent UHWE from prevailing in representation elections at Plaintiffs' New Jersey facilities. As we have shown, an NLRB hearing officer already has concluded that, at Plaintiffs' Madison Avenue facility, a representative from NLC unlawfully told a union organizer that he planned to "kick his ass" and that Mr. Peraino unlawfully told an employee-voter that, even if the Madison Avenue employees voted in favor of union representation, they would "never get" a contract. *See supra* pp. 8-10. It is precisely incidents like these—as well as other unfair labor practices at various Plaintiff facilities, about which Mr. Peraino's testimony also is "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1) —that compelled Defendants to notify the public about Plaintiffs' apparent practice of violating federal labor law. *See supra* pp. 10-11 (citing exhibits to Plaintiffs' Amended Complaint in which Defendants informed the public about Plaintiffs' labor law violations).

Even beyond that, Mr. Peraino's testimony is relevant so that Defendants can provide the necessary context to Defendants' free speech and publicity campaign, and, specifically, so that Defendants can establish that each party's criticism of the other must be adjudicated in the context of the underlying labor

15

disputes. As the Supreme Court has noted, in an organizing campaign, "[b]oth labor and management often speak bluntly" and "embellish[ ] their respective positions with imprecatory language." *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 272 (1974) (quoting *Linn v. United Plant Guard Workers*, 383 U.S. 53, 58 (1966)). Nonetheless, the Court has construed federal labor-law policy as "favoring" such "uninhibited, robust, and wide-open debate." *Id.* at 273.

The factfinder here would be presented with a grossly distorted picture of the facts if Plaintiffs were permitted to present Defendants' criticisms of Plaintiffs in an arid vacuum devoid of contextual evidence showing that the Plaintiffs (a) dished out more than their share of disparagement in the course of the war of words that often marks traditional labor disputes, including the disputes at issue here; and (b) did so by spending large sums to hire Mr. Peraino precisely because he is a specialist in the art of disparaging unions. For this reason, as well, Mr. Peraino's testimony is likely, indeed highly likely, to lead to the discovery of admissible evidence.

### B.  Mr. Peraino's Testimony Also Is Directly Relevant to Defendants' Affirmative Defense of Unclean Hands

For similar reasons, Mr. Peraino's testimony is relevant to Defendants' affirmative defense of unclean hands.[11] The doctrine of unclean hands is an equitable defense that "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). Here, because Plaintiffs are seeking equitable relief should they prevail on their RICO or state-law claims, *see* Am. Compl. at 110, a defense of unclean hands is available. *See generally Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1354-55 (3d Cir. 1989).[12]

In support of their unclean hands defense, Defendants will argue that Plaintiffs, by defaming Defendants and committing an unabated string of unfair

---

[11] If and when Defendants are required to answer the Amended Complaint, which is the subject of a pending motion to dismiss, they will assert the unclean hands defense in their Answer.

[12] Defendants also will interpose a defense of unclean hands to Plaintiffs' supplemental state-law claims under Connecticut law, *see* Am. Compl. ¶¶ 324-33, which permits the defense of unclean hands to actions at law in addition to actions at equity. *See, e.g., Delbuono v. Clifford Dev.*, 2007 WL 2363155, at *2 & n.3 (Conn. Super. Ct. July 24, 2007) (permitting defense of unclean hands to be brought to an action at law and noting that "many courts have held that the equitable defense of unclean hands in particular may be applied in an action at law," citing Connecticut cases).

17

labor practices, have acted in "bad faith relative to the matter in which [they]

seek[ ] relief," *Karpenko*, 619 F.3d 259 —*i.e.*, the ongoing labor disputes between

the parties—and thus should be barred from obtaining relief from this Court. And

the conduct of Mr. Peraino and his company NLC has played an integral role in

Plaintiffs' bad-faith behavior in the labor dispute between Plaintiffs and Defendant

UHWE, not least when Mr. Peraino personally told a voter, on the day of a

representation election, that the Union would never get a contract at the facility

even if the majority of workers voted to be represented by UHWE, because (thanks

to unfair labor practices by Plaintiffs that Mr. Peraino did not disclose to the voter)

the Union had failed to achieve a contract in a previous instance where it had been

certified as the winner of a secret-ballot election at one of Plaintiffs' facilities. *See

supra* pp. 9-10.

　　　For this reason, as well, Mr. Peraino's testimony is essential to allowing

Defendants to properly defend themselves against Plaintiffs' RICO and state-law

claims, as Mr. Peraino and/or his company *directly* committed several of the unfair

labor practices that Defendant UHWE has publicized.

## II.   The Court Also Should Reject Mr. Peraino's Fallback Argument That His Motion To Quash Should Be Granted in Order To Protect His Company's Purported Trade Secrets

As a fallback argument, Mr. Peraino argues that the Court should grant his motion to quash because his deposition would "risk [ ] disclosure of . . . trade secrets belonging to NLC." Peraino Br. 6. Mr. Peraino bears the burden of demonstrating that his deposition would reveal NLC's trade secrets. *E.g.*, *Cmedia, LLC v. LifeKey Healthcare, Inc.*, 216 F.R.D. 387, 390-91 (N.D. Tex. 2003) ("[t]he moving party has the burden to establish that the information sought is a trade secret and that its disclosure might be harmful").

We begin by assuming that NLC does not intend to claim that testimony regarding its apparent strategy to unlawfully intimidate employees to vote against union representation—as effective a tactic as it might be—is protected as a trade secret. *See, e.g.*, *Alderson v. United States*, 718 F. Supp. 2d 1186, 1200 (C.D. Cal. 2010) (information about illegality cannot constitute a trade secret). We also assume that Mr. Peraino does not intend to claim that the conversations that he has had with Plaintiffs' employees in advance of a representation election, and any information that he has distributed to Plaintiffs' employees in advance of such an election, are protected as a trade secret. Indeed, any attempt by Plaintiffs to prevent its employees from revealing and discussing Plaintiffs' anti-unionization sales pitch would violate its employees' rights under Section 7 of the NLRA to "form,

19

join, or assist labor organizations"—the very statute on which NLC claims to be "training" and "educati[ng]" Plaintiffs' employees, Peraino Br. 2. *See generally, e,g.*, *Fresh & Easy Neighborhood Market*, 361 N.L.R.B. No. 12, 2014 WL 3919910, at *12 (Aug. 11, 2014) (confidentiality provisions "prohibiting the discussion of wages, hours, compensation, or working conditions" violate the NLRA).

But even if, *arguendo*, Mr. Peraino's generic justification of NLC's trade secrets would be sufficient to establish that Mr. Peraino and his company have an interest in keeping *some* of his relevant testimony confidential, that still would be insufficient for the Court to grant the motion to quash. "No absolute privilege for confidential information or trade secrets exists," *Cmedia*, 216 F.R.D. at 300; and Mr. Peraino has not provided any reason why NLC's putative confidentiality interests would not be protected by the Stipulated Confidentiality Order (Doc. 95) entered by this Court. *See Ford Motor Co. v. Edgewood Props., Inc.*, 2011 WL 601312, at *3 (D.N.J. Feb. 15, 2001) (denying motion to quash because, although subpoena "threatens disclosure of 'confidential business information and trade secrets' . . . the information can be protected pursuant to a confidentiality order"); *Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22, 26 (D.D.C. 2011) (denying motion to quash because, although some requested documents "undoubtedly contain sensitive material . . . the protective order is designed to

protect and prevent public disclosure of confidential and sensitive business information, like that potentially at issue here").

Indeed, the only cases that Mr. Peraino cites to support his trade-secret argument stand for the uncontroversial proposition that a court should not compel a third-party to disclose confidential business information where the party seeking discovery has made no threshold showing of relevance. Peraino Br. 6. But because, as we have shown, Mr. Peraino's testimony is *highly* relevant to Defendants' defenses to Plaintiffs' RICO and state-law claims here, *see supra* pp. 11-18, these cases are inapposite. The Court therefore should deny Mr. Peraino's motion, at which point Mr. Peraino can avail himself of the protections for the disclosure of confidential information as set forth in the Court's Stipulated Confidentiality Order.

## CONCLUSION

The Court should deny Mr. Peraino's motion to quash and order his compliance with Defendants' subpoena forthwith.

Respectfully submitted,

/s/ R. Scott Thompson

R. Scott Thompson
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, NJ 07068
Phone:  (973) 597-2500
Fax:  (973) 597-2400

Robert M. Weinberg*
W. Gary Kohlman*
Leon Dayan*
Kathleen Keller*
Jacob Karabell*
Caitlin Kekacs*
Bredhoff & Kaiser, P.L.L.C.
805 15th Street NW, Suite 1000
Washington, DC 20005
Phone:  (202) 842-2600
Fax  (202) 842-1888
*Counsel for Defendants*

Richard A. Levy*
David M. Slutsky
Susan J. Cameron
Levy Ratner, P.C.
80 8th Avenue, 8th Floor
New York, NY 10011
Phone:  (212) 627-8100
Fax:  (212) 627-8182
*Counsel for Defendant
1199SEIU United Healthcare
Workers East*

* Admitted pro hac vice