# Karabell Declaration Exhibit 7

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 22**

CARE ONE AT MADISON AVENUE, LLC
D/B/A CARE ONE AT MADISON AVENUE

               Employer

     and                               Case 22-RC-072946

1199 SEIU, UNITED HEALTHCARE
WORKERS EAST

               Petitioner

APPEARANCES:

***For the Employer:***
Jedd Mendelson, Esq.                    Littler Mendelson, P.C.
James Monica, Esq.                     One Newark Center, 8th Floor
                                        Newark, New Jersey 07102

***For the Petitioner:***
Ellen Dichner, Esq.            .        Gladstein, Reif & Meginniss, LLP
Katherine Hansen, Esq.               817 Broadway, 6th Floor
                                        New York, New York  10003

BEFORE:

Joseph Calafut
Hearing Officer

## **HEARING OFFICER'S REPORT ON OBJECTIONS**

       On March 30, 2012, the Petitioner timely filed objections to conduct affecting the results of the secret ballot election conducted on March 23, 2012, in the following appropriate collective bargaining unit:

> All full time and regular part time non-professional employees
> including licensed practical nurses, certified nursing aides, dietary
> aides, housekeepers, laundry aides, recreation aides, restorative
> aides, rehabilitation techs,  central supply clerks, unit secretaries,
> and receptionists employed by the Employer at its Morristown,
> New Jersey facility during the payroll period ending Sunday,
> February 5, 2012, but excluding all office clerical employees,
> cooks, registered nurses, dieticians, physical therapists, physical
> therapy assistants, occupational therapists, occupational therapy
> assistants, speech therapists, social workers, staffing
> coordinators/schedulers, payroll/benefits coordinators, MDS
> specialists, MDS data clerks, account payable clerks, account
> receivable assistant, medical records clerk, admissions coordinator,
> all other professional employees, guards and supervisors as defined
> in the Act.

Thereafter, a Tally of Ballots was duly served upon the parties which showed the following:

| | | |
|---|---|---|
| Approximate number of eligible voters | 126 | |
| Void ballots | 0 | |
| Votes cast for Petitioner | | 57 |
| Votes cast against participating labor organization | | 58 |
| Valid votes counted | | 115 |
| Challenged ballots | | 1 |
| Valid votes counted plus challenged ballots | | 116 |

> Challenges are not sufficient in number to affect the results of the election.

> A majority of the valid votes counted plus challenged ballots has not been cast for
> 1199 SEIU United Healthcare Workers East.

On March 30, 2012,[1] the Petitioner timely filed objections to conduct affecting the results of the election.[2]

On May 1, 2012, pursuant to Section 102.69(d) of the Board's Rules and regulations, Series 8, as amended, the Regional Director issued a Report on Objections and Notice of Hearing directing that a hearing be held before a Hearing Officer for the purpose of receiving evidence to

---

[1]     All dates hereafter are 2012 unless otherwise specified.
[2]     The critical period for considering objectionable conduct in this matter extends from January 23, 2012, the filing date of the petition, until March 23, 2012, the date of the election. *Goodyear Tire and Rubber Company,* 138 NLRB 453 (1962).

resolve the issues raised by the Petitioner's Objections No. 1 through 16, inclusive, and 19. This same Report recommended to the Board that the Petitioner's Objections No. 17, 18 and 20 be overruled. On May 23, 2012, the Regional Director issued a Supplemental Report on Objections regarding Petitioner's Objection No. 18, again recommending that this objection be overruled. The Petitioner's exceptions to the Regional Director's recommendation that Objection No. 18 be overruled are currently pending before the Board.

On May 18, 21, 23, 24 and 29, a hearing was conducted before the undersigned duly designated Hearing Officer at Newark, New Jersey. At the Hearing, all parties were afforded a full opportunity to be heard, to examine witnesses, to introduce documentary evidence relative to the issues and to file briefs.[3]

Upon consideration of the record as a whole, and from my observations of each of the witnesses, I make the following findings of fact, resolutions of the credibility of the witnesses and recommendations with respect to the disposition of the issues involved herein.[4]

### Discussion

It is well settled that representation elections are not set aside lightly. There is a strong presumption that ballots cast under specific NLRB safeguards reflect the true desires of the employees. Accordingly, the burden of proof on parties seeking to have a Board-supervised election set aside is a heavy one. The objecting party must show, *inter alia*, that the conduct in

---

[3]     Either at the Hearing or in its post-Hearing brief, the Petitioner, by counsel, has requested withdrawal of its Objections No. 1, 2, 4, 5, 7, 8, 10, 14 and 15, approval of which is hereby granted.

[4]     In resolving credibility, I have taken into consideration the apparent interests of the witnesses; the inherent probabilities in light of other events; corroboration or lack thereof; and consistencies or inconsistencies within the testimony of the witnesses. In evaluating the testimony of each witness, I also rely upon his or her demeanor and make findings accordingly. While apart from considerations of demeanor, I have taken into account the above-noted credibility considerations, my failure to detail each of these is not to be deemed a failure on my part to have fully considered it. *Bishop & Malco, Inc.*, 159 NLRB 1159, 1161 (1966). Finally, evaluations of the testimony of each witness fully incorporate direct and cross examinations. Any omission in referring to "direct" or "cross" in this Report should not be construed to be neglect or some type of judgment.

question affected employees in the voting unit and had a reasonable tendency to affect the outcome of the election. *Delta Brands, Inc.,* 344 NLRB 252 (2005).

In evaluating party conduct during the critical period, the Board applies an objective standard, under which conduct is found to be objectionable if it has "the tendency to interfere with the employees' freedom of choice." In deciding whether such interference has occurred under this standard, the Board considers: (1) the number of incidents of misconduct; (2) the severity of the incidents and whether they were likely to cause fear among employees in the bargaining unit; (3) the number of employees in the bargaining unit subjected to the misconduct; (4) the proximity of the misconduct to the election date; (5) the degree of persistence of the misconduct in the minds of the bargaining unit employees; (6) the extent of dissemination of the misconduct among bargaining unit employees; (7) the effect, if any, of misconduct by the opposing party to cancel out the effects of the original misconduct; (8) the closeness of the final vote; (9) the degree to which the misconduct can be attributed to the party. *Cedars-Sinai Medical Center,* 342 NLRB 596, 597 (2004).

## THE OBJECTIONS

### Objections No. 3 and 6

In Objection No. 3, the Petitioner contends that during the critical period, including the day of the election, the Employer engaged in, and created the impression of surveillance of employee union activity. In Objection No. 6, the Petitioner asserts that Employer agents engaged in electioneering in and around the polling area and/or in areas where voters were required to pass in order to enter the voting area. The Petitioner asserts that the foregoing conduct interfered with the election and it, therefore, requests that the election be set aside and a rerun election be conducted. The Employer denies any wrongdoing as alleged.

In support of these objections, the Petitioner relies on the testimony of Kimberly Komoroski (the Employer's Director of Nursing) and George Arezzo (Administrator). In this regard, Komoroski and Arezzo testified that Arezzo spent a considerable amount of time seated at the reception desk located in the reception/lobby area on the day of the election. Additionally, during various times while the polls were open, Komoroski, Dexter Vickerie (Acting Director of Nursing), Brian Karstetter (Care One's Regional Director of Operations) and Sara Flaumenhaft (Madison's Director of Rehabilitation at the Madison facility), were present in the facility's reception/lobby area at various times on the day of the election.

Undisputed witness testimony established that the reception/lobby area is at least 100 feet from the beauty parlor, the agreed-upon voting location. Furthermore, it is not a "straight shot" from the reception/lobby area to the beauty parlor voting area. In this regard, there is no straight view from the reception/lobby area to the beauty parlor voting area. Additionally, undisputed testimony established that eligible voters did not need to walk through the reception/lobby area as there was an alternate hallway route for voters to use in order to access the voting area.

The only statements attributed to Arezzo or any other management representative on the day of the election involved simply thanking employees for voting, and saying either "good morning" or "you're looking well." Furthermore, there is no assertion that the reception/lobby area was designated a "no-electioneering" area by the presiding Board agent.

In *Boston Insulated Wire & Cable Co.,* 259 NLRB 1118 (1982), enfd. 703 F.2d 876 (5th Cir. 1983), the Board set out a series of factors to be considered in electioneering cases, including: (1) the nature and extent of electioneering, (2) whether it was conducted by a party or by employees, (3) whether the conduct occurred in a designated no-electioneering area, and (4) whether the conduct contravened the instructions of a Board agent.

In this case, no evidence was presented that Arezzo or any other supervisor engaged in objectionable electioneering as alleged. Although Arezzo had conversations with some of the voters, there is no evidence that any of these conversations related to the election. Even if Arezzo's conduct could be characterized as a nonverbal form of electioneering, that conduct is not objectionable under the factors cited in *Boston Insulated*, *supra*. Arezzo's conduct occurred in the reception/lobby area located at the public entrance to the facility which, it was established, did not provide a view of the voting area and is separated from it by at least 100 feet. There is no evidence that Arezzo entered a designated no-electioneering area or violated any instruction from the Board agent. Additionally, there is no evidence that any representative of the Petitioner complained to the Board agent about Arezzo's activity during the election when the Board agent may have been able to stop the activity. See *J.P. Mascaro & Sons* 345 NLRB 637 (2005).

Based on the foregoing, it does not appear that the Petitioner's Objections No. 3 and 6 raise substantial or material issues affecting the results of the election. Accordingly, I recommend that the Petitioner's Objections No. 3 and 6 be overruled.

**Objection No. 9**

In Objection No. 9, the Petitioner alleges that an Employer agent threatened a Union agent with violence in the presence of an eligible voter. The Petitioner asserts that the foregoing conduct interfered with the election and it, therefore, requests that the election be set aside and a rerun election be conducted. The Employer denies that it engaged in the alleged objectionable conduct.

In support of this objection, the Petitioner presented testimony from its Organizer Brian Walsh and its Vice-President Ricky Elliot. Both witnesses asserted that on the day of the election, Frank (last name unknown), a labor consultant hired by the Employer, threatened Walsh

that he was going to "kick his ass." This threat assertedly occurred in the presence of Yvania Aristal, the Union's election observer.

In response to this testimony, the Employer presented its Director of Recreation, Sara Flaumenhaft. Flaumenhaft testified that she overheard at least a portion of the conversation involving Frank as described by Walsh and Elliot, but did not hear the aforementioned "kick his ass" remark. With no explanation, the Employer did not call Frank to testify to refute the assertions of Walsh and Elliot. Likewise, the Petitioner did not call Aristal to testify. In its brief, the Petitioner asserts that she was afraid to do so. At no point has the Employer denied that Frank functioned as its agent within the meaning of Section 2(13) the Act. Record evidence demonstrates that Frank, as an Employer labor consultant, frequently engaged in campaign activities on behalf of the Employer.

I find that the testimony of Walsh and Elliot provides a more detailed recollection of the details concerning Frank's alleged threat to Walsh and, accordingly, I credit their testimony over Flaumenhaft, whose recollection lacked the same degree of specificity.

Assaulting or threatening to assault nonemployee organizers in the presence of employees has long been held by the Board to inhibit employees' exercise of protected rights because the witnessing employees are likely to infer that the employer would retaliate against them as well in some fashion for their support of the union. *Control Services, Inc.*, 315 NLRB 431 (1994); *Shenanigans,* 264 NLRB 908 (1982), enfd. in relevant part 723 F.2d (7th Cir. 1983); *Heavenly Valley Ski Area,* 215 NLRB 359 (1974), enfd. 552 F.2d 269, 273 (9th Cir. 1977).

Objections must be carefully scrutinized in close elections. *Cambridge Tool & Mfg. Co.,* 316 NLRB 716 (1995); *Colquest Energy, Inc. v. NLRB*, 985 F.2d 116, 122 (6th Cir. 1992). Given the closeness of the vote herein, a one-vote swing in favor of the Petitioner would have made the

single challenged ballot determinative, thereby potentially changing the outcome of the election. See *Robert Orr-Sysco Food Services,* 338 NLRB 614 (2002).

It is well-settled that employers are liable for actions of their agents. *Mar-Jam Supply Co.,* 337 NLRB 337 (2001). In establishing agency, the Board may find agency based on either actual or apparent authority to act for the employer. As to the latter, apparent authority results from a manifestation by the employer to a third party that creates a reasonable basis for the latter to believe that the principal has authorized the alleged agent to perform the acts in question. The test is whether, under all the circumstances, employees would reasonably believe that the alleged agent was reflecting company policy and speaking and acting for management. *Cooper Hand Tools,* 328 NLRB 145 (1999).

It is undisputed that National Labor Consultants (NLC), including Frank, were hired by the Employer, and during the critical period were authorized and deployed to communicate to employees regarding the Employer's campaign against the Petitioner. Based on the foregoing, I conclude that, during the critical period and at all times material herein, NLC served as an agent within the meaning of Section 2(13) of the Act.

In light of the closeness of the election results, and the credited evidence of the threat made by an Employer agent in the presence of an eligible voter, I find that the Petitioner's Objection No. 9 raises substantial or material issues affecting the results of the election. Accordingly, I recommend that the Petitioner's Objection No. 9 be sustained.

**Objections No. 11, 12 and 13**

In Objection No. 11, the Petitioner asserts that the Employer solicited and remedied certain grievances. In Objection No. 12, the Petitioner alleges that the Employer implemented various improvements to benefits and other working conditions. In Objection No. 13, the

Petitioner asserts that the Employer made payments to certain employees.  The Petitioner further asserts that the foregoing conduct occurred during the critical period.  The Petitioner asserts that the foregoing conduct interfered with the election and it, therefore, requests that the election be set aside and a rerun election be conducted.  The Employer denies that it engaged in the alleged objectionable conduct.

In regard to Objection No. 11, George Arezzo testified that he became Administrator at the facility on January 26, 2012.  During his initial period on the job he conducted employee meetings during the critical period at which he asked employees to identify ways in which the facility could improve the quality of care and customer service it provides.  No testimony was elicited that Arezzo solicited or remedied any employee grievances regarding employees' terms and conditions of employment.

Additional witnesses Sara Flaumenhaft and Kristina Lopez, Regional HR Specialist, testified that they were present at staff meetings conducted by Arezzo and corroborate his assertion that he did not solicit or remedy employee grievances.  No other testimony was presented regarding the Petitioner's contention that the Employer unlawfully solicited or remedied employees' grievances during the critical period.

Regarding Objections No. 12 and 13, Caroline Berdzik, the Employer's Assistant General Counsel, testified that pursuant to a settlement agreement with the United States Department of Labor, she, on behalf of the Employer, authorized certain payments to unit employees during the critical period.  Berdzik asserted that the timing of these settlement payments during the critical period and relative to the election herein, was purely coincidental.  Berdzik further testified that she became aware of the March 23 election only after she authorized the settlement payments.  Regarding the timing of the settlement payments, Berdzik asserted that she authorized the

payments when she did because she tries to stay current with such matters and did not want this particular situation to "fall through the cracks." Neither Berdzik nor any other witness established exactly when the Employer's payroll policy (leading to the necessity of the Department of Labor settlement) was corrected or if this policy correction occurred during the critical period.

Additionally, the Petitioner alleges that during the critical period, the Employer made reimbursement payments to unit employees in connection with particular, existing education benefits. In this regard, Kristina Lopez testified with respect to the Employer's policy for tuition reimbursement. Additionally, Lopez testified as to her knowledge of the specifics of tuition reimbursement for various employees. Her testimony did not establish that the Employer's policy regarding tuition reimbursement was conducted any differently during the critical period as opposed to prior to this period.

With respect to Objection No. 12, insufficient record evidence was presented to establish that the Employer provided any improved benefits to employees during the critical period. I can only conclude, based on Berdzik's testimony, that the modification in the Employer's payroll practice occurred as a result of the Department of Labor investigation. Further, her testimony did not establish with certainty, as required, that such a change occurred during the critical period.

Regarding Objection No. 13, the Employer, through its witnesses Berdzik and Lopez, attempted to establish that it had a legitimate business rational for both the payment and timing of the Department of Labor settlement payments and the tuition reimbursement payments.

It is well established that the mere granting of benefits during the critical period is not, *per se*, grounds for setting aside an election. Rather, the critical inquiry is whether the benefits

were granted for the purpose of influencing the employees' vote in the election and were of a type reasonably calculated to have that effect. *NLRB v. Exchange Parts Co.,* 375 U.S. 405 (1964). As a general rule an employer's legal duty in deciding whether to grant benefits while a representation proceeding is pending is to decide that question precisely as it would if the union were not on the scene. *R. Dakin, & Co.*, 284 NLRB 98 (1987). In determining whether a grant of benefits is objectionable, the Board has drawn the inference that benefits granted during the critical period are coercive, but it has allowed the employer to rebut the inference by coming forward with an explanation, other than the pending election, for the timing of the grant of benefits. *United Airlines Services Corp.* 290 NLRB 954 (1988); *Uarco, Inc.,* 216 NLRB 1,2 (1974).

Noting particularly the testimony of witnesses Berdzik and Lopez, I conclude that the Employer met its burden in providing a legitimate business-related explanation, other than the pending election, for the timing of its benefit announcements. I find that their unrebutted testimony provided sufficient evidence to carry the Employer's burden to show that the timing of the announcements was for reasons "other than the pending election."

Based on the foregoing, it does not appear that the Petitioner's Objections No. 11, 12 and 13 raise substantial or material issues affecting the results of the election. Accordingly, I recommend that the Petitioner's Objections No. 11, 12 and 13 be overruled.

**Objection No. 16**

In Objection No. 16, the Petitioner asserts that during the critical period, the Employer reduced the health care premium payment amounts required of non-unit employees in order to discourage unit employees from supporting the Petitioner. The Petitioner asserts that the foregoing conduct interfered with the election and it, therefore, requests that the election be set

aside and a rerun election be conducted. The Employer denies that it engaged in the alleged objectionable conduct.

In support of this objection, George Arezzo testified that in January 2012, the Employer implemented company-wide changes in its health insurance benefits which increased employees' contributions to their health insurance premiums. Arezzo further testified that this increase was predictably unpopular with employees. Thereafter, on or about March 5, the Employer issued a memo to employees announcing a reduction in employee health insurance premiums. According to the memo, health insurance premiums would be reduced effective on the March 23 payday, retroactive to January 2012. The memo distributed to employees of the Madison facility specified that the reductions in premium rates applied to the eligible classifications listed therein Excluded from eligibility for the reductions were the classifications of unit employees eligible to vote in the March 23 election. Arezzo further testified that this memo was posted at the facility and Administrators were instructed to discuss the changes "on all shifts, with all employees." Arezzo testified that he was not allowed to discuss health insurance or benefits with unit employees. He further stated that he responded to unit employees' complaints regarding health insurance premiums by advising that he was not allowed to discuss the subject with them during the campaign.

In my estimation, the Employer has presented a persuasive business reason for announcing a reduction in health insurance premiums for non-unit employees and established through credited testimony that its announcement and implementation were governed by factors other than the Union's campaign. However, I find that the Respondent unlawfully withheld implementation of the improved health insurance benefits for unit employees voting in the election while at the same time lawfully implementing the improved benefits for non-unit

employees employed at other Employer facilities.  While notice of the improved health insurance benefits was provided to all non-unit employees and posted on the bulletin board, the only explanation provided to unit employees was Arezzo's telling employees that he was not allowed to discuss it with them during the campaign.

The withholding of system-wide benefits from unit employees may be considered lawful only if the employer (1) informs employees that the sole purpose of the postponement is to avoid the appearance of influence with respect to the election, and (2) provides assurances that the benefits would be applied to them retroactively after the campaign, regardless of the results. *Noah's Bagels, LLC,* 331 NLRB 188 (2000);  *Atlantic Forest Products, Inc.,* 282 NLRB 855 (1987).  The comments by Arezzo failed to satisfy the Employer's obligation to assure unit employees that they will be given the benefit after the election in this manner.  Instead, Arezzo's comments essentially placed the blame on the Petitioner for the fact that the benefits were being withheld from unit employees, though they were simultaneously being provided to all other company employees. See *Russell Stover Candies, Inc.,*221 NLRB 441 (1975).

Based on the foregoing, noting particularly the closeness of the election results, the credited evidence of the posting of the health insurance changes, its widespread distribution to non-unit employees at the facility, and the lack of assurances given to unit employees of their ultimate entitlement to the reduced insurance premiums, I find that the Petitioner's that the Objection No. 16 raises substantial and material issues affecting the results of the election. Accordingly, I recommend that the Petitioner's Objection No. 16 be sustained.

**Objection No. 19**

In Objection No. 19, the Petitioner asserts that during the critical period, the Employer, by its labor consultant, advised a unit employee that the Employer would never agree to a

contract with the Union.  The Petitioner asserts that the foregoing conduct interfered with the election and it, therefore, requests that the election be set aside and a rerun election be conducted.  The Employer denies that it engaged in the alleged objectionable conduct.

In support of this objection, Brian Walsh testified that on the morning of the election, he arrived at the Employer's facility with the Union's designated employee observer, Yvania Aristal.  Walsh testified that while he was with Aristal, the Employer's labor consultant, Keith (last name unknown) approached Aristal and asked her why she was hanging out with "losers" from the Union.  According to Walsh, Keith told Aristal that hanging out with the individuals from the Union was a "waste of time" because the Union has never "gotten" a contract at another Care One facility where it represents employees, and would 'never get one" at Madison.  Union Vice-President Ricky Elliot testified that he also observed this event, and Elliot fully corroborated Walsh's testimony in this regard.  There is no record evidence of dissemination of these statements to other unit members

In response to this objection, the Employer presented witness Asha George, Director of Rehabilitation George testified that she also observed this event.  George recalled hearing back-and-forth insults between the participants.  She further testified that Keith asked Aristal why she was hanging out with "losers."  George did not recall hearing Keith's alleged remark regarding the unlikelihood that the Union would obtain a contract at the Madison facility.    In my estimation, George's testimony was contradictory regarding whether she overheard the entire conversation, and I cannot credit her testimony in this regard.

Statements made by an agent of the employer that the union will never get a contract have been held objectionable as they suggest employees are exercising their Section 7 rights in

vain. *Equipment Trucking Co., Inc.*, 336 NLRB 277 (2001); *Outboard Marine Corp.*, 307 NLRB 1333 (1992); *The Taylor Chair Company*, 292 NLRB 658 (1989).

It is undisputed that National Labor Consultants (NLC), including Keith, were hired by the Employer and used to communicate the Employer's message regarding the Union to employees. Thus, as I have concluded *supra*, its representatives served as agents within the meaning of Section 2(13) of the Act.

I credit the testimony of Walsh and Elliot that the Employer indicated to a unit employee that the Union would never get a contract with the Employer at its Madison facility if it prevailed in the election. In light of the closeness of the election results, and based on the foregoing, I conclude that the Petitioner's Objection No. 19 raises substantial and material issues affecting the results of the election. Accordingly, I recommend that the Petitioner's Objection No. 19 be sustained.

## CONCLUSIONS

Having found that the Petitioner's Objections No. 3, 6, 11, 12 and 13 do not raise substantial or material issues affecting the results of the election, the undersigned recommends that the Petitioner's Objections No. 3, 6, 11, 12 and 13 be overruled. However, having found that the Petitioner's Objections No. 9, 16 and 19 do raise substantial and material issues affecting the results of the election, the undersigned recommends that the Petitioner's Objections No. 9, 16 and 19 be sustained, that the March 23 election be set aside and that a rerun election be conducted.

## RIGHT TO FILE EXCEPTIONS

Pursuant to the provisions Section 102.69 of the National Labor Relations Board's Rules and Regulations, Series 8 as amended, you may file exceptions to this Report with the Executive

Secretary, National Labor Relations Board, 1099 14th Street, N.W., Washington, D.C. 20570-0001. Under the provisions of Section 102.69(g) of the Board's Rules, documentary evidence, including affidavits, which a party has timely submitted to the Regional Director in support of its objections or challenges and that are not included in the Report, is not part of the record before the Board unless appended to the exceptions or opposition thereto that the party files with the Board. Failure to append to the submission to the Board copies of evidence timely submitted to the Regional Director and not included in the Report shall preclude a party from relying on the evidence in any subsequent related unfair labor practice proceeding.

*Procedures for Filing Exceptions*:    Pursuant to the Board's Rules and Regulations, Section 102.111-102.114, concerning the Service and Filing of Papers, exceptions must be received by the Executive Secretary of the Board in Washington, D.C. by close of business on July 2, 2012, at 5:00 p.m. (EST), unless filed electronically. **Consistent with the Agency's E-Government initiative, parties are encouraged to file exceptions electronically.** If exceptions are filed electronically, the exceptions will be considered timely if the transmission of the entire document through the Agency's website is **accomplished by no later than 11:59 p.m. Eastern Standard Time** on the due date. Please be advised that Section 102.114 of the Board's Rules and Regulations precludes acceptance of exceptions filed by facsimile transmission. Upon good cause shown, the Board may grant special permission for a longer period within which to file.[5] A copy of the exceptions must be served on each of the other parties to the proceeding, as well as to the undersigned, in accordance with the requirements of the Board's Rules and Regulations.

---

[5]        A request for extension of time, which may also be filed electronically, should be submitted to the Executive Secretary in Washington, and a copy of such request for extension of time should be submitted to the Regional Director and to each of the other parties to this proceeding. A request for an extension of time must include a statement that a copy has been served on the Regional Director and on each of the other parties to this proceeding in the same manner or a faster manner as that utilized in filing the request with the Board.

Filing exceptions electronically may be accomplished by using the E-filing system on the Agency's website at www.nlrb.gov. Once the website is accessed, select the E-Gov tab, and then click on the E-filing link on the pull down menu. Click on the "File Documents" button under Board/Office of the Executive Secretary and then follow the directions. The responsibility for the receipt of the exceptions rests exclusively with the sender. A failure to timely file the exceptions will not be excused on the basis that the transmission cold not be accomplished because the Agency's website was off line or unavailable for some other reason, absent a determination of technical failure of the site, with notice of such posted on the website.

Signed at Newark, New Jersey this 18th day of June, 2012.

_____
Joseph Calafut, Hearing Officer
National Labor Relations Board, Region 22
20 Washington Place, 5th Floor
Newark, NJ 07102