# PLAINTIFFS' EXHIBIT 1

**From:** Kathleen Keller [mailto:kkeller@bredhoff.com]
**Sent:** Monday, November 21, 2016 5:14 PM
**To:** Giordano, Frederic J.; Caitlin Kekacs; Leon Dayan; Jacob Karabell; Joshua Segal; Mahlet Hiruy; Suzy Ziaii; mboxer@lowenstein.com; David Slutsky
**Cc:** Alito, Rosemary; Barbatsuly, George P.; Meade, Meghan T.; Kobil, Scott G.; Michael Critchley; aluria@critchleylaw.com
**Subject:** RE: Care One Management, LLC, et al. v. United Healthcare Workers East, SEIU 1199, et al.

Fred,

SEIU will be producing the predecessor to the Travelers policy that was previously produced. There are no subsequent policies issued by Travelers that fall under the requirements of Rule 26(a). SEIU will also produce the predecessor and successor policies to the Axis Multimedia policy that was previously produced. We anticipate that this production will occur within the next day or two.

Defendants NEHCEU and UHWE already have produced the policies covering the time period in which this lawsuit was filed. Because those policies are "claims made" policies, they are the only policies that meet the requirements of Rule 26(a) for these defendants. Any "claims made" policies covering time periods after this Complaint was filed do not meet the standard set forth by Rule 26(a) and therefore will not be produced.

Best regards,

Kathleen M. Keller
Bredhoff & Kaiser P.L.L.C.
805 15th Street, N.W., Suite 1000
Washington, DC 20005
(202) 842-2600

---------------------------------------------------------------------------

This Electronic Transmission Is Intended Only For The Addressee Shown Above. It May Contain Information That Is Privileged, Confidential Or Otherwise Protected From Disclosure. Any Review, Dissemination Or Use Of This Transmission Or Its Contents By Persons Other Than The Addressee Is Strictly Prohibited. If You Have Received This Electronic Transmission In Error, Please Delete the E-Mail And Notify Us Immediately By Telephone Or By Reply E-Mail.

To Ensure Compliance With The Requirements Imposed By The Internal Revenue Service In IRS Circular 230, Please Be Informed That Any Tax Advice Contained In This Communication (Including Any Attachments) Is Not Intended Or Written To Be Used, And Cannot Be Used, For The Purpose Of (i) Avoiding Tax-Related Penalties Under The Internal Revenue Code Or (ii) Promoting, Marketing Or Recommending To Another Party Any Tax-Related Matter Addressed Herein.

# PLAINTIFFS' EXHIBIT 2

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

# PLAINTIFFS' EXHIBIT 3

BREDHOFF & KAISER, P.L.L.C.

*Attorneys & Counselors*

805 Fifteenth Street NW – Suite 1000
Washington, D.C. 20005
(202) 842-2600 TEL
(202) 842-1888 FAX
www.bredhoff.com

Julia Penny Clark
Jeremiah A. Collins
Mady Gilson
Bruce R. Lerner
Andrew D. Roth
John M. West
Douglas L. Greenfield
Roger Pollak
Anne Ronnel Mayerson
Leon Dayan
Devki K. Virk
Robert Alexander
Matthew Clash-Drexler
Abigail V. Carter
Joshua B. Shiffrin
Jenifer A. Cromwell

Elliot Bredhoff
(1921 – 2004)
Henry Kaiser
(1911 - 1989)

Jacob Karabell
Tanaz Moghadam
Thomas W. Perez-Lopez
Caitlin Kekacs
James Graham Lake
Adam M. Bellotti
Joshua A. Segal

Patricia Polach
Kathleen Keller
Philip C. Andonian
Tearyn J. Loving
Of Counsel

Robert M. Weinberg
Laurence Gold
Jeffrey R. Freund
Senior Counsel

May 1, 2017

Via Email

Frederic Giordano
K&L Gates LLP
One Newark Center, 10th Floor
Newark, NJ 07102

Dear Counsel:

I write in response to your letter demanding that the Defendants produce additional insurance policies as part of their Rule 26(a)(1) initial disclosures. The Defendants have already produced eleven policies to Plaintiffs (six multimedia policies from SEIU; 2 CGL policies from SEIU; 2 claims-made general liability policies from UHWE; and one claims-made union liability policy from NEHCEU). In your letter, you appear to take the position that Rule 26 requires each Defendant to produce every insurance policy it has taken out since 2009, regardless of whether those policies would potentially provide coverage for this matter, "so that [Plaintiffs] can make their own assessment as to whether or not these policies provide coverage." We disagree with that characterization of the law.

Rule 26(a)(1) requires disclosure of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." The use of the phrase "may be liable" indicates that a defendant may not withhold a policy simply because the insurance provider is contesting coverage or has submitted a reservation of rights; as indicated by the Advisory Committee notes, "an insurance company must disclose even when it contests liability under the policy, and such disclosure does not constitute a waiver of its claim." The Defendants have already produced all policies under which they have made any claim, without regard to whether the insurance companies have contested coverage or made a reservation or rights. Any policies not produced either do not cover the relevant time period, or have exclusions that exclude the claims here.

The Advisory Committee notes explain the reason behind the disclosure requirement, which is to facilitate settlement of the case by revealing limitations of coverage and the identity of the insurance company that may be involved in directing the litigation:

> Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect. The amendment is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

Fed. R. Civ. Pro. 26, Advisory Committee Notes, 1970 Amendment. Because the Defendants have already produced all policies under which any of them have made any claim, the Plaintiffs already have the information sufficient to assess any potential coverage and limitations, and the identity of any insurance companies that may be involved in any settlement negotiations. There is simply no valid purpose to producing policies for which there is no potential coverage and upon which no claim has been made. It is self-evident that Defendants have an interest in seeking coverage under any and all potentially applicable policies. Where Defendants have not claimed coverage, it is because there is no viable theory under which the insurance company "may be liable to satisfy all or part of a possible judgment."

Your letter relies on a case from the District of New Jersey, Garcia v. Techtronic Indus. N. Am., Inc., No. 2:13-CV-05884 MCA, 2015 WL 1880544, at *1 (D.N.J. Apr. 22, 2015). That case, however, does not support your broad reading of the Rule. In that case, the Defendants argued that, because there was no evidence that the Plaintiffs' claims would exceed $500,000, there was no evidence that the excess policy "may" cover the claim, and therefore it need not produce the excess policy. That case, and the other cases you cite, are plainly distinguishable. Defendants have not withheld any policy based on an argument that Plaintiffs may not be able to prove some aspect of their case or of their claimed damages. Defendants have produced all policies that "may" provide any coverage for any aspect of Plaintiffs' claims.

You have not identified any reason for seeking production of policies that Defendants have determined provide no hope of coverage of this matter. Defendants can discern no reason for Plaintiffs to seek such policies, other than plainly impermissible reasons, such as in furtherance of other potential litigation against Defendants. Rule 26(a)(1)(A)(4) only applies to insurance agreements that may provide coverage "in the action"; as such, where there is no

possibility that a policy would provide any coverage in this action, the Defendants will not produce it. We hope that this letter resolves this issue.

Sincerely,

*/s/ Kathleen Keller*

Kathleen Keller

Cc: Counsel of record

# PLAINTIFFS' EXHIBIT 4

K&L GATES

October 17, 2016

Frederic Giordano
frederic.giordano@klgates.com

T +1 973 848 4035
F +1 973 848 4001

**Via E-mail**

Kathleen Keller
Bredhoff & Kaiser, PLLC
805 Fifteenth Street NW
Washington, DC 20005

**Re: Care One Management LLC, et al. v. United Healthcare Workers East, SEIU 1199 et al. (No. 12-CV-06371- SDW-MAH)**

Dear Counsel:

On behalf of Care One Management, LLC and the other named plaintiffs in the above-referenced lawsuit ("Plaintiffs"), we write regarding the insurance information that Defendants furnished to Plaintiffs pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv) ("Rule 26(a)"). Defendants' responses are deficient, because they do not include copies of insurance policies for the entirety of the time at issue in this litigation. Accordingly, Plaintiffs demand that Defendants provide copies of all of Defendants' insurance policies for the entire time at issue in this action.

Rule 26(a) provides that a party must, prior to any discovery request, provide "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

Plaintiffs' Second Amended Complaint alleges a pattern of racketeering activity by Defendants "[b]eginning in or around 2010 and continuing up to and including the present . . . " See Second Amended Complaint, ¶133. Plaintiffs filed their Second Amended Complaint on or about June 16, 2015, so the time at issue in this litigation extends from January 1, 2010 through June 16, 2015.

Defendant Service Employees International Union ("SEIU") produced only two insurance policies. The first is a Commercial General Liability ("CGL") policy from The Travelers Indemnity Company of Connecticut, numbered P-630-417L105A-TCT-10, for the policy period from January 10, 2010 through January 10, 2011. SEIU did not produce any subsequent CGL policies. SEIU also produced a Multimedia Liability ("ML") policy from AXIS Insurance Company ("AXIS"), numbered MCN000075541101, for the policy period from September 28, 2011 to September 28, 2012. The Declarations page on the AXIS policy indicates that it is a renewal of policy number MCN000075541001, which presumably covered the September 28, 2010 to September 28, 2011 policy period. SEIU did not produce any ML policies for the periods from

January 1, 2010 through September 28, 2011 and September 28, 2012 through June 16, 2015, including but not limited to AXIS policy number MCN000075541001. Please provide copies of all of SEIU's CGL and ML (or similar) policies for the period from January 1, 2010 through June 16, 2015.

Defendant United Healthcare Workers East ("UHWE") produced two Not-For-Profit Risk Protector ("NPRP") policies from National Union Insurance Company of Pittsburgh, Pa. ("National Union"). The first National Union policy is numbered 01-660-07-14 and covers the March 23, 2012 to March 23, 2013 policy period. The second National Union policy is numbered 01-883-34-59 and covers the March 23, 2013 to March 23, 2014 policy period. The Declarations page on the first National Union policy states that it is a replacement of policy number 01-589-10-44, which presumably covered the March 23, 2011 to March 23, 2012 policy period. UHWE did not produce any policies covering the period from January 1, 2010 through March 23, 2012, including but not limited to National Union policy no. 01-589-10-44. UHWE also did not provide us with any policies covering the period from March 23, 2014 through June 16, 2015. UHWE further did not furnish copies of any of its CGL policies, although such policies typically include some coverage for both defamation and libel. Please provide copies of all of UHWE's NPRP (or similar) and CGL policies for the period from January 1, 2010 through June 16, 2015.

Defendant New England Health Care Employees Union, District 1199 ("NEHCEU") produced only one Union Liability Insurance Policy ("UL") certificate and policy from Hudson Insurance Company ("Hudson"). The Hudson policy certificate is numbered UUL 0005017 00 and covers the policy period from October 25, 2011 to October 25, 2012. The Declarations page on the Hudson policy certificate states that it is a replacement of policy certificate number UUL0040480, which presumably covered the October 25, 2010 to October 25, 2011 policy period. NEHCEU did not produce any policies or certificates covering the period from January 1, 2010 through October 25, 2011, including but not limited to Hudson policy number UUL0040480, or any policies or certificates covering the period from October 25, 2012 through June 15, 2015. NEHCEU similarly did not supply copies of its CGL policies. Please provide copies of all of NEHCEU's UL (or similar) and CGL policies for the period from January 1, 2010 through June 16, 2015.

We would appreciate your prompt attention to the issues Plaintiffs have identified in this letter. Please provide supplemental responses, or advise of your availability to meet and confer to discuss Plaintiffs' concerns. We look forward to hearing from you.

Very truly yours,

Frederic J. Giordano

Frederic J. Giordano

# PLAINTIFFS' EXHIBIT 5

**CRITCHLEY, KINUM & DENOIA, LLC**
75 Livingston Avenue
Roseland, NJ 07068

*Attorneys for some Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Care One Management, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United Healthcare Workers East, SEIU 1199; New England Health Care Employees Union, District 1199; and Service Employees International Union,<br><br>Defendants. | Civil Action No. 2:12-cv-06371<br><br>Honorable Susan D. Wigenton, U.S.D.J.<br>Honorable Michael A. Hammer, U.S.M.J.<br><br>**EIGHTH SUPPLEMENTAL DEMAND FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |

TO: Leon Dayan, Esq.
Bredhoff & Kaiser, PLLC
805 Fifteenth Street, N.W.
Washington, D.C. 20005

**COUNSEL:**

**PLEASE TAKE NOTICE** that, pursuant to the Federal Rules of Civil Procedure, Defendants SEIU United Healthcare Workers East, SEIU 1199 ("UHWE"); New England Health Care Employees Union, District 1199 ("NEHCEU"); and Service Employees International Union ("SEIU") are requested and required to produce all documents set forth in Schedule A annexed hereto which are in their custody, control, or possession or available to them, their counsel, agents, representatives, or associates.

**PLEASE TAKE FURTHER NOTICE** that all requested documents should be produced at the offices of Critchley, Kinum & DeNoia, LLC, 75 Livingston Avenue, Roseland, New Jersey 07068, within the time prescribed by the Federal Rules of Civil Procedure.

Dated: December 1, 2017

/s/ Michael Critchley___________
Michael Critchley, Esq.
**CRITCHLEY, KINUM & DENOIA, LLC**
75 Livingston Avenue
Roseland, NJ 07068

*Attorneys for some Plaintiffs*

**SCHEDULE A**
**DEFINITIONS**

1. "This litigation" means this action, including all matters raised in the original complaint by which this action was initiated, the amended complaint dated December 2, 2013 ("Amended Complaint"), the second amended complaint dated June 16, 2015 ("Second Amended Complaint") and/or in any responsive pleading.

2. "Document" means any written, recorded, printed, typed, taped, graphic, recorded, computerized, electronically stored, or other tangible information of any kind from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither. It includes, but is not limited to, letters; written communications; written applications; memoranda; reports; studies; records; calendar or diary entries; minutes; notes; e-mails; text messages; social media postings; records of meetings, conferences or telephone calls/conferences or any other communications or discussions; recordings; worksheets; films; pictures; diagrams; bulletins; pamphlets; books; printed forms; correspondence; telegrams and cables; contracts; agreements; estimates; analyses; projections; work papers; papers; diaries; data sheets; statements; questionnaires; answers to questionnaires; books of account; calendars; graphs; charges; transcripts; ledgers; registers; summaries; digests; financial statements; newspapers, or periodical or magazine material; records of computations; charts; studies; slides; checks; bills; invoices; personal records; photographs; audio or video tape or voice recordings; and all underlying, supporting or preparatory material and drafts thereof. The original and copies or drafts that differ from the original in any manner including because of notations, markings, erasures or other differences are separate documents and must be separately identified.

3. "Plaintiffs" means the entities named as plaintiffs in the Second Amended Complaint, and all persons who have acted or purported to act on their behalf.

4. "You," "Your," "Unions," or "Defendants" means Defendants United Healthcare Workers East, SEIU 1199; SEIU New England Health Care Employees Union, District 1199; and Service Employees International Union, their officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on their behalf, including any intermediary such as any consultant, independent contractor, or other third party representative.

5. "Person" means an individual, partnership, individual general and limited partners of a partnership, company, corporation, professional corporation, trust or other entity and any officers, directors, employees or shareholders thereof.

6. The term "including" means including but not limited to.

7. Terms in the plural include the singular and terms in the singular include the plural. "Person" means an individual, partnership, individual general and limited partners of a partnership, company, corporation, professional corporation, trust or other entity and any officers, directors, employees or shareholders thereof.

8. The term "relating to" (including any variant thereof), includes referring to, alluding to, responding to, pertaining to, concerning, connected with, commenting on or in respect of, analyzing, touching upon, constituting and being, and is not limited to contemporaneous events, actions, communications or documents.

9. "And" as well as "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the interrogatory all responses which might otherwise be construed to be outside its scope.

**INSTRUCTIONS**

1. Each request for production of documents contemplates production in full, without abbreviation or redaction.

2. If any documents called for in this demand for production are withheld from production, furnish a list of such documents containing a complete description of each document, including:

(a) the date and number of pages of the document;

(b) its title (if any);

(c) its subject matter;

(d) the identity of each attachment or appendices to the document;

(e) the name and identification of each person to whom it is addressed;

(f) the name and identification of each person to whom the document was distributed, shown or explained;

(g) the name and identification of the person or persons by whom it was written;

(h) its present custodian; and

(i) the ground or grounds upon which it is being withheld. If a privilege is asserted as a ground for not producing, or otherwise responding to a production request, describe the factual basis for the claim of privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege.

3. In the event that any document called for by this set of demands has been destroyed or discarded, identify each such document by stating:

(a) any addresser or addressee;

(b) the addresses of any indicated or blind copies;

(c) the date, subject matter, and number of pages of the document;

(d) the identity of any attachments or appendices to the document;

(e) all persons to whom the document was distributed, shown, or explained;

(f) its date of destruction or discard, manner of destruction or discard and reason for destruction or discard; and

(g) the persons authorizing and carrying out such destruction or discard.

4. These requests are deemed continuing. If any document requested comes into the possession, custody or control of Defendant or any person acting on behalf of Defendant after the time specified herein for the production of such document, Defendant should immediately produce such document to the undersigned attorneys for inspection and copying.

5. Unless otherwise expressly stated in writing, failure to produce any item requested herein is a representation that such item does not exist or is not in the possession, custody or control of Defendant or any person acting on its behalf.

## DOCUMENTS DEMANDED

The following documents are hereby demanded:

1. Any and all publicly filed IRS Form 990s for Defendants;

2. Any and all Documents relating to any consulting or other agreements involving Anna Berger, including, but not limited to, the actual agreements;

3. Any and all Documents relating to any consulting or other agreements with Steve Rosenthal and/or The Atlas Project, including, but not limited to, the actual agreements;

4. Any and all Documents relating to any consulting or other agreements with Dennis Rivera, including, but not limited to, the actual agreements; and

5. Any and all Documents relating to any consulting or other agreements with former officers of Defendants and/or relatives of current or former officers of Defendants, including, but not limited to, the actual agreements.

# PLAINTIFFS' EXHIBIT 6

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318066323

Form **990**

Department of the Treasury Internal Revenue Service

# Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

▶ The organization may have to use a copy of this return to satisfy state reporting requirements

OMB No 1545-0047

**2012**

**Open to Public Inspection**

A For the 2012 calendar year, or tax year beginning 01-01-2012 , 2012, and ending 12-31-2012

B Check if applicable: ☐ Address change ☐ Name change ☐ Initial return ☐ Terminated ☐ Amended return ☐ Application pending

C Name of organization
SERVICE EMPLOYEES INTERNATIONAL UNION

Doing Business As

Number and street (or P O box if mail is not delivered to street address) | Room/suite
1800 MASSACHUSETTS AVENUE NW

City or town, state or country, and ZIP + 4
WASHINGTON, DC 20036

D Employer identification number
36-0852885

E Telephone number
(202) 730-7000

G Gross receipts $ 320,334,227

F Name and address of principal officer
MARY KAY HENRY
1800 MASSACHUSETTS AVENUE NW
WASHINGTON, DC 20036

H(a) Is this a group return for affiliates? ☐ Yes ☑ No

H(b) Are all affiliates included? ☐ Yes ☐ No
If "No," attach a list (see instructions)

H(c) Group exemption number ▶ 0647

I Tax-exempt status ☐ 501(c)(3) ☑ 501(c) ( 5 ) ◀ (insert no ) ☐ 4947(a)(1) or ☐ 527

J Website: ▶ WWW SEIU ORG

K Form of organization ☐ Corporation ☐ Trust ☑ Association ☐ Other ▶

L Year of formation 1921 | M State of legal domicile DC

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities
BARGAIN COLLECTIVELY WITH EMPLOYERS TO SECURE BETTER WORKING CONDITIONS, WAGES, AND BENEFITS FOR WORKERS

2 Check this box ▶☐ if the organization discontinued its operations or disposed of more than 25% of its net assets

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 79 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 67 |
| 5 | Total number of individuals employed in calendar year 2012 (Part V, line 2a) | 5 | 862 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, line 34 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | 295,218,541 | 296,877,091 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 1,836,423 | 3,624,355 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 16,273,684 | 6,809,161 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 313,328,648 | 307,310,607 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1-3 ) | 0 | 0 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 76,898,405 | 84,122,697 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 204,934,618 | 233,747,125 |
| | 18 | Total expenses Add lines 13-17 (must equal Part IX, column (A), line 25) | 281,833,023 | 317,869,822 |
| | 19 | Revenue less expenses Subtract line 18 from line 12 | 31,495,625 | -10,559,215 |

| | | | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| Net Assets or Fund Balances | 20 | Total assets (Part X, line 16) | 146,770,815 | 128,514,346 |
| | 21 | Total liabilities (Part X, line 26) | 20,735,786 | 13,385,404 |
| | 22 | Net assets or fund balances Subtract line 21 from line 20 | 126,035,029 | 115,128,942 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge

**Sign Here**
▶ Signature of officer | 2013-11-14 Date
▶ STEPHEN ABRECHT CHIEF FINANCIAL OFFICER
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| SCOTT E HALLBERG CPA | | | | P01081188 |

Firm's name ▶ CALIBRE CPA GROUP PLLC | Firm's EIN ▶ 4[illegible]

Firm's address ▶ 7501 WISCONSIN AVENUE SUITE 1200 WEST BETHESDA, MD 20814 | Phone no (202) [illegible]

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions. Cat No 11282Y Form **990** (2012)

EXHIBIT 39 ALL-STATE LEGAL

**Part III Statement of Program Service Accomplishments**

Check if Schedule O contains a response to any question in this Part III . . . . . . . . . . . . . . ☑

1 Briefly describe the organization's mission

SEIU IS A LARGE INTERNATIONAL LABOR ORGANIZATION IT IS FIRST AND FOREMOST AN ASSOCIATION OF WORKERS WHO HAVE JOINED TOGETHER TO PROTECT AND PROMOTE THE INTERESTS OF ITS MEMBERS AND ALL WORKERS BY BARGAINING CO[illegible]CTIVELY WITH THEIR EMPLOYERS TO SECURE BETTER WORKING CONDITIONS, WAGES AND SIMILAR BENEFITS SEIU AI[illegible] TRIVES TO WORK COOPERATIVELY WITH EMPLOYERS TO IMPROVE THE QUALITY AND EFFICIENCY OF SERVICES PE[illegible] MED AND PRODUCTS MANUFACTURED, WITH A SPECIAL EMPHASIS ON THE NEEDS OF THE COMMUNITIES WHERE THEY AI[illegible] UATED

2 Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe these new services on Schedule O

3 Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe these changes on Schedule O

4 Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported

4a (Code ) (Expenses $ including grants of $ ) (Revenue $ )

SUPPORTING ORGANIZING, BARGAINING EFFORTS FOR AFFILIATES AND MEMBERS AND POLITICAL ACTION AND EDUCATION

4b (Code ) (Expenses $ including grants of $ ) (Revenue $ )

4c (Code ) (Expenses $ including grants of $ ) (Revenue $ )

4d Other program services (Describe in Schedule O )

(Expenses $ including grants of $ ) (Revenue $ )

4e **Total program service expenses** ▶

**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | | No |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | 2 | | No |
| | id the organization engage in direct or indirect political campaign activities on behalf of or in opposition to andidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | Yes | |
| | ection 501(c)(3) organizations. Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X, or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* | 10 | | No |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI.* | 11a | Yes | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | | No |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | | No |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | No |
| | 'as the organization included in consolidated, independent audited financial statements for the tax year? *If 'es," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | Yes | |
| | , the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | Yes | |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | Yes | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or assistance to any organization or entity located outside the United States? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or assistance to individuals located outside the United States? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I (see instructions)* | 17 | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |

Form 990 (2012)

**Part IV** **Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants and other assistance to any government or organization in the United States on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | | No |
| 22 | Did the organization report more than $5,000 of grants and other assistance to individuals in the United States on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3) and 501(c)(4) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | 25a | | |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | 25b | | |
| 26 | Was a loan to or by a current or former officer, director, trustee, key employee, highest compensated employee, or disqualified person outstanding as of the end of the organization's tax year? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions) | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28a | Yes | |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* | 28c | Yes | |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O | 38 | Yes | |

**Part V** **Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response to any question in this Part V . . . . . . . . . . . . . . . . ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable . . | 1a | 283 | | | |
| **b** Enter the number of Forms W-2G included in line 1a *Enter -0- if not applicable* | 1b | 0 | | | |
| **c** Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | Yes | |
| **2a** Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 862 | | | |
| **b** If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | 2b | Yes | |
| **3a** Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| **b** If "Yes," has it filed a Form 990-T for this year? *If "No," provide an explanation in Schedule O* | | | 3b | | |
| **4a** At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | Yes | |
| **b** If "Yes," enter the name of the foreign country ►CA See instructions for filing requirements for Form TD F 90-22 1, Report of Foreign Bank and Financial Accounts | | | | | |
| **5a** Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| **b** Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| **c** If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| **6a** Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| **b** If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| **7** **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| **a** Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | |
| **b** If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| **c** Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | |
| **d** If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| **e** Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | |
| **f** Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | |
| **g** If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| **h** If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| **8** **Sponsoring organizations maintaining donor advised funds and section 509(a)(3) supporting organizations.** Did the supporting organization, or a donor advised fund maintained by a sponsoring organization, have excess business holdings at any time during the year? | | | 8 | | |
| **9** **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| **a** Did the organization make any taxable distributions under section 4966? | | | 9a | | |
| **b** Did the organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| **10** ***Section 501(c)(7) organizations.*** Enter | | | | | |
| **a** Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| **b** Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| **11** **Section 501(c)(12) organizations.** Enter | | | | | |
| **a** Gross income from members or shareholders | 11a | | | | |
| **b** Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them ) | 11b | | | | |
| **12a** ***Section 4947(a)(1) non-exempt charitable trusts.*** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| **b** If "Yes," enter the amount of tax-exempt interest received or accrued during the year | 12b | | | | |
| **13** ***Section 501(c)(29) qualified nonprofit health insurance issuers.*** | | | | | |
| **a** Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O | | | 13a | | |
| **b** Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | | |
| **c** Enter the amount of reserves on hand | 13c | | | | |
| **14a** Did the organization receive any payments for indoor tanning services during the tax year? | | | 14a | | No |
| **b** If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | | 14b | | |

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response to any question in this Part VI . . . ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year . . . | 1a | 79 | | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O | | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent . . . | 1b | 67 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . | | | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | | | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . | | | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . | | | 5 | | No |
| 6 | Did the organization have members or stockholders? . . . | | | 6 | Yes | |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . | | | 7a | Yes | |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . | | | 7b | Yes | |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following | | | | | |
| a | The governing body? . . . | | | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? . . . | | | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* . . . | | | 9 | | No |

**Section B. Policies** *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . | 10a | Yes | |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | Yes | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . | 11a | Yes | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990 . . . | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . | 12b | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? . . . | 13 | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? . . . | 14 | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | *The organization's CEO, Executive Director, or top management official* . . . | 15a | Yes | |
| b | Other officers or key employees of the organization . . . | 15b | Yes | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions) | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . | 16b | | |

**Section C. Disclosure**

17 List the States with which a copy of this Form 990 is required to be filed▶

18 Section 6104 requires an organization to make its Form 1023 (or 1024 if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection Indicate how you made these available Check all that apply

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

19 Describe in Schedule O whether (and if so, how), the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

20 State the name, physical address, and telephone number of the person who possesses the books and records of the organization ▶STEPHEN ABRECHT 1800 MASSACHUSETTS AVENUE NW WASHINGTON, DC (202) 737-7000

**Part VII** **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response to any question in this Part VII . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed Report compensation for the calendar year ending with or within the organization's ta· · ar

all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount o1 ·ensation Enter -0- in columns (D), (E), and (F) if no compensation was paid

all of the organization's **current** key employees, if any See instructions for definition of "key employee "

- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations

- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations

- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees, and former such persons

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| See Additional Data Table | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Form **990** (2012)

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee): Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . ► | | | | | | | | | | |
| **c Total from continuation sheets to Part VII, Section A** . . . ► | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . ► | | | | | | | | 4,282,277 | 0 | 1,013,804 |

2 Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization►164

| | | Yes | No |
|---|---|---|---|
| 3 Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . | 3 | | No |
| 4 For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . | 4 | Yes | |
| 5 Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . | 5 | | No |

## Section B. Independent Contractors

1 Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization Report compensation for the calendar year ending with or within the organization's tax year

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| APPLIED AUTOMATED ENGINEERING CORP 65 S MAIN STREET BLDG C PENNINGTON NJ 08534 | STAFFS AND MANAGES SEIU IT DEPARTMENT | 3,617,523 |
| CHAMBERS LOPEZ LLC PO BOX 5539 ARLINGTON VA 22205 | MARKETING AND CONSULTING | 2,147,081 |
| ALTSHULER BERZON LLP 177 POST STREET SUITE 300 SAN FRANCISCO CA 94108 | LEGAL SERVICES | 1,256,963 |
| BREDHOFF & KAISER 805 FIFTEENTH STREET NW SUITE 100 WASHINGTON DC 20005 | LEGAL SERVICES | 714,194 |
| JAMES & HOFFMAN 1130 CONNECTICUT AVENUE NW SUITE WASHINGTON DC 20036 | LABOR AND EMPLOYMENT LEGAL SERVICES | 598,340 |

2 Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ►38

**Part VIII** **Statement of Revenue**

Check if Schedule O contains a response to any question in this Part VIII . . . . . . . . . . . . . ☐

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512, 513, or 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a | Federated campaigns . . | 1a | | | | |
| | b | Membership dues . . . . . | 1b | | | | |
| | c | Fundraising events . . . . . | 1c | | | | |
| | d | Related organizations . . . . | 1d | | | | |
| | e | Government grants (contributions) | 1e | | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above | 1f | | | | |
| | g | Noncash contributions included in lines 1a-1f $ | | | | | |
| | h | **Total.** Add lines 1a-1f . . . . . . . . ► | | | | | |
| **Program Service Revenue** | | | Business Code | | | | |
| | 2a | PER CAPITA TAXES | 900099 | 281,781,045 | 281,781,045 | | |
| | b | DUES FROM LOCALS | 900099 | 17,353,994 | 17,353,994 | | |
| | c | SERVICES RENDERED | 900099 | 3,688,318 | 3,688,318 | | |
| | d | ADMINISTRATIVE REIMBURSEMENT | 900099 | 1,159,164 | 1,159,164 | | |
| | e | NET GAIN OF SUBSIDIARY | 900099 | 686,284 | 686,284 | | |
| | f | All other program service revenue | | -7,791,714 | -7,791,714 | | |
| | g | **Total.** Add lines 2a-2f . . . . . . . . . ► | | 296,877,091 | | | |
| **Other Revenue** | 3 | Investment income (including dividends, interest, and other similar amounts) . . . . . . . ► | | 1,894,625 | | | 1,894,625 |
| | 4 | Income from investment of tax-exempt bond proceeds . . ► | | | | | |
| | 5 | Royalties . . . . . . . . . . . . ► | | 34,486 | | | 34,486 |
| | | | (i) Real / (ii) Personal | | | | |
| | 6a | Gross rents | (i) Real: — (ii) Personal: — | | | | |
| | b | Less rental expenses | (i) Real: — (ii) Personal: — | | | | |
| | c | Rental income or (loss) | (i) Real: — (ii) Personal: — | | | | |
| | d | Net rental income or (loss) . . . . . . . . ► | | | | | |
| | | | (i) Securities / (ii) Other | | | | |
| | 7a | Gross amount from sales of assets other than inventory | (i) Securities: 14,753,350 (ii) Other: — | | | | |
| | b | Less cost or other basis and sales expenses | (i) Securities: 13,023,620 (ii) Other: — | | | | |
| | c | Gain or (loss) | (i) Securities: 1,729,730 (ii) Other: — | | | | |
| | d | Net gain or (loss) . . . . . . . . . . . ► | | 1,729,730 | | | 1,729,730 |
| | 8a | Gross income from fundraising events (not including $ ____ of contributions reported on line 1c) See Part IV, line 18 . . | a | | | | |
| | b | Less direct expenses . . . . | b | | | | |
| | c | Net income or (loss) from fundraising events . . ► | | | | | |
| | 9a | Gross income from gaming activities See Part IV, line 19 . . . . | a | | | | |
| | b | Less direct expenses . . . . | b | | | | |
| | c | Net income or (loss) from gaming activities . . ► | | | | | |
| | 10a | Gross sales of inventory, less returns and allowances . . | a | | | | |
| | b | Less cost of goods sold . . . | b | | | | |
| | c | Net income or (loss) from sales of inventory . . ► | | | | | |
| | | Miscellaneous Revenue | Business Code | | | | |
| | 11a | OTHER INCOME | 900099 | 4,805,641 | | | 4,805,641 |
| | b | SETTLEMENT INCOME | 900099 | 1,969,034 | | | 1,969,034 |
| | c | | | | | | |
| | d | All other revenue . . . . . | | | | | |
| | e | **Total.** Add lines 11a-11d . . . . . . . ► | | 6,774,675 | | | |
| | 12 | **Total revenue.** See Instructions . . . . . . ► | | 307,310,607 | 296,877,091 | 0 | 10,433,516 |



EXHIBIT
ALL-STATE LEGAL®

**Part IX** Statement of Functional Expenses

Section 501(c)(3) and 501(c)(4) organizations must complete all columns All other organizations must complete column (A)

Check if Schedule O contains a response to any question in this Part IX

| | Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|---|
| | Grants and other assistance to governments and organizations in the United States See Part IV, line 21 | | | | |
| | Grants and other assistance to individuals in the United States See Part IV, line 22 | | | | |
| 3 | Grants and other assistance to governments, organizations, and individuals outside the United States See Part IV, lines 15 and 16 | | | | |
| 4 | Benefits paid to or for members | | | | |
| 5 | Compensation of current officers, directors, trustees, and key employees | 4,145,591 | | | |
| 6 | Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7 | Other salaries and wages | 55,263,029 | | | |
| 8 | Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 8,696,463 | | | |
| 9 | Other employee benefits | 11,170,586 | | | |
| 10 | Payroll taxes | 4,847,028 | | | |
| 11 | Fees for services (non-employees) | | | | |
| a | Management | | | | |
| b | Legal | 4,228,581 | | | |
| c | Accounting | 508,574 | | | |
| d | Lobbying | | | | |
| e | Professional fundraising services See Part IV, line 17 | | | | |
| f | Investment management fees | | | | |
| g | Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 27,280,319 | | | |
| 12 | Advertising and promotion | 8,418,003 | | | |
| 13 | Office expenses | 5,247,095 | | | |
| 14 | Information technology | 6,164,642 | | | |
| 15 | Royalties | | | | |
| 16 | Occupancy | 1,586,333 | | | |
| 17 | Travel | 22,346,136 | | | |
| 18 | Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 | Conferences, conventions, and meetings | 9,455,724 | | | |
| 20 | Interest | 5,408 | | | |
| 21 | Payments to affiliates | 6,422,501 | | | |
| 22 | Depreciation, depletion, and amortization | 140,073 | | | |
| 23 | Insurance | 896,772 | | | |
| 24 | Other expenses Itemize expenses not covered above (List miscellaneous expenses in line 24e If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O ) | | | | |
| a | REIMBURSEMENTS / SUBSID | 55,077,009 | | | |
| b | REBATES TO AFFILIATES | 54,458,101 | | | |
| c | CONTRIBUTIONS & SPECIAL | 29,900,768 | | | |
| d | BOOKS AND SUBSCRIPTIONS | 1,002,514 | | | |
| e | All other expenses | 608,572 | | | |
| 25 | **Total functional expenses.** Add lines 1 through 24e | 317,869,822 | | | |
| 26 | **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) | | | | |

**Part X** **Balance Sheet**

Check if Schedule O contains a response to any question in this Part X . . . ☐

| Section | Line | Description | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|---|
| Assets | 1 | Cash—non-interest-bearing | | | 22,491,208 | 1 | 3,931,325 |
| | 2 | Savings and temporary cash investments | | | 32,939,316 | 2 | 9,592,648 |
| | 3 | Pledges and grants receivable, net | | | | 3 | |
| | 4 | Accounts receivable, net | | | 42,745,756 | 4 | 43,392,940 |
| | 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees Complete Part II of Schedule L | | | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) Complete Part II of Schedule L | | | | 6 | |
| | 7 | Notes and loans receivable, net | | | 19,771,787 | 7 | 19,791,291 |
| | 8 | Inventories for sale or use | | | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | | 1,410,902 | 9 | 855,684 |
| | 10a | Land, buildings, and equipment cost or other basis Complete Part VI of Schedule D | 10a | 8,314,256 | | | |
| | b | Less accumulated depreciation | 10b | 7,998,851 | 403,327 | 10c | 315,405 |
| | 11 | Investments—publicly traded securities | | | 34,807,736 | 11 | 61,656,640 |
| | 12 | Investments—other securities See Part IV, line 11 | | | -11,123,584 | 12 | -10,437,300 |
| | 13 | Investments—program-related See Part IV, line 11 | | | | 13 | |
| | 14 | Intangible assets | | | | 14 | |
| | 15 | Other assets See Part IV, line 11 | | | 3,324,367 | 15 | -584,296 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) | | | 146,770,815 | 16 | 128,514,346 |
| Liabilities | 17 | Accounts payable and accrued expenses | | | 12,246,483 | 17 | 13,385,404 |
| | 18 | Grants payable | | | | 18 | |
| | 19 | Deferred revenue | | | | 19 | |
| | 20 | Tax-exempt bond liabilities | | | | 20 | |
| | 21 | Escrow or custodial account liability Complete Part IV of Schedule D | | | | 21 | |
| | 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons Complete Part II of Schedule L | | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24) Complete Part X of Schedule D | | | 8,489,303 | 25 | 0 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | | 20,735,786 | 26 | 13,385,404 |
| Net Assets or Fund Balances | | **Organizations that follow SFAS 117 (ASC 958), check here ▶ ☑ and complete lines 27 through 29, and lines 33 and 34.** | | | | | |
| | 27 | Unrestricted net assets | | | 126,035,029 | 27 | 115,128,942 |
| | 28 | Temporarily restricted net assets | | | | 28 | |
| | 29 | Permanently restricted net assets | | | | 29 | |
| | | **Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 30 through 34.** | | | | | |
| | 30 | Capital stock or trust principal, or current funds | | | | 30 | |
| | 31 | Paid-in or capital surplus, or land, building or equipment fund | | | | 31 | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds | | | | 32 | |
| | 33 | Total net assets or fund balances | | | 126,035,029 | 33 | 115,128,942 |
| | 34 | Total liabilities and net assets/fund balances | | | 146,770,815 | 34 | 128,514,346 |

**Part XI Reconcilliation of Net Assets**

Check if Schedule O contains a response to any question in this Part XI . . . . . . . . . . . ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 307,310,607 |
| ~ | "otal expenses (must equal Part IX, column (A), line 25) | 2 | 317,869,822 |
| | ·venue less expenses Subtract line 2 from line 1 | 3 | -10,559,215 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) | 4 | 126,035,029 |
| 5 | Net unrealized gains (losses) on investments | 5 | -346,872 |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | 10 | 115,128,942 |

**Part XII Financial Statements and Reporting**

Check if Schedule O contains a response to any question in this Part XII . . . . . . . . . . . ☑

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990 ☐ Cash ☑ Accrual ☐ Other ____ *If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O* | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both ☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both ☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? If the organization changed either its oversight process or selection process during the tax year, explain in ·hedule O | 2c | Yes | |
| | *s a result of a federal award, was the organization required to undergo an audit or audits as set forth in the* ngle Audit Act and OMB Circular A-133? | 3a | | No |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | 3b | | |

Form **990** (2012)

Software ID:
Software Version:
EIN: 36-0852885
Name: SERVICE EMPLOYEES INTERNATIONAL UNION

**Form 990, Part VII - Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| MARY KAY HENRY<br>INTERNATIONAL PRESIDENT | 35 00 | X | | X | | | | 263,821 | 0 | 63,924 |
| ELISEO MEDINA<br>INTERNATIONAL SECRETARY & TREASURER | 35 00 | X | | X | | | | 226,277 | 0 | 58,542 |
| MITCHELL ACKERMAN<br>EXECUTIVE VP (THRU 5/30/2012) | 35 00 | X | | X | | | | 219,451 | 0 | 31,376 |
| KIRK ADAMS<br>EXECUTIVE VICE PRESIDENT | 35 00 | X | | X | | | | 197,536 | 0 | 53,541 |
| MICHAEL FISHMAN<br>EXECUTIVE VICE PRESIDENT | 35 00 | X | | X | | | | 176,344 | 0 | 30,712 |
| GERALD HUDSON<br>EXECUTIVE VICE PRESIDENT | 35 00 | X | | X | | | | 205,136 | 0 | 53,541 |
| EILEEN KIRLIN<br>EXECUTIVE VICE PRESIDENT | 35 00 | X | | X | | | | 195,291 | 0 | 53,541 |
| V/ LONG<br>E 'E VICE PRESIDENT | 35 00 | X | | X | | | | 192,851 | 0 | 47,315 |
| T, WOODRUFF<br>EXL . IVE VICE PRESIDENT | 35 00 | X | | X | | | | 205,704 | 0 | 45,632 |
| THOMAS BALANOFF<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| NOEL BEASLEY<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| NEAL BISNO<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| LAPHONZA BUTLER<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| MARIA CASTANEDA<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| HEATHER CONROY<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| DANA COPE<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| THOMAS DE BRUIN<br>VICE PRESIDENT (THRU 5/30/2012) | 35 00 | X | | | | | | 151,871 | 0 | 44,835 |
| [illegible] FRANK<br>VICE PRESIDENT | 1 00 | X | | | | | | 143,534 | 0 | 35,579 |
| MICHAEL GARCIA<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| [illegible] GRESHAM<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| [illegible] RAFAEL [illegible] RIVERA<br>VICE PRESIDENT (THRU 5/30/2012) | 35 00 | X | | | | | | [illegible] | 0 | 0 |
| DAVID HOLWAY<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| KEITH KELLEHER<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| [illegible]<br>[illegible] | 1 00 | X | | | | | | 146,580 | 0 | 33,175 |
| [illegible] PALMER<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |

Form 990, Part VII - Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| DAVID REGAN<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| ROBERTO P RODRIGUEZ<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| DAVID ROLF<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| EDGAR ROMNEY<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| MONICA RUSSO<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| ROCIO SAENZ<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| KRISTINA SERMERSHEIM<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| YVONNE WALKER<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| BECKY WILLIAMS<br>VICE PRESIDENT | 1 00 | X | | | | | | 0 | 0 | 0 |
| KENNETH BRYNIEN<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| MARK FLEISCHMAN<br>EXEC BOARD MEMBER (THRU 5/30/2012) | 1 00 | X | | | | | | 0 | 0 | 0 |
| MEL GRIESHABER<br>EXEC BOARD MEMBER (THRU 5/30/2012) | 1 00 | X | | | | | | 0 | 0 | 0 |
| C JOHNSON<br>E E BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| STEPHEN K LERNER<br>EXEC BOARD MEMBER (THRU 5/30/2012) | 1 00 | X | | | | | | 0 | 0 | 0 |
| DEBBIE SCHNEIDER<br>EXEC BOARD MEMBER (THRU 5/30/2012) | 1 00 | X | | | | | | 0 | 0 | 0 |
| PHILLIP THOMPSON<br>EXEC BOARD MEMBER (THRU 5/30/2012) | 1 00 | X | | | | | | 0 | 0 | 0 |
| CHRISTINE BOARDMAN<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| DOUG COLLIER<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| MERLE CUTTITTA<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| JERRY DENNIS<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| GEORGE DOCKINS<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| MARC EARLS<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| MARGE FAVELL<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| HECTOR FIGUEROA<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| LYNNE FOX<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |

Form 990, Part VII - Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee): Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| CATHERINE GLASSON<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| KAREN HART<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| KATHY JELLISON<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| SUSAN KENT<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| DIANA LACEY<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| BILL LLOYD<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 155,040 | 0 | 45,045 |
| AL MARTINEZ<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| ALPHONSO MAYFIELD<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| JAVIER MORILLO-ALICEA<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| RAHAMAN MUHAMMAD<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| CAM NELSON<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| MEG NIEMI<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| C. IETERS<br>E /E BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| PHILLIP PATRICK<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| MANUEL PERFECTO TORRES<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| DAVID PICKUS<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| ANDREW POTTER<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| JOHN REID<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| GINETTE RIVARD<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| TAMEKIA ROBINSON<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| SERGIO SALINAS<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| ROXANNE SANCHEZ<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| SIDNEY SANDY<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| [illegible] SCHNELL<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |
| [illegible] SCHOONOVER<br>EXECUTIVE BOARD MEMBER | 1 00 | X | | | | | | 0 | 0 | 0 |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318066323

# SCHEDULE C (Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

## Political Campaign and Lobbying Activities

For Organizations Exempt From Income Tax Under section 501(c) and section 527
► Complete if the organization is described below. ► Attach to Form 990 or Form 990-EZ.
► See separate instructions.

OMB No 1545-0047

2012

**Open to Public Inspection**

If the organization answered "Yes" to Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then
- Section 501(c)(3) organizations Complete Parts I-A and B Do not complete Part I-C
- Section 501(c) (other than section 501(c)(3)) organizations Complete Parts I-A and C below Do not complete Part I-B
- Section 527 organizations Complete Part I-A only

If the organization answered "Yes" to Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then
- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)) Complete Part II-A Do not complete Part II-B
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)) Complete Part II-B Do not complete Part II-A

If the organization answered "Yes" to Form 990, Part IV, Line 5 (Proxy Tax) or Form 990-EZ, Part V, line 35c (Proxy Tax), then
- Section 501(c)(4), (5), or (6) organizations Complete Part III

| Name of the organization | Employer identification number |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION | 36-0852885 |

**Part I-A Complete if the organization is exempt under section 501(c) or is a section 527 organization.**

1 Provide a description of the organization's direct and indirect political campaign activities in Part IV

2 Political expenditures ► $ 55,654,714

3 Volunteer hours

**Part I-B Complete if the organization is exempt under section 501(c)(3).**

1 Enter the amount of any excise tax incurred by the organization under section 4955 ► $

2 Enter the amount of any excise tax incurred by organization managers under section 4955 ► $

3 If the organization incurred a section 4955 tax, did it file Form 4720 for this year? ☐ Yes ☐ No

4a Was a correction made? ☐ Yes ☐ No

b If "Yes," describe in Part IV

**Part I-C Complete if the organization is exempt under section 501(c), except section 501(c)(3).**

1 Enter the amount directly expended by the filing organization for section 527 exempt function activities ► $

2 Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities ► $

3 Total exempt function expenditures Add lines 1 and 2 Enter here and on Form 1120-POL, line 17b ► $

4 Did the filing organization file Form 1120-POL for this year? ☐ Yes ☐ No

5 Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments For each organization listed, enter the amount paid from the filing organization's funds Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC) If additional space is needed, provide information in Part IV

| (a) Name | (b) Address | (c) EIN | (d) Amount paid from filing organization's funds If none, enter -0- | (e) Amount of political contributions received and promptly and directly delivered to a separate political organization If none, enter -0- |
|---|---|---|---|---|
| (1) SEIU POLITICAL EDUCATION AND ACTION FUND | 1800 MASSACHUSETTS AVENUE NW WASHINGTON, DC 20036 | 52-2263644 | | 21,647,525 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

For Paperwork Reduction Act Notice, see the instructions for Form 990 or 990-EZ. Cat No 50084S Schedule C (Form 990 or 990-EZ) 2012

EXHIBIT
ALL-STATE LEGAL®

**Part II-A** **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).**

A Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures)

B Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply

| | **Limits on Lobbying Expenditures** (The term "expenditures" means amounts paid or incurred.) | (a) Filing organization's totals | (b) Affiliated group totals |
|---|---|---|---|
| 1a | Total lobbying expenditures to influence public opinion (grass roots lobbying) | | |
| b | Total lobbying expenditures to influence a legislative body (direct lobbying) | | |
| c | Total lobbying expenditures (add lines 1a and 1b) | | |
| d | Other exempt purpose expenditures | | |
| e | Total exempt purpose expenditures (add lines 1c and 1d) | | |
| f | Lobbying nontaxable amount Enter the amount from the following table in both columns | | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000 |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000 |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 |
| Over $17,000,000 | $1,000,000 |

| | | (a) | (b) |
|---|---|---|---|
| g | Grassroots nontaxable amount (enter 25% of line 1f) | | |
| h | Subtract line 1g from line 1a If zero or less, enter -0- | | |
| i | Subtract line 1f from line 1c If zero or less, enter -0- | | |

j If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? ☐ Yes ☐ No

**4-Year Averaging Period Under Section 501(h)**
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the instructions for lines 2a through 2f on page 4.)**

**Lobbying Expenditures During 4-Year Averaging Period**

| | Calendar year (or fiscal year beginning in) | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) Total |
|---|---|---|---|---|---|---|
| 2a | Lobbying nontaxable amount | | | | | |
| b | Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | |
| c | Total lobbying expenditures | | | | | |
| d | Grassroots nontaxable amount | | | | | |
| e | Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | |
| f | Grassroots lobbying expenditures | | | | | |

**Part II-B** **Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).**

| *For each "Yes" response to lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity.* | (a) Yes | (a) No | (b) Amount |
|---|---|---|---|
| 1 [Du]ring the year, did the filing organization attempt to influence foreign, national, state or local [le]gislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of | | | |
| a Volunteers? | | | |
| b Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? | | | |
| c Media advertisements? | | | |
| d Mailings to members, legislators, or the public? | | | |
| e Publications, or published or broadcast statements? | | | |
| f Grants to other organizations for lobbying purposes? | | | |
| g Direct contact with legislators, their staffs, government officials, or a legislative body? | | | |
| h Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? | | | |
| i Other activities? | | | |
| j Total Add lines 1c through 1i | | | |
| 2a Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? | | | |
| b If "Yes," enter the amount of any tax incurred under section 4912 | | | |
| c If "Yes," enter the amount of any tax incurred by organization managers under section 4912 | | | |
| d If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? | | | |

**Part III-A** **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).**

| | | Yes | No |
|---|---|---|---|
| 1 Were substantially all (90% or more) dues received nondeductible by members? | 1 | Yes | |
| 2 Did the organization make only in-house lobbying expenditures of $2,000 or less? | 2 | | No |
| 3 Did the organization agree to carry over lobbying and political expenditures from the prior year? | 3 | | No |

**Part III-B** **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes."**

| | | |
|---|---|---|
| 1 Dues, assessments and similar amounts from members | 1 | |
| 2 Section 162(e) nondeductible lobbying and political expenditures (**do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| a Current year | 2a | |
| b Carryover from last year | 2b | |
| c Total | 2c | |
| 3 Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues | 3 | |
| 4 If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and [po]litical expenditure next year? | 4 | |
| 5 [Ta]xable amount of lobbying and political expenditures (see instructions) | 5 | |

**Part IV** **Supplemental Information**

Complete this part to provide the descriptions required for Part I-A, line 1, Part I-B, line 4, Part I-C, line 5, Part II-A (affiliated group list), Part II-A, line 2, and Part II-B, line 1 Also, complete this part for any additional information

| Identifier | Return Reference | Explanation |
|---|---|---|
| ORGANIZATIONS DIRECT AND INDIRECT POLITICAL CAMPAIGN ACTIVITIES | PART I-A, LINE 1 | MEMBER TO MEMBER COMMUNICATIONS IN SUPPORT OF, OR IN OPPOSITION TO, CANDIDATES FOR FEDERAL, STATE AND LOCAL OFFICE PAYMENTS FOR ADMINISTRATIVE AND FUNDRAISING EXPENSES FOR SEIU COPE, THE UNION'S FEDERALLY REGISTERED POLITICAL ACTION COMMITTEE |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318060325

**SCHEDULE D** (Form 990)

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

► Complete if the organization answered "Yes," to Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b
► Attach to Form 990. ► See separate instructions.

OMB No 1545-0047

**2012**

**Open to Public Inspection**

Name of the organization: SERVICE EMPLOYEES INTERNATIONAL UNION

Employer identification number: 36-0852885

**Part I** **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate contributions to (during year) | | |
| 3 | Aggregate grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II** **Conservation Easements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply)

☐ Preservation of land for public use (e g , recreation or education) ☐ Preservation of an historically important land area
☐ Protection of natural habitat ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ►______

4 Number of states where property subject to conservation easement is located ►______

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year ►______

7 Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year ► $______

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 *In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements*

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** *Complete if the organization answered "Yes" to Form 990, Part IV, line 8.*

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items

(i) Revenues included in Form 990, Part VIII, line 1 ► $______

(ii) Assets included in Form 990, Part X ► $______

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items

a Revenues included in Form 990, Part VIII, line 1 ► $______

b Assets included in Form 990, Part X ► $______

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply)

a ☐ Public exhibition — d ☐ Loan or exchange programs

b ☐ Scholarly research — e ☐ Other

c ☐ Preservation for future generations

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? ☐ Yes ☐ No

**Part IV Escrow and Custodial Arrangements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII and complete the following table

| | | | Amount |
|---|---|---|---|
| c | Beginning balance | 1c | |
| d | Additions during the year | 1d | |
| e | Distributions during the year | 1e | |
| f | Ending balance | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21? ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII Check here if the explanation has been provided in Part XIII . . . . . . . . ☐

**Part V Endowment Funds.** Complete if the organization answered "Yes" to Form 990, Part IV, line 10.

| | | (a)Current year | (b)Prior year | (c)Two years back | (d)Three years back | (e)Four years back |
|---|---|---|---|---|---|---|
| 1a | Beginning of year balance | | | | | |
| b | Contributions | | | | | |
| c | Net investment earnings, gains, and losses | | | | | |
| d | Grants or scholarships | | | | | |
| e | Other expenditures for facilities and programs | | | | | |
| f | Administrative expenses | | | | | |
| g | End of year balance | | | | | |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as

a Board designated or quasi-endowment ▶

b Permanent endowment ▶

c Temporarily restricted endowment ▶

The percentages in lines 2a, 2b, and 2c should equal 100%

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by

| | | | Yes | No |
|---|---|---|---|---|
| | (i) unrelated organizations | 3a(i) | | |
| | (ii) related organizations | 3a(ii) | | |
| b | If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds

**Part VI Land, Buildings, and Equipment.** See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b)Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a Land | | | | |
| b Buildings | | | | |
| c Leasehold improvements | | 829,220 | 673,236 | 155,984 |
| d Equipment | | 6,937,667 | 6,799,634 | 138,033 |
| e Other | | 547,369 | 525,981 | 21,388 |
| **Total.** Add lines 1a through 1e *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 315,405 |

**Part VII Investments—Other Securities.** See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| Or | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 12.)* ► | | |

**Part VIII Investments—Program Related.** See Form 990, Part X, line 13.

| (a) Description of investment type | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 13.)* ► | | |

**Part IX Other Assets.** See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 15.)* . . . . . . . . . . . . . . ► | |

**Part X Other Liabilities.** See Form 990, Part X, line 25.

| 1 (a) Description of liability | (b) Book value |
|---|---|
| Federal income taxes | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 25.)* ► | |

2. Fin 48 (ASC 740) Footnote. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return**

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 316,435,041 |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | | | |
| a | Net unrealized gains on investments | 2a | -346,872 | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII ) | 2d | 56,823,977 | | |
| e | Add lines 2a through 2d | | | 2e | 56,477,105 |
| 3 | Subtract line 2e from line 1 | | | 3 | 259,957,936 |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1 | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII ) | 4b | 47,352,671 | | |
| c | Add lines 4a and 4b | | | 4c | 47,352,671 |
| 5 | Total revenue Add lines 3 and 4c. (This must equal Form 990, Part I, line 12 ) | | | 5 | 307,310,607 |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return**

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | 329,658,941 |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII ) | 2d | 66,247,220 | | |
| e | Add lines 2a through 2d | | | 2e | 66,247,220 |
| 3 | Subtract line 2e from line 1 | | | 3 | 263,411,721 |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII ) | 4b | 54,458,101 | | |
| c | Add lines 4a and 4b | | | 4c | 54,458,101 |
| 5 | Total expenses Add lines 3 and 4c. (This must equal Form 990, Part I, line 18 ) | | | 5 | 317,869,822 |

**Part XIII Supplemental Information**

Complete this part to provide the descriptions required for Part II, lines 3, 5, and 9, Part III, lines 1a and 4, Part IV, lines 1b and 2b, Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b Also complete this part to provide any additional information

| Identifier | Return Reference | Explanation |
|---|---|---|
| PART XI, LINE 2D - OTHER ADJUSTMENTS | | REVENUE OF CONSOLIDATED ENTITIES |
| P' I, LINE 4B - OTHER A 'MENTS | | REBATES TO AFFILIATES INCLUDED IN EXPENSES ON 990 TRANSFERS TO/FROM AFFILIATES NET LOSS/GAIN OF SUBSIDIARY |
| PART XII, LINE 2D - OTHER ADJUSTMENTS | | EXPENSES OF CONSOLIDATED ENTITIES LOSS FROM DISCONTINUED OPERATIONS |
| PART XII, LINE 4B - OTHER ADJUSTMENTS | | REBATES TO AFFILIATES |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318066323

SCHEDULE F (Form 990)

Department of the Treasury Internal Revenue Service

# Statement of Activities Outside the United States

► Complete if the organization answered "Yes" to Form 990, Part IV, line 14b, 15, or 16.

► Attach to Form 990. ► See separate instructions.

OMB No 1545-0047

2012

**Open to Public Inspection**

Name of the organization
SERVICE EMPLOYEES INTERNATIONAL UNION

**Employer identification number**
36-0852885

**Part I** **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" to Form 990, Part IV, line 14b.

1 **For grantmakers.** Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . ☐ Yes ☐ No

2 **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of grant funds outside the United States.

3 Activities per Region (The following Part I, line 3 table can be duplicated if additional space is needed )

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in region | (d) Activities conducted in region (by type) (e g , fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in region | (f) Total expenditures for and investments in region |
|---|---|---|---|---|---|
| CENTRAL AMERICA AND THE CARIBBEAN | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 155 |
| EAST ASIA AND THE PACIFIC | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 91,673 |
| EUROPE (INCLUDING ICELAND & GREENLAND) | 0 | 3 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 879,325 |
| MIDDLE EAST AND NORTH AFRICA | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 8,741 |
| NORTH AMERICA | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 8,646,676 |
| SOUTH AMERICA | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 948,480 |
| RUSSIA & THE NEWLY INDEPENDENT STATES | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 485 |
| SOUTH ASIA | 0 | 0 | PROGRAM SERVICE | SUPPORT FOR ORGANIZING AND COLLECTIVE BARGAINING | 13,107 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **3a** Sub-total | 0 | 3 | | | 10,588,642 |
| **b** Total from continuation sheets to Part I | 0 | 0 | | | 0 |
| **c** **Totals** (add lines 3a and 3b) | 0 | 3 | | | 10,588,642 |

For Paperwork Reduction Act Notice, see the Instructions for Form 990. Cat No 50082W Schedule F (Form 990) 2012

**Part II** **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" to Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

1

| (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . ►

3 Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . ►

**Part III** **Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" to Form 990, Part IV, line 16. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of non-cash assistance | (g) Description of non-cash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Part IV** **Foreign Forms**

| | | |
|---|---|---|
| 1 Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* | ☐ Yes | ☑ No |
| 2 the organization have an interest in a foreign trust during the tax year? *If "Yes," the organizationmay be ired to file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign s, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for orms 3520 and 3520-A)* | ☐ Yes | ☑ No |
| 3 Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)* | ☐ Yes | ☑ No |
| 4 Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* | ☐ Yes | ☑ No |
| 5 Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships. (see Instructions for Form 8865)* | ☐ Yes | ☑ No |
| 6 Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to file Form 5713, International Boycott Report (see Instructions for Form 5713).* | ☐ Yes | ☑ No |

**Part V** **Supplemental Information**

Complete this part to provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information (see instructions).

| Identifier | ReturnReference | Explanation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318066323

**Schedule J** (Form 990)

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

► Complete if the organization answered "Yes" to Form 990, Part IV, question 23.

► Attach to Form 990. ► See separate instructions.

OMB No 1545-0047

**2012**

**Open to Public Inspection**

Name of the organization: SERVICE EMPLOYEES INTERNATIONAL UNION

Employer identification number: 36-0852885

**Part I** **Questions Regarding Compensation**

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a Complete Part III to provide any relevant information regarding these items<br>☑ First-class or charter travel ☑ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☑ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e g , maid, chauffeur, chef) | | | |
| **b** | If any of the boxes in line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | 1b | | No |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all officers, directors, trustees, and the CEO/Executive Director, regarding the items checked in line 1a? | 2 | Yes | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director Check all that apply Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☑ Compensation survey or study<br>☑ Form 990 of other organizations ☑ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a with respect to the filing organization or a related organization | | | |
| a | Receive a severance payment or change-of-control payment? | 4a | | No |
| b | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | 4b | | No |
| c | Participate in, or receive payment from, an equity-based compensation arrangement?<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III | 4c | | No |
| | **Only 501(c)(3) and 501(c)(4) organizations only must complete lines 5-9.** | | | |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of | | | |
| a | The organization? | 5a | | |
| b | Any related organization?<br>If "Yes," to line 5a or 5b, describe in Part III | 5b | | |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of | | | |
| a | The organization? | 6a | | |
| b | Any related organization?<br>If "Yes," to line 6a or 6b, describe in Part III | 6b | | |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 5 and 6? If "Yes," describe in Part III | 7 | | |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53 4958-4(a)(3)? If "Yes," describe in Part III | 8 | | |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53 4958-6(c)? | 9 | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat No 50053T **Schedule J (Form 990) 2012**

**Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii) Do not list any individuals that are not listed on Form 990, Part VII

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation reported as deferred in prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| See Additional Data Table | | | | | | | | |

**Part III Supplemental Information**

Complete this part to provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II
Also complete this part for any additional information

| Identifier | Return Reference | Explanation |
|---|---|---|
| | PART I, LINE 1A | IN RECOGNITION OF THE HEAVY TRAVEL SCHEDULE REQUIRED OF FULL-TIME OFFICERS, THEY MAY ELECT TO TRAVEL BY FIRST CLASS AT THEIR DISCRETION HOWEVER, IN SUCH SITUATIONS, UPGRADE COUPONS SHOULD BE USED TO COVER THE ADDITIONAL COST, WHENEVER FEASIBLE HOUSING ALLOWANCES ARE PAID FOR OFFICERS AND KEY EMPLOYEES UPON REVIEW AND PRIOR APPROVAL IN LIEU OF HOTEL STAYS WHEN PLACED ON A TEMPORARY ASSIGNMENT IN A LOCATION OTHER THAN THEIR PRIMARY RESIDENCE |
| | PART I, LINE 1B | THERE IS A WRITTEN POLICY RELATING TO CHARTERED FLIGHTS AND FIRST CLASS AIR TRAVEL THERE ARE NO WRITTEN POLICIES REGARDING THE PAYMENT OF HOUSING ALLOWANCES THE ORGANIZATION IS IN THE PROCESS OF FORMALIZING WRITTEN POLICIES RELATING TO OTHER PAYMENTS THAT ARE LISTED IN 1A) |

Software ID:
Software Version:
EIN: 36-0852885
Name: SERVICE EMPLOYEES INTERNATIONAL UNION

## Form 990, Schedule J, Part II - Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

| (A) Name | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation reported in prior Form 990 or Form 990 EZ |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base Compensation | (ii) Bonus & incentive compensation | (iii) Other compensation | | | | |
| MARY KAY HENRY | (i) | 251,234 | 4,831 | 7,756 | 45,471 | 18,453 | 327,745 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ELISEO MEDINA | (i) | 221,435 | 4,258 | 584 | 40,080 | 18,462 | 284,819 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| MITCHELL ACKERMAN | (i) | 192,400 | 0 | 27,051 | 21,183 | 10,193 | 250,827 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| KIRK ADAMS | (i) | 193,809 | 3,727 | 0 | 35,079 | 18,462 | 251,077 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| MICHAEL FISHMAN | (i) | 93,178 | 3,727 | 79,439 | 16,865 | 13,847 | 207,056 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| GERALD HUDSON | (i) | 193,294 | 3,727 | 8,115 | 35,079 | 18,462 | 258,677 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| EILEEN KIRLIN | (i) | 191,521 | 3,727 | 43 | 35,079 | 18,462 | 248,832 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALARIE LONG | (i) | 174,578 | 3,713 | 14,560 | 31,599 | 15,716 | 240,166 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| THOMAS WOODRUFF | (i) | 193,809 | 3,727 | 8,168 | 35,079 | 10,553 | 251,336 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| THOMAS DE BRUIN | (i) | 141,304 | 5,877 | 4,690 | 26,373 | 18,462 | 196,706 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LESLIE FRANE | (i) | 138,265 | 5,160 | 89 | 25,026 | 10,553 | 179,093 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DENNIS RAFAEL HICKEY RIVERA | (i) | 232,313 | 0 | 0 | 0 | 0 | 232,313 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LUELLA TONI LEWIS | (i) | 135,617 | 3,603 | 7,360 | 14,713 | 18,462 | 179,755 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| BI OYD | (i) | 145,939 | 4,954 | 4,147 | 26,583 | 18,462 | 200,085 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| STEPHEN ABRECHT | (i) | 145,448 | 5,004 | 432 | 26,816 | 18,462 | 196,162 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| JON YOUNGDAHL | (i) | 173,804 | 4,842 | 44 | 31,459 | 18,462 | 228,611 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LORA WOOD | (i) | 153,898 | 5,504 | 30 | 28,270 | 18,462 | 206,164 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SCOTT COURTNEY | (i) | 153,898 | 5,504 | 33 | 28,270 | 18,462 | 206,167 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NORMAN GLEICHMAN | (i) | 158,198 | 4,544 | 0 | 28,634 | 18,462 | 209,838 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| THOMAS CHABOLLA | (i) | 155,286 | 4,004 | 3 | 28,270 | 18,462 | 206,025 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Form 990, Schedule J, Part II - Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

| (A) Name | | (B) Breakdown of W-2 and/or 1099-MISC compensation (i) Base Compensation | (ii) Bonus & incentive compensation | (iii) Other compensation | (C) Deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation reported in prior Form 990 or Form 990-EZ |
|---|---|---|---|---|---|---|---|---|
| JOHN TANNER | (i) | 143,795 | 5,767 | 6,862 | 26,027 | 16,562 | 199,013 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PI COLAVITO | (i) | 150,533 | 3,992 | 0 | 28,151 | 18,462 | 201,138 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| JA. JOHNSTON JR | (i) | 148,569 | 4,140 | 72 | 26,891 | 18,462 | 198,134 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493312006313

**Schedule L** (Form 990 or 990-EZ)

Department of the Treasury Internal Revenue Service

# Transactions with Interested Persons

► Complete if the organization answered "Yes" on Form 990, Part IV, lines 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b.
► Attach to Form 990 or Form 990-EZ. ► See separate instructions.

OMB No 1545-0047

**2012**

**Open to Public Inspection**

Name of the organization: SERVICE EMPLOYEES INTERNATIONAL UNION

Employer identification number: 36-0852885

**Part I** **Excess Benefit Transactions** (section 501(c)(3) and section 501(c)(4) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b

| 1 (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2 Enter the amount of tax incurred by organization managers or disqualified persons during the year under section 4958 . . . ► $

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . ► $

**Part II** **Loans to and/or From Interested Persons.**
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a, or Form 990, Part IV, line 26, or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? To | From | (e) Original principal amount | (f) Balance due | (g) In default? Yes | No | (h) Approved by board or committee? Yes | No | (i) Written agreement? Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Total | | | | ► $ | | | | | | | | |

**Part III** **Grants or Assistance Benefitting Interested Persons.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ. Cat No 50056A Schedule L (Form 990 or 990-EZ) 2012

EXHIBIT

**Part IV** **Business Transactions Involving Interested Persons.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenues? Yes | No |
|---|---|---|---|---|---|
| (1) ATLAS PROJECT | SPOUSE OF EILEEN KIRLIN, AN INTERNATIONAL EXECUTIVE VICE PRESIDENT | 798,496 | CONSULTING ARRANGEMENTSTEVE ROSENTHAL IS THE SPOUSE OF EILEEN KIRLIN, AN INTERNATIONAL EXECUTIVE VICE PRESIDENT MR ROSENTHAL IS 50% OWNER OF THE ATLAS PROJECT, WHICH PROVIDES SEIU WITH CONSULTING SERVICES | | No |
| (2) DENNIS RIVERA | VICE PRESIDENT OF THE INTERNATIONAL UNION THROUGH MAY 30, 2012 | 232,313 | CONSULTING ARRANGEMENTMR RIVERA SERVED AS A VICE PRESIDENT OF THE INTERNATIONAL UNION THROUGH MAY 30, 2012, MR RIVERA PROVIDES CONSULTING SERVICES REGARDING HEALTHCARE REFORM, HEALTHCARE DELIVERY AND WORKFORCE DEVELOPMENT | | No |
| (3) ANNA BURGER | FORMER INTERNATIONAL SECRETARY-TREASURER | 136,342 | CONSULTING ARRANGEMENTSEIU AND ANNA BURGER ENTERED INTO A CONSULTING AGREEMENT BEGINNING AUGUST 2010 AND EXTENDING THROUGH MAY 30, 2012 UNDER THE TERMS OF THE AGREEMENT, MS BURGER WAS ON CALL TO ADVISE THE INTERNATIONAL PRESIDENT OR HER DESIGNEES REGARDING TRANSITION MATTERS AND SPECIAL PROJECTS, INCLUDING ADVICE AND COUNSEL CONCERNING EFFORTS TO PROMOTE ECONOMIC RECOVERY, TO ENHANCE THE STRENGTH AND COMPETITIVENESS OF THE NATION'S ECONOMY, AND TO ESTABLISH STABLE REVENUE STREAMS FOR PUBLICLY-FUNDED JOBS THE AGREEMENT ALSO CALLED UPON MS BURGER TO PROVIDE CONSULTATION ABOUT THE ESTABLISHMENT OF A SOUND FINANCIAL AND BANKING SYSTEM AND JOB CREATION | | No |
| | | | | | |
| | | | | | |

**Part V** **Supplemental Information**
Complete this part to provide additional information for responses to questions on Schedule L (see instructions)

| Identifier | Return Reference | Explanation |
|---|---|---|

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318066323

**SCHEDULE O** (Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

Complete to provide information for responses to specific questions on Form 990 or to provide any additional information.
➤ Attach to Form 990 or 990-EZ.

OMB No 1545-0047

**2012**

**Open to Public Inspection**

Name of the organization
SERVICE EMPLOYEES INTERNATIONAL UNION

Employer identification number
36-0852885

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION A, LINE 6 | SEIU MEMBERS INCLUDE WORKING MEN AND WOMEN WHO ARE EMPLOYED OR ENGAGED IN ANY PHASE OF PRIVATE, NONPROFIT OR PUBLIC EMPLOYMENT, OVER WHICH SEIU CLAIMS OR EXERCISES JURISDICTION MEMBERS HAVE THE RIGHT TO RUN FOR LOCAL UNION OFFICE, INCLUDING GOVERNING BOARDS, AND TO ELECT OFFICERS AND MEMBERS OF THE GOVERNING BOARDS OF THEIR LOCAL UNIONS MEMBERS ALSO HAVE THE RIGHT TO ELECT DELEGATES FROM THEIR LOCAL UNIONS TO REPRESENT THEM AT SEIU'S HIGHEST GOVERNING BODY, THE INTERNATIONAL CONVENTION, AND AT CONVENTIONS OF SEIU INTERMEDIATE BODIES SUCH AS STATE COUNCILS |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION A, LINE 7A | MEMBERS HAVE THE RIGHT TO RUN FOR LOCAL UNION OFFICE, INCLUDING GOVERNING BOARDS, AND TO ELECT OFFICERS AND MEMBERS OF THE GOVERNING BOARDS OF THEIR LOCAL UNIONS MEMBERS ALSO HAVE THE RIGHT TO ELECT DELEGATES FROM THEIR LOCAL UNIONS TO REPRESENT THEM AT SEIU'S HIGHEST GOVERNING BODY, THE INTERNATIONAL CONVENTION, AND AT CONVENTIONS OF SEIU INTERMEDIATE BODIES SUCH AS STATE COUNCILS THROUGH THE ELECTED DELEGATES, MEMBERS ELECT THE OFFICERS AND INTERNATIONAL EXECUTIVE BOARD MEMBERS OF THE INTERNATIONAL UNION |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION A, LINE 7B | THROUGH THE ELECTED DELEGATES, MEMBERS ELECT THE OFFICERS AND INTERNATIONAL EXECUTIVE BOARD MEMBERS OF THE INTERNATIONAL UNION THE INTERNATIONAL EXECUTIVE BOARD IS THE HIGHEST DECISION-MAKING BODY IN SEIU, BETWEEN CONVENTIONS THROUGH THE DELEGATES THEY ELECT TO THE INTERNATIONAL CONVENTION, SEIU MEMBERS ALSO SELECT MEMBERS OF EACH INDUSTRY DIVISION LEADERSHIP BOARD THE DIVISION LEADERSHIP BOARDS ARE THE HIGHEST DECISION-MAKING BODIES WITHIN EACH INDUSTRY DIVISION OF THE INTERNATIONAL UNION IN ADDITION, MEMBERS MAY SERVE ON COMMITTEES AND COMMISSIONS ESTABLISHED AT THE LOCAL UNION LEVEL, THE INTERNATIONAL UNION LEVEL, AND BY INDUSTRY, GEOGRAPHY, CRAFT AND/OR CLASSIFICATION |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION B, LINE 11 | A COPY OF THE FORM 990 WAS PROVIDED TO ALL MEMBERS OF THE SEIU INTERNATIONAL EXECUTIVE BOARD FOR THEIR REVIEW AND COMMENT BEFORE IT WAS FILED THE INTERNATIONAL EXECUTIVE BOARD IS A GOVERNING BODY OF THE SEIU WITH AUTHORITY TO ACT ON BEHALF OF THE UNION IT PRESENTLY CONSISTS OF 75 OFFICERS WHO ARE RESPONSIBLE FOR OVERSEEING THE AFFAIRS AND FINANCIAL OPERATIONS OF THE UNION IN ADDITION TO REVIEW BY THIS GOVERNING BODY, THE FORM 990 IS CAREFULLY SCRUTINIZED BY THE SEIU'S FINANCE DEPARTMENT AND ITS OUTSIDE AUDITORS ALSO, IT IS PREPARED IN CONSULTATION WITH OUTSIDE TAX COUNSEL TO HELP ENSURE THE UNION'S COMPLIANCE WITH ALL TAX REPORTING REQUIREMENTS |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION B, LINE 12C | ALL OFFICERS AND MANAGERS ARE REQUIRED TO COMPLETE AN ANNUAL MANDATORY ETHICS SURVEY WITH QUESTIONS REQUIRING DISCLOSURE OF POTENTIAL CONFLICTS OF INTEREST THE CODE IS SENT TO ALL COVERED EMPLOYEES AND THEY MUST CERTIFY THAT THEY ARE IN COMPLIANCE WITH IT AND UNDERSTAND IT |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION B, LINE 15 | PURSUANT TO ARTICLE XI SECTION 6(C) OF THE SEIU CONSTITUTION, THE INTERNATIONAL EXECUTIVE BOARD (THE "IEB") SETS AND APPROVES THE COMPENSATION OF THE INTERNATIONAL PRESIDENT AND SECRETARY-TREASURER UNDER ARTICLE 1(G) THE PRESIDENT HAS THE AUTHORITY TO FIX THE COMPENSATION FOR EXECUTIVE VICE PRESIDENTS IN 1996, AN IEB COMPENSATION COMMITTEE WAS CREATED TO ESTABLISH THE PAY FOR THESE OFFICERS AT THAT TIME, THE COMPENSATION COMMITTEE CONDUCTED A COMPARABILITY STUDY, REVIEWING THE THEN COMPENSATION AND COMPARABLE COMPENSATION PACKAGES AT SIMILAR ENTITIES IN JUNE 1996, THE IEB APPROVED THE COMPENSATION COMMITTEE'S RECOMMENDATIONS THE SALARIES FOR THE INTERNATIONAL PRESIDENT AND SECRETARY-TREASURER, WHICH WERE THE ONLY EXISTING FULL TIME SEIU OFFICERS AT THE TIME OF THE 1996 COMPARABILITY STUDY, WERE LOWERED FROM PREVIOUS LEVELS AS A RESULT OF THE ADOPTION OF THE COMPENSATION COMMITTEE'S RECOMMENDATIONS SALARIES FOR FULL-TIME OFFICERS HAVE BEEN INCREASED EACH SUBSEQUENT YEAR AS FOLLOWS THE BOARD APPROVED AN ANNUAL INCREASE OF 3% IN 1997, AND 2 5% IN 1998, 1999 AND 2000 IN 2000, THE BOARD DECIDED THAT FUTURE ANNUAL INCREASES WOULD BE THE SAME AS THAT APPROVED FOR SEIU MANAGERS THE ANNUAL INCREASE FOR SEIU MANAGERS IS INCLUDED IN THE ANNUAL BUDGET PRESENTED TO THE BOARD FOR ITS APPROVAL BY THE SECRETARY-TREASURER IN JANUARY ACCORDINGLY, UNDER THE MANAGERIAL SALARY SCHEDULE, THE FULL-TIME OFFICERS WERE GIVEN A 2 75% INCREASE IN 2001 AND 2001, A 3% INCREASE IN 2003, A 2% INCREASE IN 2004, A 4% INCREASE IN 2005, A 3% INCREASE IN 2006, 2007 AND 2008 AND NO INCREASE IN 2009 THE AVERAGE INCREASE FOR MANAGERS IN 2010 WAS 2 68%, ACCORDINGLY THE INCREASE IN SALARY FOR FULL-TIME OFFICERS IN 2010 WAS 2 68% ALL THESE ACTIONS WERE SUBSTANTIATED AND DOCUMENTED CONTEMPORANEOUSLY THERE WERE NO INCREASES IN THE MANAGEMENT OR OFFICERS' SALARY SCALES IN 2011 SEIU MANAGERS AND FULL-TIME OFFICERS WERE GIVEN A 2 5% SALARY INCREASE IN 2012, WHICH WAS SUBSTANTIATED AND DOCUMENTED CONTEMPORANEOUSLY |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION MAKES ITS GOVERNING DOCUMENT, CONSTITUTION AND BY-LAWS AVAILABLE TO THE PUBLIC THROUGH BOTH SEIU'S WEBSITE AND THE DEPARTMENT OF LABOR'S WEBSITE. THE CONFLICT OF INTEREST POLICY AND FINANCIAL STATEMENTS ARE NOT MADE AVAILABLETO THE PUBLIC |

| Identifier | Return Reference | Explanation |
|---|---|---|
| | FORM 990, PART XII, LINE 2C | THE PROCESS HAS NOT CHANGED FROM PRIOR YEAR |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493318066323

SCHEDULE R (Form 990)

Department of the Treasury Internal Revenue Service

# Related Organizations and Unrelated Partnerships

► Complete if the organization answered "Yes" to Form 990, Part IV, line 33, 34, 35, 36, or 37.
► Attach to Form 990. ► See separate instructions.

OMB No 1545-0047

2012

Open to Public Inspection

Name of the organization: SERVICE EMPLOYEES INTERNATIONAL UNION

Employer identification number: 36-0852885

**Part I** **Identification of Disregarded Entities** (Complete if the organization answered "Yes" to Form 990, Part IV, line 33.)

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** **Identification of Related Tax-Exempt Organizations** (Complete if the organization answered "Yes" to Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.)

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| (1) 1800 MASSACHUSETTS AVENUE CORP<br>1800 MASSACHUSETTS AVENUE NW<br>WASHINGTON, DC 20036<br>20-0451177 | HOLDING TITLE TO REAL ESTATE FOR AN EXEMPT ORGANIZATION | DC | 501(C)(2) | | SEIU | | No |
| (2) ARIZONA FAMILIES UNITED FOR STRONG COMMUNITIES<br>1802 EAST THOMAS ROAD<br>PHOENIX, AZ 85016<br>2[illegible] [illegible]40 | IRC 527 POLITICAL ORGANIZATION | AZ | 527 | | SEIU | | No |
| (3) COMMITTEE ON POLITCAL EDUCATION<br>1800 MASSACHUSETTS AVENUE NW<br>WASHINGTON, DC 20036<br>20-0859683 | IRC 527 POLITICAL ORGANIZATION | DC | 527 | | SEIU | | No |
| (4) SEIU EDUCATION AND SUPPORT FUND<br>1800 MASSACHUSETTS AVENUE NW<br>WASHINGTON, DC 20036<br>52-1761037 | PROVIDING EDUCATION INFORMATION ON WORKPLACE SAFETY FOR BROAD PUBLIC | DC | 501(C)(3) | PUBLIC CHARITY | SEIU | | No |
| (5) SEIU OHIO PAC<br>1800 MASSACHUSETTS AVENUE NW<br>WASHINGTON, DC 20036<br>20-2573109 | IRC 527 POLITICAL ORGANIZATION | DC | 527 | | SEIU | | No |
| (6) SEIU POLITICAL EDUCATION AND ACTION FUND<br>1800 MASSACHUSETTS AVENUE NW<br>WASHINGTON, DC 20036<br>52-2263644 | IRC 527 POLITICAL ORGANIZATION | DC | 527 | | SEIU | | No |
| | | | | | | | |

**Part III** **Identification of Related Organizations Taxable as a Partnership** (Complete if the organization answered "Yes" to Form 990, Part IV, line 34 because it had one or more related organizations treated as a partnership during the tax year.)

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V—UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV** **Identification of Related Organizations Taxable as a Corporation or Trust** (Complete if the organization answered "Yes" to Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.)

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512 (b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Schedule R (Form 990) 2012**

**Part V** **Transactions With Related Organizations** (Complete if the organization answered "Yes" to Form 990, Part IV, line 34, 35b, or 36.)

| | | Yes | No |
|---|---|---|---|
| **Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule | | | |
| 1 During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| a Receipt of (i) interest (ii) annuities (iii) royalties or (iv) rent from a controlled entity | 1a | | No |
| b Gift, grant, or capital contribution to related organization(s) | 1b | Yes | |
| c Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| d Loans or loan guarantees to or for related organization(s) | 1d | | No |
| e Loans or loan guarantees by related organization(s) | 1e | | No |
| f Dividends from related organization(s) | 1f | | No |
| g Sale of assets to related organization(s) | 1g | | No |
| h Purchase of assets from related organization(s) | 1h | | No |
| i Exchange of assets with related organization(s) | 1i | | No |
| j Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| k Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| l Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| m Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| n Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | Yes | |
| o Sharing of paid employees with related organization(s) | 1o | | No |
| p Reimbursement paid to related organization(s) for expenses | 1p | | No |
| q Reimbursement paid by related organization(s) for expenses | 1q | | No |
| r Other transfer of cash or property to related organization(s) | 1r | | No |
| s Other transfer of cash or property from related organization(s) | 1s | | No |

2 If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds

| (a) Name of other organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| (1) 1800 MASSACHUSETTS AVENUE INC | B | 7,791,714 | CAPITAL CONTRIBUTION |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Part VI** **Unrelated Organizations Taxable as a Partnership** (Complete if the organization answered "Yes" to Form 990, Part IV, line 37.)
Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization See instructions regarding exclusion for certain investment partnerships

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under section 512-514) | (e) Are all partners section 501(c)(3) organizations? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V—UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Software ID:
Software Version:
EIN: 36-0852885
Name: SERVICE EMPLOYEES INTERNATIONAL UNION

Schedule R (Form 990) 2012 Page 5

**Part VII Supplemental Information**

Complete this part to provide additional information for responses to questions on Schedule R (see instructions)

| Identifier | Return Reference | Explanation | |
|---|---|---|---|

-->

# PLAINTIFFS' EXHIBIT 7

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 8

[redacted]

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

[redacted]

# PLAINTIFFS' EXHIBIT 9

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

# PLAINTIFFS' EXHIBIT 10

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

# PLAINTIFFS' EXHIBIT 11

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 12

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

[redacted]

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

# PLAINTIFFS' EXHIBIT 13

MAGNA
LEGAL SERVICES

MAGNA LEGAL SERVICES

# PLAINTIFFS' EXHIBIT 14

[redacted]

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 15

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 16

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 17

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
Attorneys for Plaintiffs
Care One Management, LLC, et al.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Care One Management, LLC, et al., Plaintiffs, v. 1199 SEIU United Healthcare Workers East, and New England Health Care Employees Union, District 1199, Defendants. | Civil Action No. 2:12-cv-06371<br>Honorable Susan D. Wigenton, U.S.D.J.<br>Honorable Madeline Cox Arleo, U.S.M.J.<br>**INITIAL DEMAND FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS, 1199 SEIU UNITED HEALTHCARE WORKERS EAST AND NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199** |

TO: Robert M. Weinberg, Esq.
Bredhoff & Kaiser, PLLC
805 Fifteenth Street, N.W.
Washington, D.C. 20005

**COUNSEL:**

**PLEASE TAKE NOTICE** that, pursuant to the Federal Rules of Civil Procedure, Defendants 1199 SEIU United Healthcare Workers East ("UHWE") and New England Health Care Employees Union, District 1199 ("NEHCEU") are requested and required to produce all documents set forth in Schedule A annexed hereto which are in their custody, control, or possession or available to them, their counsel, agents, representatives, or associates.

**PLEASE TAKE FURTHER NOTICE** that all requested documents should be produced at the offices of K&L Gates LLP, One Newark Center, Tenth Floor, Newark, New Jersey 07102, within the time prescribed by the Federal Rules of Civil Procedure.

Dated: February 6, 2014

___/s/Rosemary Alito__________
Rosemary Alito, Esq.
K&L Gates LLP
One Newark Center-10th Floor
Newark, NJ 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
Email: rosemary.alito@klgates.com

*Attorneys for Plaintiffs*
Care One Management, LLC, et al.

**SCHEDULE A**
**DEFINITIONS**

1. “This litigation” means this action, including all matters raised in the original complaint by which this action was initiated, the amended complaint dated December 2, 2013 (“Amended Complaint”) and/or in any responsive pleading.

2. “Document” means any written, recorded, printed, typed, taped, graphic, recorded, computerized, electronically stored, or other tangible information of any kind from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither. It includes, but is not limited to, letters; written communications; written applications; memoranda; reports; studies; records; calendar or diary entries; minutes; notes; e-mails; text messages; social media postings; records of meetings, conferences or telephone calls/conferences or any other communications or discussions; recordings; worksheets; films; pictures; diagrams; bulletins; pamphlets; books; printed forms; correspondence; telegrams and cables; contracts; agreements; estimates; analyses; projections; work papers; papers; diaries; data sheets; statements; questionnaires; answers to questionnaires; books of account; calendars; graphs; charges; dust pads; transcripts; ledgers; registers; summaries; digests; financial statements; newspapers, or periodical or magazine material; records of computations; charts; studies; slides; checks; bills; invoices; personal records; photographs; audio or video tape or voice recordings; and all underlying, supporting or preparatory material and drafts thereof. The original and copies or drafts that differ from the original in any manner including because of notations, markings, erasures or other differences are separate documents and must be separately identified.

3. “Plaintiffs” means the entities named as plaintiffs in the Amended Complaint, and all persons who have acted or purported to act on their behalf.

4. "Care One Facilities" means those of the Plaintiffs that are managed by Plaintiff Care One Management, LLC, and all persons who have acted or purported to act on their behalf.

5. "HealthBridge Facilities" means those of the Plaintiffs that are managed by HealthBridge Management, LLC, and all persons who have acted or purported to act on their behalf.

6. "You," "your," "Unions," or "Defendants" means Defendants United Healthcare Workers East, SEIU 1199 and SEIU New England Health Care Employees Union, District 1199, their officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on their behalf, including any intermediary such as any consultant, independent contractor, or other third party representative.

7. "NEHCEU" means Defendant New England Health Care Employees Union, District 1199, its officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on its behalf, including any intermediary such as any consultant, independent contractor or other third party representative.

8. "UHWE" means Defendant United Healthcare Workers East, SEIU 1199, its officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on its behalf, including any intermediary such as any consultant, independent contractor or other third party representative.

9. "SEIU" means the Service Employees International Union, its officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on its behalf, including any intermediary such as any consultant, independent contractor or other third party representative.

10. "Person" means an individual, partnership, individual general and limited partners of a partnership, company, corporation, professional corporation, trust or other entity and any officers, directors, employees or shareholders thereof.

11. The term "including" means including but not limited to.

12. Terms in the plural include the singular and terms in the singular include the plural. "Person" means an individual, partnership, individual general and limited partners of a partnership, company, corporation, professional corporation, trust or other entity and any officers, directors, employees or shareholders thereof.

13. The term "relating to" (including any variant thereof), includes referring to, alluding to, responding to, pertaining to, concerning, connected with, commenting on or in respect of, analyzing, touching upon, constituting and being, and is not limited to contemporaneous events, actions, communications or documents.

14. "And" as well as "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the interrogatory all responses which might otherwise be construed to be outside its scope.

## INSTRUCTIONS

1. Each request for production of documents contemplates production in full, without abbreviation or redaction.

2. If any documents called for in this demand for production are withheld from production, furnish a list of such documents containing a complete description of each document, including:

(a) the date and number of pages of the document;

(b) its title (if any);

(c) its subject matter;

(d) the identity of each attachment or appendices to the document;

(e) the name and identification of each person to whom it is addressed;

(f) the name and identification of each person to whom the document was distributed, shown or explained;

(g) the name and identification of the person or persons by whom it was written;

(h) its present custodian; and

(i) the ground or grounds upon which it is being withheld. If a privilege is asserted as a ground for not producing, or otherwise responding to a production request, describe the factual basis for the claim of privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege.

3. In the event that any document called for by this set of demands has been destroyed or discarded, identify each such document by stating:

(a) any addresser or addressee;

(b) the addresses of any indicated or blind copies;

(c) the date, subject matter, and number of pages of the document;

(d) the identity of any attachments or appendices to the document;

(e) all persons to whom the document was distributed, shown, or explained;

(f) its date of destruction or discard, manner of destruction or discard and reason for destruction or discard; and

(g) the persons authorizing and carrying out such destruction or discard.

4. These requests are deemed continuing. If any document requested comes into the possession, custody or control of Defendants or any person acting on behalf of Defendants after the time specified herein for the production of such document, Defendants should immediately produce such document to the undersigned attorneys for inspection and copying.

5. Unless otherwise expressly stated in writing, failure to produce any item requested herein is a representation that such item does not exist or is not in the possession, custody or control of Defendants or any person acting on their behalf.

**DOCUMENTS DEMANDED**

The following documents are hereby demanded:

1. Any and all documents upon which you intend to rely in defending against Plaintiffs' allegations set forth in the Amended Complaint.

2. Any and all documents relating to the allegations set forth in the Amended Complaint.

3. Any and all documents which you obtained from Plaintiffs or any current or former employee of Plaintiffs that refer or relate in any way to the subject matter of this lawsuit.

4. Any and all documents that you obtained from any source that refer or relate in any way to the subject matter of this lawsuit.

5. Your organizational charts, or any documents referring or relating to Defendants' organizational structure, for the period of 2010 to the present.

6. Any and all versions of the SEIU Contract Campaign Manual, attached to the Amended Complaint as Exhibit A, or any successor document.

7. Any and all documents that refer or relate to the preparation of the current, and all prior or successor versions of the SEIU Contract Campaign Manual, including, but not limited to, drafts, memoranda, reports, recommendations, and e-mails.

8. Any and all documents referring or relating to instructions or guidance issued or provided by any Defendant concerning collective bargaining with any employer, including, but not limited to, negotiating strategies and negotiating tactics.

9. Any and all documents referring or relating to instructions or guidance issued or provided by any Defendant concerning efforts to organize any employees, including, but not limited to, organizing strategies and organizing tactics.

10. Any and all documents referring or relating to instructions or guidance issued or provided by the SEIU concerning collective bargaining with any employer, including, but not limited to, negotiating strategies and negotiating tactics.

11. Any and all documents referring or relating to instructions or guidance issued or provided by the SEIU concerning efforts to organize any employees, including collective bargaining, including, but not limited to, organizing strategies and organizing tactics.

12. Any and all documents referring or relating to instructions or guidance issued or provided by any Defendant concerning collective bargaining with any of the Plaintiffs, including, but not limited to, negotiating strategies and negotiating tactics.

13. Any and all documents referring or relating to instructions or guidance issued or provided by any Defendant concerning efforts to organize employees of any of the Plaintiffs, including, but not limited to, organizing strategies and organizing tactics.

14. Any and all documents referring or relating to instructions or guidance issued or provided by the SEIU concerning collective bargaining with any of the Plaintiffs, including, but not limited to, negotiating strategies and negotiating tactics.

15. Any and all documents referring or relating to instructions or guidance issued or provided by the SEIU concerning efforts to organize employees of any of the Plaintiffs, including collective bargaining, including, but not limited to, organizing strategies and organizing tactics.

16. The most current version of your corporate governance documents, including organizational documents, constitutions, by-laws and amendments.

17. Any and all documents referring or relating to the collective bargaining demands, including drafts, you presented to Plaintiffs from the period of 2009 to the present.

18. Any and all documents referring or relating to the collective bargaining demands, including drafts, you presented to entities other than the Plaintiffs from the period of 2009 to the present.

19. Any and all document referring or relating to any pattern or form collective bargaining demands prepared by or on behalf of either Defendant to submit to any employer, including but not limited to any Plaintiff, from 2009 to the present.

20. Any and all financial records for Defendants, including but not limited to any and all profit and loss statements and accounting statements from 2009 to the present.

21. Any and all filings, annual or otherwise, Defendants are required to disclose to any state or federal government agency, department, office, or bureau, including but not limited to any and all reports filed with the U.S. Department of Labor on behalf of you, or your officers and/or personnel from 2009 to the present.

22. Any and all documents referring or relating to moneys you collected from your members for contribution to the UHWE Pension Plan for the period of 2009 until the date of your response to this demand for production of documents, and supplement up to the date of trial.

23. Any and all documents referring or relating to moneys you collected from your members for contribution to the NEHCEU Pension Plan for the period of 2009 to the present.

24. Any and all documents, including internal memoranda and strategy documents or communications, referring or relating to the underfunded liabilities of the UHWE Pension Plan and/or NEHCEU Pension Plan, including but not limited to any documents or communications referring or relating to any strategy or plan for funding, from 2009 to the present.

25. Any and all documents referring or relating to all payments you made to SEIU from 2009 to the present.

26. Any and all documents, including but not limited to all invoices, receipts or other records, referring or relating to moneys NEHCEU collected from the HealthBridge Facilities and/or their employees for any reason, including but not limited to, union dues, agency fees, per capita taxes, and employer contributions to pension funds. Provide this information from 2009 to the present.

27. Any and all documents referring or relating to all expenditures you made each year to support or oppose political candidates and political issues, including documents identifying the specific political candidate or issue you supported or opposed, from 2009 to the present.

28. Any and all documents referring or relating to the expenditures, including documents identifying the percentage of your annual budget these expenditures represent, you have made relating in any way to any of the Plaintiffs (including but not limited to collective bargaining with any of the Plaintiffs; efforts to organize employees of any of the Plaintiffs; communications with any officer, employee, or agent of any local, state, or federal governmental agency, department, office, or bureau; or any advertisements or publicity relating to any of the Plaintiffs), from 2009 to the present.

29. Any and all documents referring or relating to the expenditures, including documents identifying the percentage of your annual budget these expenditures represent, that you have made relating in any way to employers other than Plaintiffs for purposes of (i) collective bargaining, (ii) efforts to organize employees, (iii) communicating with any officer, employee, or agent of any local, state, or federal governmental agency, department, office, or

bureau, and/or (iv) advertisements or publicity relating to any such employer, from 2009 to the present.

30. Any and all correspondence or other written or otherwise recorded communications between you and any Plaintiff referring or relating in any way collective bargaining with any of the Plaintiffs, efforts to organize employees of any of the Plaintiffs, and/or efforts to induce any Plaintiff to pay money or transfer property of any type to any person, from 2009 to the present.

31. Any and all correspondence or other written or otherwise recorded communications between you and any current or former resident of the Care One Facilities or HealthBridge Facilities or any current or former resident's relative, representative or any person acting on their behalf, from 2009 to the present.

32. Any and all correspondence or other written or otherwise recorded communications between you and the SEIU referring or relating in any way to any of the Plaintiffs, from 2009 to the present.

33. Any and all correspondence or other written or otherwise recorded communications between you and the SEIU referring or relating to (i) collective bargaining with, (ii) efforts to organize employees of, (iii) communications with any officer, employee, or agent of any local, state, or federal governmental agency, department, office, or bureau, relating to, or (iv) advertisements or publicity relating to, any employer other than any Plaintiff, from 2009 to the present.

34. Any and all correspondence or other written or otherwise recorded communications between you and your agents, officers, employee, and/or members, including

but not limited to employee organizers, referring or relating to Plaintiffs, from 2009 to the present.

35. Any and all correspondence or other written or otherwise recorded communications between you and your agents, officers, employees, and/or members, including but not limited to employee organizers, referring or relating to Daniel Straus or any entity or organization he is purportedly associated with, from 2009 to the present.

36. Any and all correspondence or other written or otherwise recorded communications between you and your agents, officers, employees, and/or members, including but not limited to employee organizers, members, including but not limited to employee organizers, referring or relating to referring or relating to (i) collective bargaining with, (ii) efforts to organize employees of, (iii) communications with any officer, employee, or agent of any local, state, or federal governmental agency, department, office, or bureau, relating to, or (iv) advertisements or publicity relating to, any employer other than any Plaintiff, from 2009 to the present.

37. Any and all correspondence or other written or otherwise recorded communications between you and any person or group associated, or purportedly associated, with New York University's graduate, law school, and/or undergraduate programs referring or relating to Plaintiffs or Daniel Straus, from 2009 to the present.

38. Any and all documents referring or relating to any payments, donations or monetary transfers you made to any person or group associated, or purportedly associated, with New York University's graduate, law school and undergraduate programs, from 2009 to the present.

39. Any and all correspondence or other written or otherwise recorded communications between you and any member of the boards of trustees, administration, and/or alumni associated with any of New York University's graduate, law school, and/or undergraduate programs referring or relating to Plaintiffs, from 2009 to the present.

40. Any and all correspondence or other written or otherwise recorded communications relating the condominium development planned by JZS Madison, identified in Paragraph 168 of the Amended Complaint.

41. Any and all correspondence or other written or otherwise recorded communications between you and any officer, employee, or agent of any local, state, or federal governmental agency, department, office, or bureau (including, but not limited to, the U.S. Department of Justice; the U.S. Department of Health and Human Services; the National Labor Relations Board; the State of Connecticut; the Commonwealth of Massachusetts; the State of New Jersey; the State of New York; the legislative branch of any federal, state, or local government; Connecticut Governor Dannell Malloy; Connecticut Attorney General George Jepsen; Connecticut Lieutenant Governor Nancy Wyman; Connecticut Speaker of the House Chris Donovan; U.S. Senator Richard Blumenthal; and U.S. Representative Rosa DeLauro), referring or relating in any way to any of the Plaintiffs, from 2009 to the present.

42. Any and all reports, complaints, petitions or notices you submitted to or filed with any local, state, or federal governmental agency, department, office, or bureau, referring or relating in any way to Plaintiffs and/or Daniel Straus, from 2009 to the present.

43. Any and all correspondence or other written or otherwise recorded communications between you and any third party, other than counsel, referring or relating in any way to Plaintiffs and/or Daniel Straus, from 2009 to the present.

44. Any and all correspondence or other written or otherwise recorded communications between you and any religious organization referring or relating in any way to any of the Plaintiffs, from 2009 to the present.

45. Any and all correspondence or other written or otherwise recorded communications between you and any religious organization referring or relating in any way to any of the Plaintiffs, from 2009 to the present.

46. Any and all correspondence or other written or otherwise recorded communications between you and any media or press outlet, including but not limited to newspapers, national and local cable channel companies, and local radio stations, referring or relating in any way to any of the Plaintiffs, from 2009 to the present.

47. Any and all correspondence or other written or otherwise recorded communications between you and Checkmate Consulting Group, and/or any other person or entity offering marketing, advertising or public relations services, from 2009 to the present.

48. Any and all billing statements Checkmate Consulting Group, and/or any other person or entity offering marketing, advertising or public relations services, issued to you, including but not limited to all invoices and receipts, from 2009 to the present.

49. Any and all correspondence or other written or otherwise recorded communications between you and Gorilla Auto Transport, Inc., and/or any other person or entity offering auto transport services, referring or relating to Plaintiffs, from 2009 to the present.

50. Any and all billing statements from Gorilla Auto Transport, Inc., and/or any other person or entity offering auto transport services, issued to you, including but not limited to all invoices and receipts, from 2009 to the present.

51. Any and all correspondence or other written or otherwise recorded communications between you, or any third party acting, or purportedly acting, on your behalf, and any banking or other financial institution, referring or relating in any way to Plaintiffs or Daniel Straus.

52. Any and all correspondence or other written or otherwise recorded communications between you and UnitedNY.org referring or relating to Plaintiffs or Daniel Straus.

53. Any and all documents referring or relating to the development, authorization, operation, maintenance or contents of the websites CareOne Watch [http://careonewatch.org/] and HealthBridge Watch [http://HealthBridgewatch.org/].

54. All content, including drafts, posted on or linked to your Facebook pages referring or relating to Plaintiffs, from 2009 to the present.

55. All content, including drafts, you and/or your officers, paid or unpaid personnel, members, or any third party acting on your behalf authorized, posted or linked to any website, including but not limited to any news reporting sites or blogs, or social media platform, including but not limited to Facebook, Twitter, Instagram and LinkedIn, referring or relating to Plaintiffs and/or Daniel Straus or any entity or organization associated with Daniel Straus, from 2009 to the present.

56. Any and all communications, including drafts, you, or any third party on your behalf, authorized, published, circulated, or disseminated by any means to any third parties, including but not limited to residents of the Care One Facilities and HealthBridge Facilities and any persons acting on their behalf, referring or relating to Plaintiffs, from 2009 to the present.

57. Any and all communications, including drafts, you, or any third party on your behalf, authorized, published, circulated, or disseminated by any means to any third parties, including but not limited to employees of the Care One Facilities and HealthBridge Facilities and any persons acting on their behalf, referring or relating in any way to Plaintiffs, from 2009 to the present.

58. Any and all communications, including drafts, you, or any third party on your behalf, authorized, published, circulated, or disseminated by any means to any third parties, including but not limited to residents and employees of the Care One Facilities and HealthBridge Facilities and any persons acting on their behalf, referring or relating to Daniel Straus, or any entity or organization associated with Daniel Straus, from 2009 to the present.

59. Any and all documents referring or relating to any allegations or statements you have made to any person or entity relating to the billing practices (including, but not limited to, Medicare or Medicaid billing practices) of any Plaintiff.

60. Any and all documents referring or relating to any allegations or statements you have made to any person or entity relating to the safety of any of the Care One Facilities and/or HealthBridge Facilities.

61. Any and all documents referring or relating to any allegations or statements you have made to any person or entity relating to the quality of care provided by any of the Care One Facilities and/or HealthBridge Facilities.

62. Any and all documents referring or relating to any allegations or statements you have made to any person or entity relating to alleged mistreatment of patients by any of the Care One Facilities and/or HealthBridge Facilities.

63. Any and all documents referring or relating to any allegations or statements you have made to any person or entity relating to the staffing levels of any of the Care One Facilities and/or HealthBridge Facilities.

64. Any and all documents referring or relating to any allegations or statements you have made to any person or entity relating to practices regarding prescription and/or dissemination of drugs to patients at any of the Care One Facilities and/or HealthBridge Facilities.

65. Any all documents referring or relating to any claims you have made that Plaintiffs violated any federal, state, or local law, from 2009 to the present.

66. Any and all internal memoranda, strategy documents, or other documents or communications referring or relating to the development, authorization, preparation and dissemination of communications in any form to any third parties concerning Plaintiffs, from 2009 to the present.

67. Any and all internal memoranda, strategy documents, or other documents or communications referring or relating to Daniel Straus or any person associated, or purportedly associated, with Daniel Straus, including but not limited to New York University, the alumni, administration, and/or boards of trustees for New York University's undergraduate, graduate, and/or law school graduates programs, and JZS Madison, from 2009 to the present.

68. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to the organization and implementation of any protests, gatherings/meetings, marches or any other demonstrations at or around the Care One Facilities, HealthBridge Facilities, and/or any other Plaintiff, including any

documents evidencing travel by you, and/or your officers, personnel, employee organizers, members or any third parties in furtherance of the above.

69. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring to relating to the organization and implementation of any protests, performance art, gatherings/meetings, or any other demonstrations at or around New York University's campus, including any documents relating to travel by you, and/or your officers, personnel, employee organizers, members or any third parties in furtherance of the above.

70. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to the organization and implementation of any protests, gatherings/meetings, marches, performance art or any other demonstrations at or around the Landmark Preservation Committee in New York City, including any documents relating to travel by you, and/or your officers, personnel, employee organizers, members or any person in furtherance of the above.

71. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to the organization and implementation of any protests, marches, performance art or any other demonstrations at any location regarding either Plaintiffs, Daniel Straus or any entity or organization associated with Daniel Straus, including any documents relating to travel by you, and/or your officers, personnel, employee organizers, members or any person in furtherance of the above.

72. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to any petition for ten taxpayer

status in the Commonwealth of Massachusetts, referring or relating in any way to any of the Plaintiffs.

73. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to the application of Plaintiff 341 Jordan Lane Operating Company II, LLC, d/b/a Wethersfield Health Care, to cease operations.

74. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to receivership actions initiated or contemplated against any Plaintiff.

75. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to the strikes at the Danbury Health Care Center, Long Ridge of Stamford, Newington Health Care Center, Westport HealthCare Center, and/or West River Health Care Center, in 2012.

76. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), including internal memoranda and strategy documents or communications, referring or relating to any acts or alleged acts of sabotage, vandalism, or other criminal conduct, at the Newington, Danbury and Stamford facilities, referenced in paragraphs 160-162 of the Amended Complaint.

77. Any and all documents (including but not limited to internal memoranda and strategy documents or communications), referring or relating to any actions you discussed, considered, or took in relation to your members in response to acts or alleged acts of sabotage, vandalism, or other criminal conduct, at the Newington, Danbury and Stamford facilities, referenced in paragraphs 160-162 of the Amended Complaint.

78. Any and all internal memoranda or other documents or communications referring or relating to (i) collective bargaining strategies (ii) efforts to organize employees, (iii) communicating with any officer, employee, or agent of any local, state, or federal governmental agency, department, office, or bureau, and/or (iv) advertisements or publicity relating to any employer other than any Plaintiff, from 2009 to the present.

79. Any and all documents referring or relating to complaints, formal or informal, you have received from, (1) any current or former employee of the Care One Facilities or HealthBridge Facilities, and/or (2) current or former resident of the Care One Facilities or HealthBridge Facilities, or any relative, representative or any person acting on their behalf, regarding actions by you or your officers, personnel, agents, employee organizers or members, from 2009 to the present.

80. Any and all documents referring or relating to complaints, formal or informal, you have received from any source other than those identified in the previous demand, regarding actions by your or your officers, personnel, agents, employee organizers or members, from 2009 to the present.

81. Any and all documents, including internal memoranda and strategy documents or communications, referring or relating to the planning, preparation, organization or implementation of any other activity, event or protest relating to Plaintiffs or Daniel Straus, at any location and directed at any audience, whether or not those activities, events or protests have occurred.

82. Any and all documents reflecting events, discussions, transactions or other communications that refer to, discuss, reflect or constitute your knowledge, approval, ratification

or authorization of the planning, organizing or execution of, or participation in, any of the events described in the Amended Complaint, including all drafts of such documents.

83. Any and all correspondence or other written or otherwise recorded communications to, from, and/or on behalf of Ricky Elliott, relating in any way to any of the Plaintiffs.

84. Any and all correspondence or other written or otherwise recorded communications to, from, and/or behalf of Elizabeth L. Daley of the UHWE, relating in any way to any of the Plaintiffs.

85. Any and all correspondence or other written or otherwise recorded communications to, from, and/or on behalf of David Pickus of the NEHCEU, relating in any way to any of the Plaintiffs.

86. Any and all correspondence or other written or otherwise recorded communications to, from, and/or on behalf of Deborah Chernoff of the NEHCEU, relating in any way to any of the Plaintiffs.

87. Any and all correspondence or other written or otherwise recorded communications to, from, and/or on behalf of Jennifer Smith of the NEHCEU and/or UHWE, relating in any way to any of the Plaintiffs.

88. The complete employment records and/or personnel files of David Pickus, Deborah Chernoff, Jennifer Smith, Elizabeth L. Daley, and any and all organizers and/or union representatives with any responsibilities relating in any way to the HealthBridge Facilities and/or the Care One Facilities.

89. All documents, materials and electronically stored information identified in your Answer to Plaintiffs' First Set of Interrogatories to you.

90. All documents you have received in response to any Freedom of Information Act request relating to Plaintiffs or any entity or organization associated, or purportedly associated, with Daniel Straus.

91. Any and all document preservation and/or destruction policies you have had in place for the period of 2008 through the present.

92. Any and all agreements between you and any internet service provider, including but not limited to cloud service providers, that has hosted, processed, stored, managed, maintained, possessed or held of any of your relevant electronically stored information for the period of 2008 through the present.

# PLAINTIFFS' EXHIBIT 18

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
Attorneys for Plaintiffs
Care One Management, LLC, et al.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Care One Management, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>1199 SEIU United Healthcare Workers East, and New England Health Care Employees Union, District 1199,<br><br>Defendants. | Civil Action No. 2:12-cv-06371<br><br>Honorable Susan D. Wigenton, U.S.D.J.<br>Honorable Michael A. Hammer, U.S.M.J.<br><br>**THIRD SUPPLEMENTAL DEMAND FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS, 1199 SEIU UNITED HEALTHCARE WORKERS EAST AND NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199** |

TO: Kathleen M. Keller, Esq.
Bredhoff & Kaiser, PLLC
805 Fifteenth Street, N.W.
Washington, D.C. 20005

**COUNSEL:**

**PLEASE TAKE NOTICE** that, pursuant to the Federal Rules of Civil Procedure, Defendants 1199 SEIU United Healthcare Workers East ("UHWE") and New England Health Care Employees Union, District 1199 ("NEHCEU") are requested and required to produce all documents set forth in Schedule A annexed hereto which are in their custody, control, or possession or available to them, their counsel, agents, representatives, or associates.

**PLEASE TAKE FURTHER NOTICE** that all requested documents should be produced at the offices of K&L Gates LLP, One Newark Center, Tenth Floor, Newark, New Jersey 07102, within the time prescribed by the Federal Rules of Civil Procedure.

Dated: October 30, 2014

___/s/Rosemary Alito__________
Rosemary Alito, Esq.
K&L Gates LLP
One Newark Center-10th Floor
Newark, NJ 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
Email: rosemary.alito@klgates.com

*Attorneys for Plaintiffs*
Care One Management, LLC, et al.

**SCHEDULE A**

**DEFINITIONS**

1. "This litigation" means this action, including all matters raised in the original complaint by which this action was initiated, the amended complaint dated December 2, 2013 ("Amended Complaint") and/or in any responsive pleading.

2. "Document" means any written, recorded, printed, typed, taped, graphic, recorded, computerized, electronically stored, including Metadata, or other tangible information of any kind from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither. It includes, but is not limited to, letters; written communications; written applications; memoranda; reports; studies; records; calendar or diary entries; minutes; notes; e-mails; text messages; social media postings; records of meetings, conferences or telephone calls/conferences or any other communications or discussions; recordings; worksheets; films; pictures; diagrams; bulletins; pamphlets; books; printed forms; correspondence; telegrams and cables; contracts; agreements; estimates; analyses; projections; work papers; papers; diaries; data sheets; statements; questionnaires; answers to questionnaires; books of account; calendars; graphs; charges; dust pads; transcripts; ledgers; registers; summaries; digests; financial statements; newspapers, or periodical or magazine material; records of computations; charts; studies; slides; checks; bills; invoices; personal records; photographs; audio or video tape or voice recordings; and all underlying, supporting or preparatory material and drafts thereof. The original and copies or drafts that differ from the original in any manner including because of notations, markings, erasures or other differences are separate documents and must be separately identified.

3. "Plaintiffs" means the entities named as plaintiffs in the Amended Complaint, and all persons who have acted or purported to act on their behalf.

4. "You," "Your," "Unions," or "Defendants" means Defendants United Healthcare Workers East, SEIU 1199 and SEIU New England Health Care Employees Union, District 1199, their officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on their behalf, including any intermediary such as any consultant, independent contractor, or other third party representative.

5. "NEHCEU" means Defendant New England Health Care Employees Union, District 1199, its officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on its behalf, including any intermediary such as any consultant, independent contractor or other third party representative.

6. "UHWE" means Defendant United Healthcare Workers East, SEIU 1199, its officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on its behalf, including any intermediary such as any consultant, independent contractor or other third party representative.

7. "SEIU" means the Service Employees International Union, its officers, directors, employees, agents, attorneys and representatives, and any persons acting, or purportedly acting, on its behalf, including any intermediary such as any consultant, independent contractor or other third party representative.

8. "Person" means an individual, partnership, individual general and limited partners of a partnership, company, corporation, professional corporation, trust or other entity and any officers, directors, employees or shareholders thereof.

9. The term "including" means including but not limited to.

10. Terms in the plural include the singular and terms in the singular include the plural. "Person" means an individual, partnership, individual general and limited partners of a partnership, company, corporation, professional corporation, trust or other entity and any officers, directors, employees or shareholders thereof.

11. The term "relating to" (including any variant thereof), includes referring to, alluding to, responding to, pertaining to, concerning, connected with, commenting on or in respect of, analyzing, touching upon, constituting and being, and is not limited to contemporaneous events, actions, communications or documents.

12. "And" as well as "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the interrogatory all responses which might otherwise be construed to be outside its scope.

## INSTRUCTIONS

1. Each request for production of documents contemplates production in full, without abbreviation or redaction.

2. If any documents called for in this demand for production are withheld from production, furnish a list of such documents containing a complete description of each document, including:

(a) the date and number of pages of the document;

(b) its title (if any);

(c) its subject matter;

(d) the identity of each attachment or appendices to the document;

(e) the name and identification of each person to whom it is addressed;

(f) the name and identification of each person to whom the document was distributed, shown or explained;

(g) the name and identification of the person or persons by whom it was written;

(h) its present custodian; and

(i) the ground or grounds upon which it is being withheld. If a privilege is asserted as a ground for not producing, or otherwise responding to a production request, describe the factual basis for the claim of privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege.

3. In the event that any document called for by this set of demands has been destroyed or discarded, identify each such document by stating:

(a) any addresser or addressee;

(b) the addresses of any indicated or blind copies;

(c) the date, subject matter, and number of pages of the document;

(d) the identity of any attachments or appendices to the document;

(e) all persons to whom the document was distributed, shown, or explained;

(f) its date of destruction or discard, manner of destruction or discard and reason for destruction or discard; and

(g) the persons authorizing and carrying out such destruction or discard.

4. These requests are deemed continuing. If any document requested comes into the possession, custody or control of Defendants or any person acting on behalf of Defendants after the time specified herein for the production of such document, Defendants should immediately produce such document to the undersigned attorneys for inspection and copying.

5. Unless otherwise expressly stated in writing, failure to produce any item requested herein is a representation that such item does not exist or is not in the possession, custody or control of Defendants or any person acting on their behalf.

**DOCUMENTS DEMANDED**

The following documents are hereby demanded:

1. The complete employment records and/or personnel files of Chris Wishart, Joel Brooks, Ancy Destin, Liz Goggin, Jesse Martin, and Jean Venette, and any and all organizers and/or union representatives with any responsibilities relating in any way to any of the Plaintiffs.

# PLAINTIFFS' EXHIBIT 19

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 20

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 21

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 22

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 23

[redacted]

# PLAINTIFFS' EXHIBIT 24

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARE ONE MANAGEMENT, LLC, et al., Plaintiffs, vs. UNITED HEALTHCARE WORKERS EAST, SEIU 1199, et al., Defendants. | Case No. 12-cv-06371<br>Newark, New Jersey<br>December 3, 2014 |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:

GEORGE PETER BARBATSULY, ESQ.
K&L Gates LLP
One Newark Center
Tenth Floor
Newark, NJ 07102-5252
973-848-4104
Email: George.barbatsuly@klgates.com

ROSEMARY ALITO, ESQ.
K&L Gates LLP
One Newark Center
Tenth Floor
Newark, NJ 07102
973-848-4000
Email: Rosemary.alito@klgates.com

MARGARET T. KORGUL, ESQ.
K&L Gates LLP
One Newark Center
Tenth Floor
Newark, NJ 07102
973-848-4000

about traditional labor activity. But I do take issue with that, because in my mind there could be nothing more traditional than using the First Amendment, using the right to petition the government and the right to speak out publicly about wrongs in order to put pressure on a union-busting employer.

THE COURT: Okay. Fair enough.

But how does discovery as to the NLC get you there? In other words, if you what you want to argue essentially is, assume there is this sort of justification defense -- obviously, you're going to -- from what I see in the papers, you're going to take significant issue factually with a number of the allegations, so -- so I get that.

But you're also going to -- if you're going to argue essentially that if we used the corporate campaign at all, it was because we had no other recourse, we tried to engage in the NLRA organizing process, and the plaintiffs thwarted us at every turn, and here -- here are illustrations of how they thwarted us at every turn.

Even if that's true, don't you -- why is this discovery even relevant, much less necessary when it's clear from your own brief, you've got a long list of NLRB litigation background on which to draw -- both sides do -- you've got fact witnesses who were actually there when Peraino said whatever he allegedly said, when Frank said what

he said, by -- for example, in claiming -- here's a concrete example. So if one of your arguments is -- as you point out in the brief is -- is to this day, Judge, the plaintiffs still refuse to engage in collective bargaining negotiating with us. How does Peraino or the NLC help you with that? Either that did happen or that didn't happen.

MS. KELLER: It's -- it's part of the picture here in that the plaintiffs engaged this consultancy. It's our view that they engaged this organization that Mr. Peraino runs in order to sort of offload some of the -- the dirty work of keeping their organization union-free to this individual --

THE COURT: Well, what dirty work?

MS. KELLER: The intimidation of the employees, the misinformation -- provision of misinformation to the employees regarding both --

THE COURT: How do you know that?

MS. KELLER: -- our clients -- well, we -- we have -- we've attached to the briefs some of the flyers that were handed out --

THE COURT: Okay.

MS. KELLER: -- that make statements that we believe are demonstrably false regarding our union. And we do not know -- there's additional information that we don't know about, well, what his basis was, if he was the author of

# PLAINTIFFS' EXHIBIT 25

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 26

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 27

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

# PLAINTIFFS' EXHIBIT 28

[redacted]

[redacted]

# PLAINTIFFS' EXHIBIT 29

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

MAGNA
LEGAL SERVICES

# PLAINTIFFS' EXHIBIT 30

# Welcome to the Straus Institute for Worker Injustice

**Today, we're renaming the Straus Institute for the Advanced Study of Law and Justice to more aptly reflect the values of its founder, Daniel Straus.** Daniel, along with his brother Moshael Straus, runs the multi-million dollar nursing home chains, Care One and HealthBridge. His companies have violated workers' rights and Federal Labor Law.

It's great that Daniel Straus endowed an institute affiliated with NYU Law School dedicated to studying law and justice. But Care One and HealthBridge have broken the law and stripped workers of justice.



- The National Labor Relations Board, a Federal Government Agency, issued a complaint against Care One and HealthBridge in Connecticut for firing housekeepers and rehiring them as "new employees" at lower wages.
- In New Jersey, Care One illegally terminated workers after they voted to form a union. The NLRB issued a complaint and is seeking an injunction in Federal Court to reinstate the workers.
- Care One and HealthBridge are threatening to lock Connecticut workers out of their jobs at six nursing homes, and are attempting to slash safe staffing ratios, wages and benefits.

**This institute will be called the Straus Institute for Worker Injustice until the Straus brothers uphold law and justice.**

## Call Daniel Straus at (201) 242-4900, ext. 5700

**and tell him to show his dedication to law and justice by respecting labor law and supporting justice for nursing home caregivers. For more information, email info@careonewatch.org**

1199SEIU United Healthcare Workers East

1199NE Connecticut Rhode Island | SEIU Healthcare. United for Quality Care

United .org

# HealthBridge 1199ers Take Our Fight for Justice to NYC

## With our NJ Sisters and Brothers, We Expose Management's Hypocrisy




CT and NJ 1199ers at the Arch in Washington Square Park, exposing HealthBridge/Care One hypocrisy to the world

On Thursday, Sept 8th we travelled to New York City, to the NYU law school in Greenwich Village along with our sisters and brothers, 1199 members from New Jersey.

Why? Because Daniel Straus—the guy who owns six union nursing homes in CT and many in NJ (along with dozens of other facilities around the country) gave millions of dollars to establish an Institute for the Advanced Study of Law & Justice at NYU Law School.



Cheering for workers, jeering for HealthBridge



While "Daniel Straus" (played by actor in shiny pants) explains why "Greed is Good," the public gets the word about how HealthBridge broke the law, exploits workers and destroys standards

Law and Justice?! We made it clear—the way they treat hard working caregivers, we renamed it the Straus Institute for Worker INJUSTICE!

We also distributed leaflets to passing NYU students, tourists and neighbors to alert them to the hypocrisy of claiming to support "Law and Justice," while breaking labor law and trying to gut our contracts, fire our co-workers, and destroy our staffing standards.



[illegible] — fight HealthBridge injustice!

**We're not going to let HealthBridge beat us at the table, with the Labor Board, or anywhere else. We're taking this fight to them, wherever they are.** Stay tuned for more exciting opportunities to stand up for ourselves, our residents, our contracts and *real* Justice!



1199 is on the Move!

HEALTHBRIDGE HERALD

*1199's Eye on the HealthBridge/Care One Corporation*

# *Caregivers, NYU Students and Performers Conduct Mock Opening Ceremony for 'Straus Institute for Worker Injustice'*

(New York, NY) -- On Thursday, September 8th at 11am, NYU students, nursing home caregivers and street theater performers conducted a mock opening ceremony for the newly renamed 'Straus Institute for Worker Injustice' to humorously draw attention to the exploitative practices of the Care One and HealthBridge nursing home chains. The ceremony took place in front of the Straus Institute for the Advanced Study of Law and Justice, which is affiliated with NYU Law School and endowed by Daniel Straus. Straus runs nursing homes throughout the East Coast, some of which have been involved in recent Federal Unfair Labor Practice Complaints issued by the National Labor Relations Board, including for unlawfully firing caregivers and bad-faith bargaining in negotiations.

Performers dressed in colorful suits led the satirical ceremony in front of the Institute with a large hand-drawn banner that read, "Welcome to the Straus Institute for Worker Injustice." One performer played the role of Daniel Straus, mock founder of the 'Straus Institute for Worker Injustice', while others played fellows with satirical research proposals. One performer proposed to do a project on how to get workers to work for longer hours with less pay. "Free no-doze and Red Bull for everyone," she said. Another suggested cutting staffing ratios because, "what nursing resident needs more than 30 seconds of care in a day?" She explained how to best fire workers without getting in trouble—"You just hire them back at lower wages!"

The ceremony was satirical but drew largely from real occurrences in the nursing homes, such as unlawful firings and proposed cuts in staffing ratios at certain facilities.

"My coworkers and I know the difference between justice and injustice," said Eva Fai, Dietary Worker at Newington Health Care Center in Connecticut. "Justice is treating workers and patients fairly and with dignity. Injustice is firing workers then rehiring them as "new employees" with lower wages and no benefits. Injustice is making healthcare for healthcare givers unaffordable. Injustice is what HealthBridge practices every day."

Workers, including unlawfully fired caregivers from Somerset Nursing & Rehabilitation Center, traveled from both Connecticut and New Jersey to attend the mock ceremony.

"I was fired after eleven years on the job last February. After we had our union election, management retaliated against us and fired nurses, CNA's and housekeepers," said Jillian Jacques, a Licensed Practical Nurse at Care One's Somerset facility in Bound Brook, New Jersey. "We've been through a lot this year. I haven't had any insurance since last February, and I pray I don't get sick. It's just awful what they are doing, it's just greed and injustice. All we're looking for is a little fairness."

Straus Institute founder Daniel Straus runs the Care One and HealthBridge nursing home chains in Connecticut, Massachusetts, New Jersey and other states. According to the most recent data available, Care One-run facilities in CT and MA generated a net income of over $13.6 million in 2010. Care One-run facilities in NJ generated a net income of more than $23.3 million in 2009. In addition, HealthBridge Management, a company 100% owned by Care One that manages facilities in all three states, generated a net income of more than $11.4 million in 2010.

Workers at Care One's Somerset nursing home facility in Bound Brook, New Jersey voted to form a union on September 2nd, 2010 but Care One refused to accept the outcome of the election. Instead, they illegally fired and disciplined workers for their union support and filed objections to the election victory with the National Labor Relations Board. The Board issued a complaint alleging unlawful disciplines, discharges and interrogations of workers for their union support, and filed for injunctive relief seeking the illegally terminated workers to be returned to their jobs. 1199SEIU was certified by the Board last week as the collective bargaining representative for the Somerset workers but Care One has yet to recognize the union. Throughout the campaign and proceedings to challenge the union's victory, instead of focusing on caring for nursing home residents, Care One wasted resources fighting its own employees and taking caregivers from the residents' bedsides.

In Connecticut, the Regional Director of the National Labor Relations Board issued an 18-page federal Complaint and Notice of Hearing against HealthBridge and Care One, and each of six nursing homes, detailing multiple charges of "interfering with, restraining and coercing employees in the exercise of their rights" under the provisions of the National Labor Relations Act and "failing and refusing to bargain ... in good faith" with **District 1199.** The Complaint focuses on HealthBridge's discharge of dozens of housekeepers, who were then rehired at lower rates of pay and without their seniority and earned benefits. HealthBridge has threatened to lock caregivers out of their jobs at the six nursing home facilities where they are represented by District 1199-New England Healthcare Employees Union-SEIU, and has proposed to slash safe staffing ratios along with wages and benefits.

The ceremony today was endorsed by ***The New England Health Care Employees Union, District 1199, SEIU, 1199SEIU United Healthcare Workers East, UnitedNY and NYU Law Students for Economic Justice.***

*The New England Health Care Employees Union, District 1199, SEIU represents 22,000 professional and paraprofessional health care workers in Connecticut and Rhode Island in both public and private sector hospitals, clinics, non-profit agencies, skilled nursing homes and other health care settings, including 7,000 nursing, nursing assistants, dietary, laundry, housekeeping and other support staff in long-term care facilities.*

*With 350,000 members in New York, New Jersey, Massachusetts, Maryland, Florida and Washington D.C., 1199SEIU is the largest and fastest growing healthcare union in the country. Our mission is to achieve affordable, high quality healthcare for all.*

# PROCLAMATION OF SHERIFF 99%

# WANTED

## FOR CORPORATE GREED & ROBBING WORKERS OF THEIR RIGHTS




## NYU LAW SCHOOL TRUSTEE & "CORPORATE OUTLAW" DANIEL STRAUS

This "Wanted" sign is satirical but violations of workers' rights are not.

Today, we are demonstrating against "corporate outlaw" and NYU Law School trustee Daniel Straus. Daniel, along with his brother Moshael Straus, runs the hugely profitable Care One and HealthBridge nursing home companies. One nursing home in the chain locked out 100 caregivers in Connecticut just before the holidays. At another facility in New Jersey, Care One unlawfully fired caregivers for engaging in legally protected union activities. An administrative law judge for the National Labor Relations Board determined that Care One violated labor law and called on the company to reinstate the workers. However, these caregivers remain off the job. Daniel Straus endowed the Straus Institute for the Advanced Study of Law and Justice at NYU Law School with annual gifts of $1.25 million. But Mr. Straus' companies also need to follow the law.

**Demand that Care One and Healthbridge stop robbing workers of their rights!**
**Call Daniel Straus at (201) 242-4900, Ext.5700**

**Visit CareOneWatch.org for more information**

[redacted]

# PLAINTIFFS' EXHIBIT 31

[redacted]

[redacted]