UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARE ONE MANAGEMENT, LLC, et al.,

                Plaintiffs,

       v.

UNITED HEALTHCARE WORKERS EAST,
SEIU 1199, et al.,

                Defendants.

Civil Action No. 12-6371(SDW)

**CLERK'S OPINION
GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION
TO TAX COSTS**

      This matter has come before the Clerk on the motion [Dkt. Entry 440] of Defendants

1199SEIU United Healthcare Workers East ("UHWE"), New England Health Care Employees

Union, District 1199 ("NEHCEU"), and Service Employees International Union ("SEIU")

(collectively, "Defendants") to tax costs against Plaintiffs Care One Management, LLC,

HealthBridge Management, LLC, Care One, LLC and Care Realty, LLC (collectively,

"Plaintiffs" or "Care One") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil

Rule 54.1.

      The Clerk assumes familiarity with the factual and procedural histories of this case,

which can be gleaned from the Court's opinion addressing the parties' summary judgment

motions.  [Dkt. Entry 437].  A very terse background is given.

      Plaintiffs manage nursing homes and assisted living facilities for the elderly in

Connecticut, Massachusetts and New Jersey.  Defendants are labor unions whose members

provide care at Plaintiffs' facilities, with UHWE and NEHCEU being local affiliates of SEIU,

an international union.  As framed by the Court, "the core of the instant dispute [was] whether

Defendants [have] permissibly pursued collective bargaining and unionization by means of

'robust and often hard-charging speech and advocacy critical of the business and labor practices of Care One and its owner/CEO Daniel Straus ("Straus"),' or instead, [have] impermissibly engaged in a 'campaign of intimidation, interference, threats, deceptive trade practices, abuse of process, vandalism, and other illegal and extortionate conduct,' that violate[d] federal and state law."  (citations omitted) [Dkt. Entry 437 at 2-3].

While Plaintiffs originally filed suit on October 10, 2012 [Dkt. Entry 1], the operative pleading was the Second Amended Complaint [Dkt. Entry 242], filed on June 16, 2015, alleging federal and state law counts of:  violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, (Counts One – Six), defamation (Count Seven) and trade libel (Count Eight).

On July 6, 2015, Defendants filed a motion to dismiss [Dkt. Entry 244], and the Court denied that motion on December 10, 2015 [Dkt. Entry 269].

By order of February 23, 2016 [Dkt. Entry 291], the Court appointed one of our former distinguished judges, Joel A. Pisano, Esq., as a Special Discovery Master ("SDM") to address the parties' contentious disputes regarding voluminous discovery.  Relevant to this motion, that order was amended on February 26, 2016 [Dkt. Entry 296], and after considering briefing on the taxation of a special master's fees, the Court provided therein that "[a]t the conclusion of this action, any party may seek taxation of the Special Master's fees as costs under Fed. R. Civ. P. 54(d). The Court takes no position at this time on the merits of any such application."  Id. at ¶7 (footnote omitted).

Thereafter, the parties engaged in broad discovery and were granted numerous extensions, resulting in several amendments of the Court's scheduling orders.

On March 15, 2019, both sides filed motions for summary judgment [Dkt. Entries 398-406] and the case was terminated on October 28, 2019, when the Court adjudicated those motions in Defendants' favor.  [Dkt. Entries 437, 438].  It denied Plaintiffs' motion, granted Defendants' motion on the RICO claims (Counts One – Six), and dismissed without prejudice the remaining state law claims for defamation and trade libel (Counts Seven and Eight), in declining to exercise supplemental jurisdiction.

Plaintiffs appealed from that order, filing their notice of appeal with the Third Circuit Court of Appeals on November 20, 2019.  [Dkt. Entry 439].

Within 30 days of the entry of the Court's summary judgment order, on November 27, 2019, Defendants filed the motion to tax costs now before the Clerk.  As set forth in their bill of costs, AO 133 form [Dkt. Entry 440-1], they seek $333,706.82 in costs, which cover:  service of subpoenas ($8,135.00); printed hearing transcripts ($459.80) and deposition transcripts, both printed and videotaped ($162,657.02); witness fees ($1,160.00); costs of making copies ($47,031.17); and the court-appointed SDM ($114,263.83).

In opposition, Plaintiffs initially argue that the decision on this motion should be stayed due to the pending appeal before the Third Circuit, and barring that, that the execution of the judgment should be stayed.  Alternatively, they oppose all categories of requested costs, except for those of the hearing transcripts, and argue that costs should be taxed in the maximum amount of $101,445.87.  Pls.' Opp. [Dkt. Entry 444].  The Clerk has taken into consideration that opposition, as well as Defendants' reply thereto.  [Dkt. Entry 446].

## I.    Legal Standards

Defendants make this application pursuant to Fed. R. Civ. P. 54(d) (1), which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs --- other

-3-

than attorney's fees---should be allowed to the prevailing party."  A prevailing party is "one

in whose favor a judgment is rendered." Garonzik v. Whitman Diner, 910 F. Supp. 167, 168

(D.N.J.1995).

There is a strong presumption in favor of awarding costs to the prevailing party.  Reger

v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010).  However, absent express statutory

authorization or a court order to the contrary, the Clerk may reimburse only the following types

of costs enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained
>     for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials
>     where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and
>     salaries, fees, expenses, and costs of special interpretation services under
>     section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).  Due to this constraint,

a prevailing party's costs "often fall well short of the party's actual litigation expenses."

In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 458 (3d Cir. 2000).

More recently, the Supreme Court reiterated that § 1920 taxable costs are "limited to

relatively minor, incidental expenses," and are "narrow in scope."  Taniguchi v. Kan Pacific

Saipan, Ltd., 566 U.S. 560, 573 (2012) (limiting § 1920 (6) "compensation of interpreters" to

oral translation costs, to the exclusion of document translation costs).

Despite the presumption in its favor, the prevailing party must provide sufficient

information to carry its burden of showing that the sought-after costs fall within the limits

of § 1920.  Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-02 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by L. Civ. R. 54.1, our local court rule which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920. Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2020 ed.) at 303.

Defendants are undoubtedly the prevailing parties because this Court granted final judgment in their favor, and as such, they enjoy the "venerable presumption that prevailing parties are entitled to costs," Marx v. Gen. Revenue Corp., 568 U.S. 371, 377 (2013).

Furthermore, Defendants have satisfied the requirements in L. Civ. R. 54.1 and 28 U.S.C. § 1924 of timeliness and verification: this motion was filed within the 30-day time frame set by L. Civ. R. 54.1(a); includes a notice of motion [Dkt. Entry 440]; through her signature of the AO 133 form declaration [Dkt. Entry 440-1], as well as through her Declaration ("Kekacs Decl.") [Dkt. Entry 440-2 ¶ 15], Defendants' counsel, Caitlin Kekacs, Esq., has verified that the costs are correct and were necessarily incurred in this action, and that the services for which the fees have been charged were actually and necessarily performed; and supporting invoices have been supplied, id. at Exs. C-G.

The Clerk has also considered the parties' excellent, thorough briefing - Plaintiffs' Brief in Opposition ("Pls.' Br.") and accompanying Declaration of Rosemary Alito, Esq. ("Alito Decl."), with Exhibits 1-12 [Dkt. Entries 444, 445], as well as Defendants' Reply ("Defs.' Reply") [Dkt. Entry 446].

Before examining the specific costs, the Clerk addresses Plaintiffs' arguments in favor of staying this decision, or alternatively, the execution of any costs judgment, pending appeal.

## II.  Stay of Costs Decision or Alternatively, of Execution of Judgment

Plaintiffs argue that in "the interests of judicial economy," "the Court" should defer

deciding Defendants' bill of cost until after the Third Circuit has ruled on the pending appeal because this application will be rendered moot should the appellate court reverse this Court's decision on the merits.  Pls.' Br. at 5-7.

However, our local rule envisions a costs determination by the Clerk during the pendency of an appeal.  Local Civil Rule 54.1(a) provides for the filing of the bill of costs "[w]ithin 30 days after the entry of a judgment allowing costs, . . . whether or not an appeal has been filed."

Nonetheless, requests for a stay, such as this, are commonplace and the courts have handled them in various ways.  Some have used a four-factor analysis to determine the propriety of a stay, others have required the posting of a supersedeas bond under Fed. R. Civ. P. 62(d) upon the granting of a stay, and still others have found that an economy of resources may be had by denying a stay because an appeal of the costs decision may be decided together with the appeal on the merits.  And, indeed, this Court has also administratively terminated taxation motions without prejudice to renewal post-appeal.  See, e.g., Arena v. Riversource Life Ins. Co., Civ. No. 16-5063 [Dkt. Entry 83].

A distinction must also be made between deferring the issuance of a costs decision and deferring the execution of a costs judgment, the latter having also been proposed by Plaintiffs as an alternative course of action.  Pls.' Br. at 7-8.  They cite a recent decision wherein, on an appeal of the Clerk's taxation order, our Court issued a ruling granting costs to the prevailing party, despite the pendency of an appeal to the circuit court, but staying the execution of its cost judgment until such time as the pending appeal had been decided.  Druding v. Care Alternatives, Civ. No. 08-2126, 2019 WL 5957403, at *3 (D.N.J. Nov. 13, 2019).

In reply, Defendants argue that the Court should decide the costs application now to avoid piecemeal appeals and further, that Plaintiffs have not offered a bond, as is required

under Fed. R. Civ P. 62(b), to stay the execution of a money judgment. Defs.' Reply at 1-2.

Interestingly, both sides address what "the Court" should do. However, this issue is not now before the Court, but the Clerk, who does not have the authority to address equitable matters, such as the issuance of a stay. The Clerk is well-aware of the limitations of his taxation role, described by the Third Circuit as "essentially ministerial." In re Paoli, 221 F.3d at 461-62 (explaining that the Clerk "acknowledged in his written order that he lacked the discretion to consider certain equities in taxing cost against the [losing party] Plaintiffs" and that "[t]he Plaintiffs would therefore have had no reason then to submit evidence supporting their equitable arguments . . . until they sought review by the District Court"). See also, Taniguchi, 566 U.S. at 573 (describing the assessment of costs by the clerk as "merely a clerical matter").

Accordingly, the Clerk declines Plaintiffs' request to stay the costs decision and the execution of the costs judgment, and instead, addresses the taxability of the sought-after costs, in the order in which they appear in § 1920.

### III.   Fees of the Marshal, § 1920 (1)

Defendants seek $8,135.00 in fees for the service and attempted service of deposition subpoenas on 32 witnesses, as § 1920 (1) fees of the marshal. Kekacs Decl. ¶¶ 17-27, Ex. C. All service was made by private process server, Capitol Process Services, Inc. ("Capitol"), located in Washington, D.C. Except for a few services made locally in Washington, D.C. at $65 each, and in Alexandria, Virginia at $80 each, Capitol charged $150 for each of the remaining out-of-state services and an additional $10 when a witness fee check was issued. Defendants have explained in detail why more than one attempt was necessary to serve certain witnesses, why one particular witness was served twice, and why they ordered the service of 11 witnesses who were not ultimately deposed. Id. ¶¶ 20-26.

Plaintiffs do not take issue with the taxation of the fees of a private process server, long held to be taxable in this District as fees of the marshal.  Ricoh Corp. v. Pitney Bowes Inc., Civ. No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. Nos. 93-260, 94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996). Nor do Plaintiffs object to the amounts charged by Capitol.  They do, however, contest the $1,440 cost of service on nine witnesses who ultimately signed a declaration in lieu of deposition, and the $1,090 cost of service on four witnesses whose depositions were not used in connection with the summary judgment motions.  Pls.' Br. at 19; Alito Decl., Ex. 4.

Plaintiffs' argument is this: "where, as here, the case has been decided on summary judgment, deposition costs are taxable only when the depositions [were] used in deciding the summary judgment motions." Pls.' Br. at 19.  Plaintiffs' statement is simply not true.  As will be discussed later in connection with the deposition transcripts, it is widely-held that for their costs to be taxable, the depositions need only to have "'appear[ed] reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'"  See, e.g., Thabault v. Chait, Civ. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)).

The Clerk will not deny these service costs on the ground asserted by Plaintiffs, which is based upon hindsight.  Defendants have noted that in this District, the costs of witnesses who never testified have been taxed when there was a good faith expectation that the witnesses would be called.  Avaya Inc. v. Telecom Labs, Inc., Civ. No. 06-2490, 2016 WL 10590071, at *48 (D.N.J. Sept. 15, 2016) (special master's recommendation on attorney's fees and taxable

-8-

costs).  A sister court within the Third Circuit has also used the same, above-mentioned standard as is used in taxing deposition transcripts, i.e., "whether the issuance of the subpoena was reasonable and necessary in light of the facts known at the time of service."  <u>Montgomery Cnty. v. Microvote Corp.</u>, Civ. No. 97-6331, 2004 WL 1087196, at *4 (E.D. Pa. May 13, 2004). Defendants' counsel has explained that "Defendants had a good faith expectation at the time the subpoenas were served that, given the complexity of the factual allegations at issue in this case, it would be necessary to take the witnesses' depositions in order to prevail at summary judgment or prepare for trial."  Kekacs Decl. ¶ 27.

Based upon the foregoing, pursuant to § 1920 (1), the Clerk taxes service fees in the requested amount of **$8,135.00**.

### IV.   <u>Costs of Printed and Videotaped Transcripts, § 1920 (2)</u>

As an indication of the complexity of this case, Defendants seek the cost of 91 deposition transcripts, including some related videotaping charges.  In addition to that $162,657.02 cost, they also request the $459.08 cost of printed hearing transcripts.  These are sought pursuant to subsection (2) of § 1920, which allows for the "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."

*Hearing Transcripts*

In this category, the costs of just two transcripts are sought:  the May 22, 2015 hearing on Plaintiffs' motion to amend the Amended Complaint [Dkt. Entry 235] ($193.60); and the May 24, 2019 hearing on Defendants' motion to strike Plaintiffs' enterprise value damages theory [Dkt. Entry 419] ($266.20).

As Defendants observe, our local rule allows for the costs of a reporter's transcript "when it is of a statement by the Judge to be reduced to a formal order."  L. Civ. R. 54.1(g)(6).

-9-

The Order on the May 22, 2015 hearing [Dkt. Entry 235] indicates, "for the reasons set forth in an oral opinion delivered on the record on May 22, 2015" and similarly, the Order on the May 24, 2019 hearing [Dkt. Entry 419] states, "for the reasons set forth in an Oral Opinion read on the record on May 24, 2019." Both Orders provide the name and telephone number of the transcription service to facilitate counsel's procurement of the transcripts, as the Court did not issue written opinions and the parties were not present at the reading of the oral opinions. Kekacs Decl. ¶ 31.

Plaintiffs do not object to taxing the cost of these transcripts and the Clerk agrees with Defendants that "the transcripts were necessary to provide guidance to counsel." Id. Therefore, this **$459.08** cost is granted.

### *Deposition Transcripts*

Also pursuant to § 1920 (2), Defendants seek the $162,657.02 cost of 91 deposition transcripts, covering the printed format for all, as well as the videotaped format for 38 of them. Kekacs Decl. ¶¶ 33-59, Ex. E. Eighty of the printed transcripts were used in connection with the parties' summary judgment motions. Id. ¶ 37.

Plaintiffs object to taxing the $20,768.80 cost of the 11 transcripts that were not used in the summary judgment briefing, to the $52,011.25 in videography costs, and to the $8,285.24 in fees for expedited transcripts (with some of those costs overlapping). Pls.' Br. at 9-19. The Clerk reviews these objections in turn.

To start, all of the parties agree that the costs of deposition transcripts used in connection with successful summary judgment motions are taxable. The Third Circuit so held in the case of In re Baby Food Antitrust Litig., where it applied the broader standard in § 1920 (2) of

"necessarily obtained for use in the case," over the conflicting, more limited standard in our L. Civ. R. 54.1(g)(7) of "used at the trial."  166 F.3d 112, 138 (3d Cir. 1999).

However, the rub lies in Plaintiffs' contention that this is the only test that applies, and that therefore, the costs of the 11 remaining transcripts should be disallowed.  Pls.' Br. at 9-12; Alito Decl., Ex. 1.  This view is contrary to the case law and thus, untenable.  As noted above, in connection with the service costs, courts nationwide recognize that for their costs to be taxable, the depositions need only to have "'appear[ed] reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'"  Our Court has so held. Thabault, 2009 WL 69332, at *7 (citation omitted).

The Clerk has reviewed the justifications provided by Defendants for the taking of these 11 depositions.  Kekacs Decl. ¶¶ 38-42.  Defendants' counsel points out that two (Mantzoukas, LaRue) were noticed by Plaintiffs and another six (Beck, Claeys, Gros, Illis, Mendelsohn, Ryan) appeared on Plaintiffs' initial disclosures.  Id. ¶¶ 38, 40.  Plaintiffs cannot be heard to complain now that they were unnecessary.  The Mendoza deposition was taken at Plaintiffs' insistence, in response to Defendants' proposal to provide a certification instead.  Id. ¶ 39.  As for the remaining two depositions (Moshael Straus, Arezzo), Defendants' counsel has linked those deponents' testimony to Plaintiffs' allegations, thereby explaining how the transcripts were "reasonably necessary."  Id. ¶¶ 41, 42.  The Clerk is satisfied that all 91 depositions were "necessary for use in the case."

The Clerk commends the movants for not requesting the costs of extraneous services, such as litigation support packages, shipping and the like, which he routinely denies as either being akin to attorney's fees or strictly for counsel's convenience.  Defendants do, however,

-11-

ask for the costs of expedition of the transcripts of seven lay witnesses (Adams, Breslin, Hodges, Leibach, Lugo, Marcos, Mendelsohn) and three expert witnesses (Grabowski, Harte, Kra), and explain why expedition of such transcripts was warranted.  Kekacs Decl. ¶¶ 48-59.

In response, Plaintiffs object to the $8,285.14 in requested expedition costs, Alito Decl., Ex. 3, contending that "[a]ll of these justifications are based on various strategic considerations by Defendants' counsel" and that "[n]otably, none of Defendants' proffered justifications relate in any way to the need for expedition for the summary judgment motions," Pls.' Br. at 18.  In sum, Plaintiffs view expedition as having served the convenience of Defendants' counsel.  Id. at 19.

In reply, Defendants point out that this Court has allowed the costs of expedition when the circumstances so required, such as when a court deadline loomed.  Otsuka Pharm. Co., Ltd. v. Sandoz, Inc., Civ. No. 07-1000, 2015 WL 5921049, at *8 (D.N.J. Oct. 9, 2015) (expedition costs taxed due to compressed expert deposition schedule); Janssen Pharm. N.V. v. Mylan Pharms., Inc., Civ. Nos. 03–6220, 03–6185, 2007 WL 925535, at *8 (D.N.J. Mar. 23, 2007) (costs of expedition denied in absence of impending deadline).

The Clerk rejects Plaintiffs' argument asserting that Defendants faced time limits strictly due to strategic decisions and that expedition must have somehow been related to the summary judgment motions in order to be taxable. In the Clerk's view, Defendants' counsel vigorously advocated for their client and Plaintiffs have not indicated that the time crunches were of the Defendants' own making.  Defendants' counsel has explained how each transcript was used for an upcoming deadline, arriving within the ensuing 9 to 19 days, Kekacs Decl. ¶¶ 51-59, whereas, in the Clerk's understanding, "ordinary," unexpedited delivery of a transcript takes

30 days.  The Clerk notes that Defendants have not asked for the costs of expedition in a blanket

fashion, having observed that Defendants incurred such costs for other depositions, i.e., the

Adams, Lewis, Sombillo, Straus and Venette depositions, but not requested them.

Plaintiffs take issue particularly with the expedition of the transcript of the June 8, 2017

Breslin deposition.  Defendants' counsel explains that the transcript was needed to prepare for

the deposition of Danette Manzi and that, as of that date, Ms. Manzi had accepted service of a

subpoena with a noticed deposition date 18 days later, on June 26, 2017.  Kekacs Decl. ¶ 52.

In response, Plaintiffs have provided a string of July 2017 emails, showing the parties' attempt

to reschedule Ms. Manzi's deposition, which ultimately did not occur until November 17, 2017.

Alito Decl., Ex. 7.  However, they have not disproven that as of June 8, 2017, Defendants

intended to proceed with the deposition on June 26, as set forth in the subpoena.

Plaintiffs' final objection concerns the $52,011.25 cost of the videotaped format

of 38 of the depositions.  Alito Decl., Ex. 2.  Such costs are in addition to those of the printed

format.  Defendants' counsel states that six of those depositions (Goggin, Grabowski, Lewis,

Silva, Sombillo, Venette) were noticed by Plaintiffs as video depositions.  Kekacs Decl. ¶ 44.

As for the remaining 32 depositions, Defendants' counsel avers that "Defendants reasonably

believed at the time the depositions were taken that the witnesses might have been unavailable

at the time of trial."  Id. ¶ 45.

Plaintiffs counter with case law of this District, holding that when the costs of

stenographic and video transcripts are sought for the same deposition, both formats must be

shown to have been independently necessary.  Pharm. Res., Inc. v. Roxane Labs., Inc., Civ.

No. 03-3357, 2008 WL 2951173, at *5 (D.N.J. July 25, 2008).  Defendants have not refuted

Plaintiffs' statement that none of the videos were used in the determination of the summary judgment motions or for any other purpose.  Pls.' Br. at 13.

As for the 32 depositions, the Clerk must reject Defendants' position.  First of all, they offer a vague, generalized explanation of the possible unavailability of witnesses in the future, without giving any specific reason why particular witnesses might be unavailable, such as illness.  Defendants contend that "[i]n a case in which depositions of fact witnesses took place over a five-year period, and for which no definitive trial date had been set, it was reasonable for Defendants to fear that certain deposition witnesses might not reside within this Court's subpoena power by the time of trial." Defs.' Reply at 7.  This argument could be asserted in any lengthy case and is unpersuasive.

Secondly, and more importantly, Defendants totally sidestep the issue of necessity. Section 1920 (2) only allows for the costs of depositions, both printed and electronically recorded, to the extent that the depositions were "necessarily obtained."  In addition to the fact noted by Plaintiffs that no use was made of the videotapes, Defendants have not even attempted to explain why the printed formats would have been insufficient for their purposes, such as, attacking a witness' credibility.  For these reasons, the Clerk denies these videotaping charges.

However, the Clerk grants the remaining videotaping charges, i.e., those of the six depositions noticed by Plaintiffs as video depositions.  As this Court has previously stated, "[t]hat the [losing parties] themselves requested the video depositions indicates that these depositions were 'necessary for trial.'" Otsuka, 2015 WL 5921049, at *8 (quoting Janssen, 2007 WL 925535, at *4).

-14-

For printed transcripts, the Clerk ordinarily grants the cost of the original and a certified copy of the transcripts, in addition to the reporter attendance fees.  Wisely, Defendants have omitted non-taxable costs, such as for litigation support services and exhibits, in their request. For the sake of brevity, the Clerk provides below the total amount of costs allowed for each deposition, without setting forth the subcategories shown in Defendants' voluminous, although extremely helpful, 15-page list in Exhibit E.

With all of the foregoing in mind, the Clerk taxes the following deposition costs and denies the remainder, with * denoting the inclusion of expedition costs and ** denoting the inclusion of videotaping costs:

| **Deponent** | **Taxed Amount** |
| --- | --- |
| Kirk Adams | $  1,232.50 |
| George Arezzo | $     821.25 |
| Rob Baril | $     941.80 |
| David Bates | $  1,018.50 |
| Joseph Beck | $  1,145.25 |
| Eva Bermudez | $     499.80 |
| Kevin Breslin* | $  2,081.48 |
| Joel Brooks | $  1,075.70 |
| Lizbeth Carmichael | $  1,504.65 |
| Deborah Chernoff | $  1,159.35 |
| Matthew Claeys | $  1,015.75 |
| Suzanne Clark | $  1,615.88 |

| **Deponent** | **Taxed Amount** |
|---|---|
| Peter Colavito | $      362.70 |
| Lawrence Condon | $   1,783.50 |
| Toya Casper | $      993.75 |
| Lisa Crutchfield, 9/23/16 | $   1,477.90 |
| Lisa Crutchfield, 12/6/17 | $   1,002.40 |
| Elisabeth Daley | $      619.50 |
| Sharon Donaghue-Naumnik | $   1,691.20 |
| Justin Foley | $      796.25 |
| John Fonfara | $      317.20 |
| Leslie Frane | $      967.20 |
| Bill Gady | $      996.50 |
| Kim Gibson | $      846.00 |
| Brian Gillis | $      655.20 |
| Amy Gladstein | $   1,054.80 |
| Christopher Godialis | $      324.30 |
| Elizabeth Goggin** | $   1,101.40 |
| David Grabowski* ** | $   2,448.74 |
| Charles-Edouard Gros | $   1,323.75 |
| Frederick Haddad | $      382.95 |
| Victor Harte, 7/26/18 | $   1,180.80 |
| Victor Harte, 2/12/19* | $   1,146.86 |

| **Deponent** | **Taxed Amount** |
|---|---|
| Mary Kay Henry | $ 979.40 |
| Timothy Hodges* | $ 3,405.10 |
| Dennis Huntley | $ 746.55 |
| Doreen Illis | $ 1,322.60 |
| Arun Ivatury | $ 1,020.50 |
| Jonathan Kaplan | $ 1,367.75 |
| Richard Kehoe | $ 433.65 |
| John Kelly | $ 1,283.75 |
| Ethan Kra* | $ 1,839.38 |
| Scott LaRue | $ 385.20 |
| Dale Leibach* | $ 2,254.50 |
| Lillard Lewis** | $ 1,730.30 |
| Stuart Lindeman | $ 1,043.75 |
| Alberto Lugo* | $ 2,542.50 |
| William Mantzoukas | $ 675.55 |
| Danette Manzi | $ 1,086.50 |
| Victor Matthew Marcos* | $ 3,562.88 |
| Jesse Martin | $ 666.40 |
| Linda Martin | $ 1,781.25 |
| James McGregor | $ 948.55 |
| Thomas McKinney | $ 1,852.70 |

| Deponent | Taxed Amount |
|----------|-------------|
| Michael Mendelsohn* | $ 3,022.20 |
| Maggie Mendoza | $ 840.00 |
| Maureen Montegari | $ 2,394.00 |
| Russell Morin | $ 306.80 |
| Charles Nystrom | $ 992.80 |
| Roy Occhiogrosso | $ 629.00 |
| Derrick Parker | $ 482.40 |
| Mark Partyka | $ 1,764.00 |
| Fran Petricone | $ 1,601.75 |
| David Pickus | $ 1,423.50 |
| Lilah Pomerance | $ 588.65 |
| Julie Popper | $ 820.45 |
| Rachel Pryor | $ 420.90 |
| Mairym Ramos | $ 341.55 |
| Ed Remillard | $ 1,623.45 |
| Gary Richter | $ 967.50 |
| Mark Rickling | $ 1,016.80 |
| Bryan Rossano | $ 974.50 |
| Gregory Russo | $ 1,560.90 |
| Matthew Ryan | $ 612.00 |
| Milly Silva** | $ 1,418.95 |

| **Deponent** | **Taxed Amount** |
|---|---|
| Jennifer Smith | $    805.35 |
| Isabelita Sombillo** | $  1,144.90 |
| Robert Sprague | $    791.25 |
| Daniel Straus | $  1,589.00 |
| Moshael Straus | $    660.25 |
| Joseph Straus | $  1,783.55 |
| Megan Thorsfeldt | $  1,346.40 |
| Amanda Torres Price | $    921.60 |
| Jean Venette** | $  1,207.70 |
| Chas Walker | $    949.50 |
| Joanne Wallak | $    916.40 |
| Brian Walsh | $    805.20 |
| Maureen Weaver | $  1,508.50 |
| Eric Williams | $    648.75 |
| Chris Wishart | $    592.85 |
| Jason Wong | $  1,312.00 |
| Joseph Zupnik | $    814.50 |
| **Total:** | **$108,113.37** |

Deposition costs are taxed in the amount of $108,113.37, and combined with the granted cost of hearing transcripts ($459.08), transcripts are taxed in the total amount of **$108,572.45**, pursuant to § 1920 (2).

-19-

V.    **Witness Fees, § 1920 (3)**

Pursuant to subsection (3) of § 1920, Defendants seek $1,160.00 in witness fees paid to third-party witnesses for attendance at depositions.  As provided in our local rule, witness fees are fixed by statute, 28 U.S.C. § 1821, and are taxable for the attendance at depositions at the same rate as for attendance at trial.  L. Civ. R. 54.1(g)(1), (7).  While § 1821 allows for a $40 per day attendance fee, subsistence and transportation costs, Defendants request just the $40 fee for 29 such witnesses, not their mileage or any other costs.  Kekacs Decl., Ex. F.

Plaintiffs' objection is the same as that made in response to service fees, i.e., that fees should be reduced for four witnesses whose depositions were not used in connection with the summary judgment motions ($160.00), and for eleven witness who ultimately were not deposed ($440.00).  Pls.' Br. at 19; Alito Decl., Ex. 5.

The Clerk will allow this cost in its entirety for the reasons given in connection with the service costs.  Defendants' counsel explains that the witness fees were paid at the time of service of the subpoenas but certain individuals served were not deposed because either they signed a declaration in lieu of a deposition, or because Plaintiffs withdrew them from their witness list, or because the testimony of another witness rendered their testimony unnecessary.  Kekacs Decl. ¶ 64.  Plaintiffs again use the benefit of hindsight to oppose these fees.  However, at the time these witnesses were served, Defendants had a good faith expectation that their depositions would be necessary.  Id. ¶ 66.  See Montgomery Cnty., 2004 WL 1087196, at *7 ("Witness fees 'costs are properly taxed when there is a good faith expectation that witnesses might be called and had to be made available for that eventuality.' Greene v. Fraternal Order of Police, 183 F.R.D. 445, 450 (E.D. Pa. 1998)").

-20-

Accordingly, pursuant to § 1920 (3), witness fees are allowed in the amount of **$1,160.00**.

## VI.      Costs of Making Copies, § 1920 (4)

Defendants ask for reimbursement of $47,031.17 as § 1920 (4) "costs of making copies."
Kekacs Decl., Ex. G.  The parties' Production of Documents Protocol, id. at Ex. L, required
that documents be produced as TIFF (Tagged Image File Format) image files for black and
white, and JPEG files for color documents.  Defendants used the services of TransPerfect
Legal Solutions ("TransPerfect") to meet their discovery obligations.  The descriptions of
TransPerfect's invoiced services, the costs of which Defendants seek taxation, consist of:
"Imaging" (with and without further qualifications); "File Conversion"; "Processing for image
review"; and "Technical Labor."  Id. at Ex. G.

Defendants' counsel describes the costs as recoverable ones "for scanning of hard copy
documents and converting native files to image files (TIFF/JPEG) for production to Plaintiffs
under the parties' Production of Documents Protocol."  Id. ¶ 68.  Counsel specifies that
TransPerfect's invoiced items of "imaging" represent the cost of scanning hard copy documents
and/or converting native files to image files (TIFF/JPEG), and that TransPerfect's invoice
descriptions of "file conversion" and "processing for image review" represent the costs of
conversion of native files to image files (TIFF/JPEG).  Id. ¶¶ 72, 73.  Included in the request
also are the invoiced costs of "technical labor," which counsel represents as "the costs of
technical time for performing image/TIFF conversion."  Id. ¶ 74.

Plaintiffs do not oppose taxing the costs of the "File Conversion" entries on
TransPerfect's invoices and these, clearly taxable under binding case law discussed below,
are allowed.  However, Plaintiffs do object to the bulk of this request, contending that at least

-21-

$42,970.83 of such costs should be disallowed.  Pls.' Br. at 20-26; Alito Decl., Ex. 6.  They

outline three categories of costs which they maintain are non-taxable:  all items invoiced between

February 7 and March 31, 2014; for invoices post-dating March 31, 2014, all costs of "Imaging"

and "Processing for image review"; and costs of "Technical Labor."

Both sides agree that the taxability of the requested costs is controlled by the Third

Circuit's binding decision in Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158

(3d Cir. 2012), widely recognized as one of the most restrictive decisions in the nation on this

topic.  In that case, the electronically stored information ("ESI") was produced in TIFF and the

services performed by third-party electronic discovery vendors, sought to be taxed, consisted

of "(1) preservation and collection of ESI; (2) processing the collected ESI; (3) keyword

searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical

character recognition ('OCR') conversion; and (7) conversion of racing videos from VHS format

to DVD format."  Id. at 161-62.

The Third Circuit held that only the costs incurred for the physical preparation of ESI

were taxable.  It observed that in the pre-digital era, none of the various steps which preceded the

actual copying of documents, such as locating paper files, would have been taxed:

> It may be that extensive "processing" of ESI is essential to make a comprehensive
> and intelligible production.  Hard drives may need to be imaged, the imaged drives
> may need to be searched to identify relevant files, relevant files may need to be screened
> for privileged or otherwise protected information, file formats may need to be converted,
> and ultimately files may need to be transferred to different media for production.  But
> that does not mean that the services leading up to the actual production constitute
> "making copies."

Id. at 169.  The court reasoned, "that is because Congress did not authorize taxation of charges

necessarily incurred to discharge discovery obligations.  It allowed only for the taxation of the

costs of making copies." Id. The court concluded that of the many services performed, only the costs of scanning hard copy documents, converting native files to the agreed-upon format, and transferring VHS tapes to DVD format were taxable. Id. at 171.

The Third Circuit subsequently clarified its Race Tires ruling, explaining that "[e]ven the term 'scanning,' as used in *Race Tires*, applied only to the 'scanning of *hard copy* documents' as 'making copies' for the requesting party. 674 F.3d at 171 (emphasis added)." Camesi v. Univ. of Pittsburg Med. Ctr, 673 F. App'x 141, 148 (3d Cir. 2016). The Camesi court distinguished that taxable activity from the non-taxable service of scanning electronic documents for the benefit of the responding party.

The Clerk turns then to the three categories which Plaintiffs assert are non-taxable. First, services on the invoices dated February 7-March 31, 2014 are not allowable, argue Plaintiffs, because they "were not incurred for the purposes of making copies of documents in order to produce them to Plaintiffs in discovery," but rather, "for the purpose of collecting and reviewing documents in anticipation of a future document production." Pls.' Br. at 23.

The Clerk agrees, although focuses not on the dates of the invoices, but more exactly, the dates shown on the invoices as the requested dates. A document uncovered by the Clerk in his independent review of the docket is very telling. On March 21, 2014, Defendants' counsel wrote to the Court to give a discovery status report. [Dkt. Entry 84]. He indicated that Defendants had collected more than 2 million documents from 77 custodians, and that "Defendants ha[d] 'ingested' this data into their document-review platform and [we]re in the process of reviewing these documents." Counsel continued, "Defendants estimate that they are approximately two months away from being able to produce a critical mass of documents

to Plaintiffs."   Further in his letter, counsel defined the process of ingesting data into a review platform as "a process that of course precedes actual review and production of materials."

Clearly, Defendants' status report reveals that Defendants were then in the preparatory stages of discovery, i.e., one that preceded the actual production of documents to Plaintiffs. As the <u>Race Tires</u> court noted, these non-taxable preparatory steps include searching to identify relevant files and then the screening of relevant files for privileged or otherwise protected information.

Defendants' argument in reply is inconsequential.  They contend that "[i]t would defy common sense – and standard discovery practice – to incentivize parties not to scan hard-copy documents or convert electronic files to accessible image formats until after all document review has been completed, as that would further slow down the discovery process."  Defs.' Reply at 11. However, this argument ignores reality - that Defendants' initial review of the more than 2 million documents sweeps up documents that were not actually copied for production to Plaintiffs post-review.  The fact that counsel was charged with undertaking this massive document review process early on does not render the costs of that process taxable.  As the <u>Race Tires</u> court stated, "Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations.  It allowed only for the taxation of the costs of making copies."

The costs of TransPerfect's services which were requested prior to March 21, 2014 are undoubtedly non-taxable under the <u>Race Tires</u> decision.  The disallowed items include not only the first 14 entries on Defendants' chart, totaling $25,896.39, Alito Decl., Ex. 6, but also the 17th entry for $164.48 (Invoice No. 65403), showing a requested date of February 21, 2014.

Secondly, Plaintiffs argue for the disallowance of costs, totaling $15,799.44, bearing the TransPerfect descriptions of "Imaging" and "Process for image review," that do not

-24-

otherwise indicate that the charges were for scanning hard copies or converting file formats. Pls.' Br. at 23-25; Alito Decl., Ex. 6.

Defendants counter with the argument that the Clerk should take counsel at her word, when she explains that these terms are synonymous with scanning hard copy documents and/ or converting native files to images files (TIFF/JPEG).  Kekacs Decl. ¶¶ 72, 73; Defs.' Reply at 12.  However, Plaintiffs point out that it is illogical to think that the same vendor would use multiple descriptions to describe the same task, particularly when the vendor actually used the specific terms "scan" and "file conversion" when it needed to.  Pls.' Br. at 23-25.

The Clerk agrees in part, finding that TransPerfect's services of "Process for image review" are non-taxable under the Race Tires decision.  The Third Circuit clearly equated "processing" with services leading up to the actual copying of documents and the Clerk also views the phrase "image review" as connoting a preparatory step prior to the actual copying and production of documents.  United States ex rel. Oberg v. Nelnet, Inc., Civ. No. 1:07-cv-960, 2019 WL 3084250, at *2 (E.D. Va. July 15, 2019) (holding that invoiced services of "Processing for Review" are "clearly excludable from the realm of copying and exemplification" and noting that many courts have so found).

However, after having perused TransPerfect's invoices, the Clerk believes that the vendor's description of "Imaging" may be equivalent with scanning, as that term consistently appears under the heading of "Scan."  Nevertheless, but for a couple of entries, the Clerk cannot find that Defendants have met their burden of showing that the requested costs are for the scanning of hard copy documents, to which the Race Tires limited taxation.  The two exceptions noted by Plaintiffs are the "Paper scan of Chas Walker's documents" (Inv. # 64155A/B, $.96)

and "Project Description:  Candidate Questionnaires for Relativity" (Inv. # 86994, $27.00).

Pls.' Br. at 24.  Plaintiffs do not object to taxing these two services.  However, as for the

remaining charges for "Imaging," the Clerk cannot find that they pass the test of the <u>Camesi</u>

court, which denied costs where the record did not clearly show that they were for the scanning

of hard copy (as opposed to electronic) documents for the benefit of the requesting party

(as opposed to the responding party).

      Finally, Plaintiffs maintain that all costs of "Technical Labor" should be denied on

the ground that they "fall outside the ambit of taxable 'copying' costs under <u>Race Tires</u>."

Pls.' Br. at 25-26.  The Clerk agrees that almost all of the TransPerfect charges for "Technical

Labor" are vague (e.g., "Catholic01 PDF to image conversion" in Inv. #76375), or either

wholly or partially linked to underlying activities which are non-taxable (e.g., "TIFF

Conversion/OCR/Concordance" in Inv. # 71826).  The only exception is the charge for

"Technical Labor" for "TIFF Conversion" (Inv. # 77758).  The Clerk will allow this $150.00

charge as a component of the taxable cost of file conversion.

      In accordance with the above, the following costs are taxed:  all costs of file conversion,

totaling $3,707.83; the granted $.96 and $27.00 costs of Imaging (Paper scan and Candidate

Questionnaires), totaling $27.96; and the $150.00 cost of Technical Labor-TIFF Conversion.

Pursuant to § 1920 (4), the costs of making copies are allowed in the total amount of **$3,885.79**.

**VII.**    <u>**Costs of the Special Master**</u>

      The final cost sought by Defendants is the $114,263.83 cost of the court-appointed

special discovery master, the Hon. Joel A. Pisano, shown as "Other costs" on their AO 133 form.

After the Court appointed Judge Pisano as the SDM, the parties briefed their views on how the

SDM's fees should be handled.  Magistrate Judge Hammer ultimately decided that the fees would initially be split evenly between the parties but that "[a]t the conclusion of this action, any party may seek taxation of the Special Master's fees as costs under Fed. R. Civ. P. 54(d)." [Dkt. Entry 296, ¶7 (footnote omitted)].  However, Judge Hammer cautioned that "[t]he Court takes no position at this time on the merits of any such application."  Id.

In support of its request, Defendants' counsel states that "[i]ndeed, there is an 'apparently widespread practice of treating [special master] fees as taxable costs' in the federal courts. Aird v. Ford Motor Co., 86 F.3d 216, 222 (D.C. Cir. 1996)."  Kekacs Decl. ¶ 75.  Defendants lean on the presumption of taxing costs in favor of the prevailing party, citing case law, and analogize this cost to those of court-appointed experts, falling with the ambit of § 1920 (6).  Id. ¶¶ 80-83.

Plaintiffs too appear to agree that the costs of a court-appointed special master are taxable as Rule 54(d) costs, within the Court's discretion, citing the Thabault case, 2009 WL 69332, at *16, and others.  Pls.' Br. at 27-29.  They then analyze in detail "four waves of discovery disputes" put to the SDM, and conclude that since Plaintiffs prevailed on most of the issues presented to the SDM, the Court should, in the exercise of its discretion, decline to tax Plaintiffs for Defendants' share of the fees.  Pls.' Br. at 29-36.

In reply, Defendants agree in principle that this is a discretionary matter, but not in application: "We are in agreement with Plaintiffs that the question of whether special master fees should be taxed is a matter within the Court's discretion. . ."  Defs.' Reply at 12.  They reiterate the presumption in their favor and argue that none of the factors for departing from the presumption, cited in case law, apply here.  Id. at 13-14.

If, as the parties agree, the taxation of a special master's fees is a matter left to the Court's discretion, then that task is not within the Clerk's bailiwick.  As he noted at the outset,

-27-

in connection with Plaintiffs' application to stay this decision, the Clerk is not vested with the authority to decide equitable matters.  Even if this is a cost falling within § 1920 (presumably, subsection (6)), its taxation must be presented to the district court upon appeal from this Clerk's decision.

However, the parties' position to the contrary, the Clerk is not convinced that the costs of a special master, even if court-appointed, fall within the limits of § 1920.  Case law exists for the proposition that since the Supreme Court's 1987 decision in <u>Crawford Fitting</u>, such fees are not taxable as "expert" fees within the meaning of § 1920 (6), and should be analyzed pursuant to Fed. R. Civ. P. 53, rather than Fed. R. Civ. P. 54.

In the case of <u>Perez v. Carey Int'l, Inc.</u>, the district court clarified that § 1920 (6) allows the recovery of fees paid to court-appointed "*expert witnesses* and interpreters" and that the special master was neither.  No. 06-22225-CIV., 2008 WL 4490750, at *5 (S.D. Fla. Sept. 26, 2008), <u>aff'd</u>, 373 F. App'x 907 (11th Cir. 2010) (emphasis in original).

The court continued,

> …Congress specified those costs taxable against a losing party in 28 U.S.C. § 1920. Those are the only costs that are taxable.  The services of a special master are not included under § 1920.  The Fifth Circuit decided *Capra*, the authority upon which Plaintiffs rely, prior to the United States' Supreme Court's decision in *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 107 S. Ct. 2494, 96 L.Ed.2d 385 (1987).  There, the Supreme Court held that when a prevailing party seeks reimbursement under § 1920 for expert witness fees, a federal court is bound by the limits of 28 U.S.C. § 1821 (b) and courts do not have the power to tax costs except as prescribed by Congress.

<u>Id.</u>

In affirming the district court in <u>Perez</u>, the Eleventh Circuit stated, "In *Crawford Fitting* the Supreme Court limited the taxation of costs to those set forth in 28 U.S.C. §§ 1821 and 1920.

*See id.* at 441–42, 107 S.Ct. at 2497. Neither section permits the taxation of the fees of a special master as costs. *See* 28 U.S.C. §§ 1821, 1920."  373 F. App'x at 914.

The Ninth Circuit has relied upon the legislative history in likewise stating, in dicta, that masters' fees do not fall within § 1920 (6):

> The legislative history, however, supports [appellant's] argument that the words "court appointed experts" in 28 U.S.C. § 1920(6) refer only to expert witnesses, and that the language does not include masters.  The House Report for the bill enacting § 1920(6) states that the language in section 1920(6) referring to court appointed experts "makes express reference to the taxation of the compensation of a court appointed expert, as permitted by rule 706 of the Federal Rules of Evidence."  H.R. Rep. No. 95-1687, 9th Cong., 2d Sess. 13, *reprinted in* 1978 U.S. Code Cong. & Admin. News 4652, 4664. Fed. R. Evid. 706, entitled "Court Appointed Expert," refers to expert witnesses.

Nat'l Org. for the Reform of Marijuana Laws v. Mullen, 828 F.2d 536, 546 n.7 (9th Cir. 1987).

The Third Circuit has also spoken in terms of "court-appointed expert *witnesses*," governed by Fed. R. Evid. 706, in connection with § 1920 (6).  In re Philadelphia Mortg. Trust, 930 F.2d 306, 308 (3d Cir. 1991), citing Crawford Fitting, 482 U.S. at 442 (emphasis added).

See also Suchite v. Kleppin, No. 10-21166-CIV, 2012 WL 1933555, at *5 (S.D. Fla. Mar. 23, 2012) ("To the extent defendants claim that the special master is an expert and, thus, his fees are taxable under 28 U.S.C. § 1920 (6), the undersigned disagrees.  The special master functioned as a special master, not as a court-appointed expert, and his fees are not taxable as costs," citing 11th Cir. Perez case).

Some courts have avoided ruling on this issue by deciding that they have the authority to fix the compensation of a special master under Fed. R. Civ. P. 53 instead.  In the Aird case, cited by Defendants, the court recognized the losing parties/appellants' argument that case law supporting the prevailing party was no longer good law after the Crawford Fitting decision.

86 F.3d 216, 220-21 (D.C. Cir. 1996).  Despite these Defendants' citation of this case for the proposition that there is a "widespread practice of treating [special master] fees as taxable costs," Kekacs Decl. ¶ 75, the <u>Aird</u> court actually sidestepped the issue, ruling, "[w]e need not address appellants' Rule 54(d) contentions because the district court properly approved [the prevailing party's] request for reimbursement of special master's fees under Rule 53(a)." <u>Id.</u> at 221.

This Court has also previously adopted such a stance.  In the <u>Thabault</u> case, cited by both parties, the Court actually stated that "[s]ection 1920 indeed does not specifically list special master fees as recoverable, and Local Rule 54.1 provides no guidance on this issue." 2009 WL 69332, at *16.  After citing case law which it viewed as favorable to the prevailing party, including the <u>Aird</u> and <u>Nat'l Org.</u> cases, interpreted differently by the Clerk, the Court relied instead upon Fed. R. Civ. P. 53.  The Court ultimately declined to tax the special master fees, finding rather that both parties should share that cost because they equally benefitted from the master.  <u>Id.</u>

It makes sense to the Clerk that he lacks the power to tax these costs under Fed. R. Civ. P. 54(d) because a more specific provision exists to fix the compensation of special masters, i.e., Fed. R. Civ. P. 53(g).  That rule not only delegates such authority to the Court, and not the Clerk, but also sets forth the considerations affecting the allocation of the payment among the parties.

In sum, whether the fees of a special master are analyzed under Rule 54(d) or 53(g), the Clerk determines that the decision regarding their allocation between the parties is reserved to the district court.  Accordingly, he denies Defendants' request to tax them.

**VIII.   Summary**

In sum, the Clerk taxes the following costs in favor of Defendants and against Plaintiffs:

Fees of the marshal, § 1920 (1):                    $   8,135.00

Fees for transcripts, § 1920 (2):                    $108,572.45

Witness fees, § 1920 (3):                             $   1,160.00

Costs of making copies, § 1920 (4):              $   3,885.79

**TOTAL:**                                                      **$121,753.24**

For the reasons set forth above, the motion of Defendants 1199SEIU United Healthcare Workers East, New England Health Care Employees Union, District 1199, and Service Employees International Union to tax costs against Plaintiffs Care One Management, LLC, HealthBridge Management, LLC, Care One, LLC and Care Realty, LLC is hereby **GRANTED IN PART AND DENIED IN PART.**  An appropriate order follows.

WILLIAM T. WALSH

By:  S/John T. O'Brien
        Deputy Clerk

June 26, 2020