# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Care One Management, LLC et al., <br><br> Plaintiffs, <br> -v- <br> United Healthcare Workers East, SEIU 1199, et al., <br><br> Defendants. | Civil Action No. 2:12-cv-06371-SDW-MAH <br><br><br> **SECOND SUPPLEMENTAL DECLARATION OF AMY GLADSTEIN** |

I, **AMY GLADSTEIN**, declare under penalty of perjury as follows:

1. I am a resident of New York and am over 18 years of age. I make this Declaration based on my own personal knowledge of the facts set forth below.

2. Since the year 2000, I have served as assistant for strategic organizing for 1199SEIU United Healthcare Workers East ("UHWE"). UHWE is a local union affiliated with the Service Employees International Union ("SEIU"), but UHWE is a separate legal entity, distinct from SEIU.

3. In my role as assistant for strategic organizing, I formulate and oversee the implementation of UHWE's organizing strategy. I also am an attorney, but in performing my work as UHWE's assistant for strategic organizing I do not act as an attorney.

4. In my role, I am and was at all relevant times directly involved in UHWE's advocacy related to organizing on behalf of employees of Plaintiffs Care

1

        One, LLC and related entities. I had final authority, in my capacity as assistant for strategic organizing, over UHWE's communications relating to Plaintiffs.

5. I participated in internal discussions with others at UHWE about whether UHWE should initiate a campaign of speech and advocacy directed at Plaintiffs, with an objective of trying to get Plaintiffs to follow the law, stop committing unfair labor practices, and start bargaining with UHWE at certain facilities as required by the National Labor Relations Act (NLRA).

6. At my direction, in June 2011 UHWE began to engage in a non-violent and factually accurate campaign of speech and advocacy concerning Plaintiffs' labor and business practices in cooperation with another SEIU affiliate, New England Health Care Employees Union, District 1199 ("NEHCEU").

7. In or around November 2012, UHWE learned that the Kateri Residence—a skilled nursing facility at which UHWE represents some employees—was going to be sold a company called CareRite Centers. As a result, I received an email from another UHWE employee requesting research and an investigation on CareRite Centers. The document beginning at DEFS-0000296848 is a true and correct copy of that email. At that time, I did not know what other individuals or entities, if any, had been interested in purchasing the Kateri Residence other than CareRite Centers. I still do not

have any such knowledge, other than the fact that I have been informed that Plaintiffs in this litigation have alleged that they, or a related entity, had interest in purchasing the Kateri Residence.

8. At some time after May 15, 2014, I became aware that Plaintiffs alleged in this litigation that UHWE, NEHCEU, and/or SEIU pressured the seller of the Kateri Residence not to sell the facility to Plaintiffs, an entity related to Plaintiffs, and/or an entity related to Plaintiffs' principal owner and CEO Daniel Straus.

9. I did not know that any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus had any interest in purchasing the Kateri Residence until I learned that Plaintiffs had so alleged in this litigation. Even today, other than Plaintiffs' allegation, I have no knowledge that any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus had any interest in purchasing the Kateri Residence, or that any such entity made an offer to purchase the Kateri Residence.

10. I did not tell anyone affiliated with the seller of the Kateri Residence (including any broker retained by the Kateri Residence in connection with a potential sale) that they should not sell the Kateri Residence to any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus.

11. To the best of my knowledge, no one at UHWE told anyone affiliated with the seller of the Kateri Residence (including any broker retained by the Kateri Residence in connection with a potential sale) that they should not sell the Kateri Residence to any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus.

12. I am not aware of anyone affiliated with NEHCEU, SEIU, or any other SEIU-affiliated union telling anyone affiliated with the seller of the Kateri Residence (including any broker retained by the Kateri Residence in connection with a potential sale) that they should not sell the Kateri Residence to any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus.

13. The Kateri Residence is to this day operated as a nursing home, though it is now called The Riverside Premier Rehabilitation and Healing Center. UHWE continues to represent employees at the facility.

14. At some time after May 15, 2014, I became aware that Plaintiffs alleged in this litigation that UHWE, NEHCEU, and/or SEIU pressured the seller of certain healthcare facilities in Massachusetts owned by Merrimack Health Group, Inc. ("Merrimack Facilities") not to sell the Merrimack Facilities to Plaintiffs, an entity related to Plaintiffs, and/or an entity related to Mr. Straus.

15. I did not know that any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus had any interest in purchasing the Merrimack Facilities until I learned that Plaintiffs had so alleged in this litigation. Even today, other than Plaintiffs' allegation, I have no knowledge that any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus had any interest in purchasing the Merrimack Facilities, or that any such entity made an offer to purchase the Merrimack Facilities.

16. I did not tell anyone affiliated with the seller of the Merrimack Facilities (including any broker retained by the Merrimack Facilities in connection with a potential sale) that they should not sell the Merrimack Facilities to any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus.

17. To the best of my knowledge, no one at UHWE told anyone affiliated with the seller of the Merrimack Facilities (including any broker retained by the Merrimack Facilities in connection with a potential sale) that they should not sell the Merrimack Facilities to any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus.

18. I am not aware of anyone affiliated with NEHCEU, SEIU, or any other SEIU-affiliated union telling anyone affiliated with the seller of the Merrimack Facilities (including any broker retained by the Merrimack

Facilities in connection with a potential sale) that they should not sell the Merrimack Facilities to any Plaintiff, any entity related to Plaintiffs, and/or any entity related to Mr. Straus.

19. At some time after May 20, 2016, I became aware that Plaintiffs alleged in this litigation that UHWE, NEHCEU, and/or SEIU pressured the Archdiocese of Philadelphia not to proceed with the sale of certain nursing-home facilities operated by Catholic Health Care Services of Philadelphia ("CHCS Facilities") to a bidding group in which Mr. Straus was a member.

20. I did not know that any Plaintiff, any entity related to Plaintiffs, any entity related to Mr. Straus, and/or any bidding group of which Mr. Straus was a member had any interest in purchasing the CHCS Facilities until I learned that Plaintiffs had so alleged in this litigation. Even today, other than Plaintiffs' allegation, I have no knowledge that any Plaintiff, any entity related to Plaintiffs, any entity related to Mr. Straus, and/or any bidding group of which Mr. Straus was a member had any interest in purchasing the CHCS Facilities, or that any such entity made an offer to purchase the CHCS Facilities.

21. I did not tell anyone affiliated with the seller of the CHCS Facilities (including any broker retained by the CHCS Facilities in connection with a potential sale) that they should not sell the CHCS Facilities to any Plaintiff,

6

any entity related to Plaintiffs, any entity related to Mr. Straus, and/or any bidding group of which Mr. Straus was a member.

22. To the best of my knowledge, no one at UHWE told anyone affiliated with the seller of the CHCS Facilities (including any broker retained by the CHCS Facilities in connection with a potential sale) that they should not sell the CHCS Facilities to any Plaintiff, any entity related to Plaintiffs, any entity related to Mr. Straus, and/or any bidding group in which Mr. Straus was a member.

23. I am not aware of anyone affiliated with NEHCEU, SEIU, or any other SEIU-affiliated union telling anyone affiliated with the seller of the CHCS Facilities (including any broker retained by the CHCS Facilities in connection with a potential sale) that they should not sell the CHCS Facilities to any Plaintiff, any entity related to Plaintiffs, any entity related to Mr. Straus, and/or any bidding group in which Mr. Straus was a member.

24. I did not tell anyone affiliated with any potential or actual bidding group to purchase the CHCS Facilities that the bidding group should not include Mr. Straus.

25. To the best of my knowledge, no one at UHWE told anyone affiliated with any potential or actual bidding group to purchase the CHCS Facilities that the bidding group should not include Mr. Straus.

26. I am not aware of anyone affiliated with NEHCEU, SEIU, or any SEIU-affiliated union telling anyone affiliated with any potential or actual bidding group to purchase the CHCS Facilities that the bidding group should not include Mr. Straus.

27. I executed declarations, under penalty of perjury, in connection with this litigation on March 14, 2019 and April 26, 2019. All of my testimony in those declarations remains true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: June 21, 2023

_____
Amy Gladstein